UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GAVEN PICCIANO,<br><br>      Plaintiff,<br><br>  v.<br><br>CLARK COUNTY, CLARK COUNTY JAIL, WELLPATH, LLC, and NAPHCARE, INC.,<br><br>      Defendants. | CASE NO. C20-06106-DGE<br><br>ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT |

## I.   INTRODUCTION

This matter comes before the Court on Defendant Wellpath, LLC's Motion to Dismiss the Second Amended Complaint for Failure to State a Claim. (Dkt. No. 47.) The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the record and hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss for the reasons discussed herein.

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 1

## II. BACKGROUND

**A. Facts of the Case**

Plaintiff has brought this action against Defendants Clark County, Clark County Jail, Wellpath, LLC ("Wellpath"), and NaphCare, Inc. ("NaphCare") based on the events that transpired while he was a pre-trial detainee at the Clark County Jail (the "Jail"). (Dkt. No. 43 at 1.)

Plaintiff suffers from Celiac Disease, a disease that has no known cure and requires him to maintain a strict gluten-free diet. (*Id*. at 5.) When Plaintiff ingests gluten, he experiences a range of symptoms, including vomiting, diarrhea, stomach pain, and other substantially limiting symptoms. (*Id*.)

Plaintiff was arrested on January 30, 2020 and booked at the Jail. (*Id*. at 1.) At the time, Wellpath was under contract to provide medical care to the inmates at the Jail through the end of January 31, 2020, at which point NaphCare became the medical care provider. (*Id*. at 3.) At the time he was booked into the Jail, Plaintiff completed a medical assessment form indicating that he had Celiac Disease. (*Id*. at 6-7.) After his intake, Plaintiff alleges no steps were taken to accommodate his request for a gluten-free diet. (*Id*. at 7.) The following day, Plaintiff renewed his request and signed a records release for Defendants to obtain his medical records confirming he had Celiac Disease. (*Id*.)

On February 1, 2020, NaphCare took over as the medical provider at the Jail and Plaintiff still had yet to be provided a meal he could safely eat. (*Id*.) Over the next several weeks, Plaintiff made continued requests for gluten-free meals, including filing multiple grievances that were repeatedly ignored by employees at the Jail. (*Id*. at 9-10.) At one point, due to lack of adequate food, Plaintiff collapsed and was forced to be taken to a hospital. (*Id*. at 11.)

Afterwards, the Jail was instructed by the hospital to provide Plaintiff with a gluten-free diet. (*Id.*)

As alleged in the Second Amended Complaint (the "SAC"), Plaintiff was never provided adequate gluten-free meals at the Jail.[1]  When he was served gluten-free food, it was either not actually gluten-free or it was contaminated by touching other foods containing gluten. (*Id.* at 11-12.) Throughout this experience, Plaintiff suffered numerous ailments and injuries from lack of proper food. (*Id.* at 4-15.)

**B. Procedural History**

Plaintiff filed the original Complaint on November 11, 2020. (Dkt. No. 1.) Plaintiff filed his Amended Complaint on April 8, 2021. (Dkt. No. 27.) Wellpath filed its Motion to Dismiss for failure to state a claim on May 3, 2021 (Dkt. No. 31), which the Court granted on January 4, 2022. (Dkt. No. 42.) Plaintiff filed his SAC on January 25, 2022. (Dkt. No. 43.)

Wellpath again moved to dismiss for failure to state a claim. (Dkt. No. 47.) Wellpath's Motion seeks to dismiss all remaining claims against Wellpath: Count 2 (Rehabilitation Act, 29 U.S.C. § 794), Count 3 (42 U.S.C. § 1983), Count 4 (Washington Law Against Discrimination), Count 5 (Negligence), Count 6 (Negligent Infliction of Emotional Distress), and Count 7 (Outrage). Subsequently, NaphCare, Clark County, and Clark County Jail joined Wellpath's Motion to the extent it seeks to dismiss Plaintiff's claims for violation of the Washington Law Against Discrimination, Negligent Infliction of Emotional Distress, and Outrage. (Dkt. Nos. 52, 53.)

---

[1] The SAC indicates Plaintiff went without food for 22 days. However, it is unclear to the Court when Plaintiff was released from the Jail.

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 3

### III.   DISCUSSION

**A.  Standard of Review**

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555.  The complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 547.

**B.  The Jail is Not a Place of Public Accommodation Under the Washington Law Against Discrimination (Count 4)**

To demonstrate a prima facie case of discrimination in a place of public accommodation under the Washington Law Against Discrimination ("WLAD"), the "plaintiff must prove: (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination."  *Floeting v. Grp. Health Coop.*, 434 P.3d 39, 41 (Wash. 2019) (citing *Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996)).

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 4

1    Wellpath argues the Jail is not a place of public accommodation under WLAD (Dkt. No. 47 at 3) and cites to decisions from this Court and the Eastern District of Washington for support. *See, e.g., Skylstad v. Washington*, 2019 WL 919624, at *6 (W.D. Wash. Jan. 14, 2019), *report and recommendation adopted*, 2019 WL 917400 (W.D. Wash. Feb. 22, 2019) ("The plain language of the statute, examples of covered entities in the statute, and judicial analysis of the statute do not support Plaintiff's contention that correctional facilities are public places."); *Foley v. Klickitat Cty.*, 2009 WL 5216992, at *6 (E.D. Wash. Dec. 30, 2009) ("Plaintiff offers no basis for this Court to conclude a county jail is a place of public accommodation under the WLAD.").

Plaintiff argues the Jail is a place of public accommodation under the WLAD because the Jail is a "place" where "medical service or care is made available." (Dkt. No. 57 at 17-18) (citing Wash. Rev. Code § 49.60.040(2)).  First, Plaintiff did not distinguish the *Skylstad* and *Foley* decisions and did not cite any Washington authority recognizing jails or correctional facilities as places of public accommodation under the WLAD.  Second, Plaintiff selectively quotes language of Washington Revised Code § 49.60.040(2) without any of the surrounding language, which, when read as a whole, provides context to the language Plaintiff selected.  That context makes clear that there must be some offering of services to the public to be a place of public accommodation.  A jail does not offer any services, medical or otherwise, to the public.

Accordingly, the Court agrees with prior decisions and concludes the Jail is not a place of public accommodation subject to the WLAD.  Plaintiff's WLAD claim is DISMISSED WITH PREJUDICE as to all Defendants.

### C. One Need Not Be a Bystander to Assert a Claim for Negligent Infliction of Emotional Distress (Count 6)

Citing *Colbert v. Moomba Sports, Inc.*, 176 P.3d 497 (Wash. 2008), Wellpath asserts only a "bystander" may proceed on a claim for negligent infliction of emotional distress. (Dkt. No. 47

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 5

at 3-4.)  However, although the facts in *Colbert* are distinct from the present facts, *Colbert* does not hold that a claim for negligent infliction of emotional distress is limited to bystanders.  In fact, as pointed out by Plaintiff, other Washington decisions have allowed non-bystanders to proceed on a claim for negligent infliction of emotional distress.  *See Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 205 (Wash. 2014) (employees allowed to advance negligent infliction of emotional claims against employer where it was alleged the employer "knowingly implemented a meal policy that posed a risk to the employees' religious well-being, and that this risk far outweighed the policy's utility to the company."); *Strong v. Terrell*, 195 P.3d 977, 983-84 (Wash. Ct. App. 2008) (employee allowed to advance negligent infliction of emotional distress claim against supervisor where supervisor "continuously made demeaning comments," "mocked her house . . . [and] her husband's employment," and "spit in her face.").  The assertion that only a bystander may assert a claim for negligent infliction of emotional distress, therefore, is incorrect.

Wellpath also alleges Plaintiff was not diagnosed "with emotional distress that is documented in a medical record." (Dkt. No. 47 at 4.)  To maintain a claim for negligent infliction of emotional distress, "a plaintiff must also establish 'emotional distress . . . susceptible to medical diagnosis and proved through medical evidence.'" *Kumar*, 325 P.3d at 205 (quoting *Hegel v. McMahon*, 950 P.2d 424, 431 (Wash. 1998)).

Here, Plaintiff alleges he was unable to eat, was ill, and that he suffered "great shock to his body and mind." (Dkt. No. 43 at 23.)  Plaintiff also alleges his "fear and anxiety are objective symptoms of his emotional distress." (*Id.*)  While it is true that the SAC does not specifically identify whether he obtained a medical diagnosis, the issue is whether the alleged emotional distress is "susceptible to medical diagnosis and proved through medical evidence."

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 6

1  *Kumar*, 325 P.3d at 205 (quoting *Hegel*, 950 P.2d at 431).  Said issue can only be properly

2  reviewed and analyzed once discovery is completed and experts have (or have not) provided

3  opinions about whether Plaintiff's alleged distress is/was "susceptible to medical diagnosis."

4  Accordingly, Wellpath's Motion to Dismiss is DENIED as to Plaintiff's claim for

5  negligent infliction of emotional distress.

### D.  Plaintiff has Adequately Alleged a Claim for Outrage (Count 7)

7  The elements of a claim for the tort of outrage or the intentional infliction of emotional

8  distress are "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of

9  emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Reyes v.*

10 *Yakima Health Dist.*, 419 P.3d 819, 825 (Wash. 2018) (citations omitted).

11 "The first element requires proof that the conduct was 'so outrageous in character, and so

12 extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

13 atrocious, and utterly intolerable in a civilized community.'"  *Lyons v. U.S. Bank Nat. Ass'n*, 336

14 P.3d 1142, 1151 (Wash. 2014) (quoting *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash.

15 2002); *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989)).  "The question of whether certain

16 conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to

17 determine if reasonable minds could differ on whether the conduct was sufficiently extreme to

18 result in liability."  *Id.* (quoting *Dicomes*, 782 P.2d at 1013.)

19 Wellpath asserts the conduct alleged in the SAC does not rise to the level of outrageous

20 conduct; in particular, because Plaintiff does not identify the names or positions of who he

21 communicated his personal health to.  (Dkt. No. 47 at 5.)  However, Plaintiff does allege that

22 Defendants' failure to provide him with a gluten-free meal plan caused him to go without access

23 to food that he could safely eat for 22 days.  (Dkt. No. 43 at 1.)  This caused Plaintiff to suffer

24

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT - 7

"extreme hunger, significant weight loss, fatigue, dizziness, gastrointestinal distress, vomiting, weakness, pain, and loss of consciousness." (*Id*. at 25.)  Though Plaintiff did not identify persons he specifically communicated with, the Complaint alleges Plaintiff was subjected to the choice between hunger and significant physical suffering from eating meals containing gluten.  This choice may support a conclusion that Defendants' conduct rose to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  Determination of this issue, however, is for the trier of fact to decide as the Court concludes that which has been alleged is sufficient to state a claim at this stage of the proceedings.[2]

Wellpath's Motion to Dismiss is DENIED as to the claim of Outrage.

### E. Plaintiff Does Not Allege Facts Sufficient to Support a 42 U.S.C. § 504 Rehabilitation Act Claim (Count 2)

To prevail under 42 U.S.C. § 504 of the Rehabilitation Act of 1973, a plaintiff "must show that '(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.'"  *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

Plaintiff claims that "[b]y failing to take the necessary steps to ensure that Mr. Picciano had access to a gluten-free diet, [Defendants] denied [Plaintiff] the benefits of a program or activity receiving federal financial assistance, and discriminated against him in violation of § 504" of the Rehabilitation Act.  (Dkt. No. 43 at 17-18.)  In other words, Plaintiff does not allege

---

[2] The Court recognizes the duty or responsibility Defendant Wellpath may have had to Plaintiff ended as of February 1, 2020.  Notwithstanding the limited time-frame, the Court still concludes for purposes of this motion that facts sufficient to support Plaintiff's Outrage claim have been alleged.

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 8

he was denied gluten-free meals because of his disability.  Instead, he alleges his disability was not taken into account and otherwise not properly treated because he was not provided a gluten-free diet.

"Courts in the Ninth Circuit [ ] have specifically concluded denial of a specific diet is not actionable under the ADA or Rehabilitation Act." *Price v. Shelton*, 2020 WL 3229284, at *6 (D. Or. June 15, 2020), *aff'd*, 2021 WL 5298607 (9th Cir. Nov. 15, 2021); *see also Reyes v. Ryan*, 2009 WL 10677722 (D. Ariz. Nov. 24, 2009), *aff'd*, 424 F. App'x 659 (9th Cir. 2011) (concluding plaintiff's claim he was denied a diabetic diet was not actionable under the ADA and Rehabilitation Act); *Galvin v. Cook*, 2000 WL 1520231, *7 (D. Or. Oct. 3, 2000) (concluding plaintiff's claim that defendants failed to control his diabetes was not actionable under the Rehabilitation Act).  This is because the "ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Galvin*, 2000 WL 1520231, at *6 (citing *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 121-22 (7th Cir. 1997)).

Here, Plaintiff does not allege the failure to provide a gluten-free diet was *because of his* Celiac Disease.  He alleges only that he suffers from Celiac Disease and was not provided a gluten-free diet. (Dkt. No. 57 at 8.)  This distinction bars recovery under § 504 of the

Rehabilitation Act.[3]  Therefore, the Court DISMISSES Plaintiff's Rehabilitation Act claim as to all Defendants WITHOUT PREJUDICE.[4]

### F.  Plaintiff has Adequately Alleged a 42 U.S.C. § 1983 Claim (Count 3)

A 42 U.S.C. § 1983 claim must allege facts showing (1) conduct by a person acting under the color of state law that (2) deprived a plaintiff of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  A § 1983 claim premised on a policy, custom or practice cannot be established through the doctrine of respondeat superior or vicarious liability.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.  Likewise, a private entity can be liable under § 1983 if its policy or custom caused the constitutional violation. *Robinson v. City of San Bernardino Police Dep't,* 992 F.Supp. 1198, 1204 (C.D. Cal 1998).

Citing *Twombly*, Wellpath asserts Plaintiff's § 1983 claim is insufficiently plead because the allegations are based on "information and belief."  (Dkt. Nos. 47 at 8, 58 at 5.)  However, the "'*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the

---

[3] The Court recognizes that Plaintiff's Opposition cites to *Richards v. Dayton*, for support that a failure to provide a gluten-free diet states a prima facie ADA/RA claim.  2015 WL 1522199, at *39 (D. Minn. Jan. 30, 2015), *report and recommendation adopted sub nom. Richards v. Ritchie*, 2015 WL 1522237 (D. Minn. Mar. 30, 2015).  However, no other court has cited to this opinion in support of this contention and the Court finds persuasive the overwhelming body of authority to the contrary.

[4] This claim is dismissed without prejudice because although it may be unlikely, Plaintiff might conceivably identify facts alleging he was denied gluten-free meals because of his medical condition.

ORDER ON DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 10

defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

Here, Plaintiff alleges the existence of a policy whereby individuals with food allergies, including Celiac Disease, do not receive appropriate meals until medical records are requested, received, and approved by the medical contractor. (Dkt. No. 43 at 6.) It is only then that the kitchen staff will accommodate a gluten-free diet. (*Id.*) Presumably, only Defendants know the precise procedure utilized at the Jail for obtaining a dietary meal modification, which means the specific facts surrounding the existence of a policy are "peculiarly within the possession and control of the defendant[s]." In addition, existence of a policy also is supported by the allegations that even after Plaintiff let it be known he suffered from Celiac Disease and specifically requested a gluten-free diet (*see* Dkt. No. 43 at 6-7), Plaintiff continued to receive meals that were not gluten-free.

Pursuant to *Soo Park*, Plaintiff's § 1983 claim has been sufficiently pled despite utilizing the phrase upon "information and belief." Therefore, Wellpath's Motion to Dismiss is DENIED as to Plaintiff's § 1983 claim.

**G. Plaintiff has Adequately Stated a Negligence Claim Against Wellpath (Count 5)**

Plaintiff asserts Defendants owed a duty "to evaluate [Plaintiff's] medical needs as a detainee, approve him for a medically necessary diet so that he could eat while detained, and ensure that he had timely access to gluten-free meals." (*Id*. at 22.) Plaintiff further alleges this duty was breached by not providing him gluten-free meals and that the failure to provide gluten-free meals caused him injury. (*Id*. at 22-23.)

"Washington courts have long recognized a jailer's special relationship with inmates, particularly the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 244 P.3d 924, 927 (Wash. 2010). "[A] sheriff running a county jail 'owes the direct duty to a prisoner in his custody to keep him in health and free from harm and for any breach of such duty resulting in injury he is liable to the prisoner[.]'" *Id.* (quoting *Kusah v. McCorkle*, 170 P. 1023, 1025 (Wash. 1918).

Wellpath characterizes Plaintiff's negligence claim in terms of a medical malpractice claim brought under Chapter 7.70 of the Washington Revised Code. (Dkt. No. 47 at 9.) Though referencing Wellpath's duty as being a medical provider who contracted with the Jail to provide services, Plaintiff's Opposition does not directly respond to the medical malpractice characterization and instead focuses on the duty imposed by common law. (*See* Dkt. No. 57 at 15-17.) Based on the facts alleged in the SAC, the negligence claim does not appear to be a true medical malpractice claim brought under Chapter 7.70 of the Washington Revised Code. It appears to be a common law negligence claim. Based on *Gregoire*, the Defendants responsible for the operation of the Jail owed a duty to Plaintiff and because Plaintiff alleges the other Defendants maintained a contractual relationship imposing a role in approving meal modification requests, Plaintiff has pled facts sufficient to establish they too owed a duty to Plaintiff.

Wellpath also argues the failure to identify specific personnel by name and title bars Plaintiff's negligence claim as there is a distinction between the standard of care between a physician and a nurse. (Dkt. Nos. 47 at 9; 58 at 5-6.) As noted above, however, Plaintiff's negligence claim does not appear to be a true medical malpractice claim brought under Chapter 7.70 of the Washington Revised Code. Therefore, a medical standard of care analysis between a physician and a nurse is inapplicable to Plaintiff's common law claim. Here, Plaintiff alleges

that all Defendants (either directly or contractually) owed a duty to Plaintiff to provide appropriate meals considering his medical condition.  As such, the Court concludes for purposes of the present motion, it matters not whether specific personnel are identified by name and title as facts alleging duty, breach, causation, and damages have been pled.

Therefore, the Court finds that Wellpath's Motion to Dismiss is DENIED as to Plaintiff's negligence claim.

### IV.     CONCLUSION

Accordingly, and having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

1. Plaintiff's Washington Law Against Discrimination claim is DISMISSED WITH PREJUDICE as to all Defendants.
2. Plaintiff's Rehabilitation Act claim is DISMISSED WITHOUT PREJUDICE as to all Defendants.
3. Defendant's Motion to Dismiss is DENIED as to Plaintiff's Negligent Infliction of Emotional Distress, Outrage, Negligence, and § 1983 claims.

Dated this 23rd day of May 2022.



David G. Estudillo
United States District Judge