The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GAVEN PICCIANO, a Michigan resident,

    Plaintiff,

vs.

CLARK COUNTY; CLARK COUNTY JAIL, WELLPATH, LLC, and NAPHCARE, INC.,

    Defendants.

No. 3.20-cv-06106-DGE

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE

NOTE ON MOTION CALENDAR:
June 6, 2022

## I.    INTRODUCTION

Picciano files this limited motion for reconsideration pursuant to Local Civil Rule 7(h) with respect to his claim pursuant to section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court dismissed this claim on grounds that were not argued by Wellpath, and therefore Picciano did not have the occasion to brief the issues addressed by the Court. Further, the Court dismissed the section 504 claim against Clark County/Clark County Jail and NaphCare even though those defendants expressly did not join this part of Wellpath's motion to dismiss; as a result, Picciano did not have the occasion to brief his section 504 claims as applied to those

PLAINTIFF'S MOTION FOR
RECONSIDERATION/TO VACATE - 1
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

defendants. For the reasons stated in this motion for reconsideration, Picciano respectfully requests that this Court reconsider its order dismissing the section 504 claims.

## II.     STANDARD FOR REVIEW

Pursuant to Local Civil Rule 7(h), motions for reconsideration must demonstrate a showing of manifest error or a showing of new facts or legal authority which could not have been presented earlier with reasonable diligence. A motion for reconsideration "shall be filed within fourteen days after the order to which it relates is filed." LCR 7(h)(2). The movant must identify "with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." *Id.*

Courts have explained that when courts raise issues *sua sponte* and act without the benefit of briefing and argument by counsel, errors are more likely to occur. As one court explained at length:

> "[T]he adversary system is a cornerstone of our jurisprudence." Bryan A. Garner et al., THE LAW OF JUDICIAL PRECEDENT 226 (2016). Indeed, the very notion of "judicial precedent implies that the point to the decision . . . should have been argued by opposing counsel." *Id.* (quoting John F. Dillon, The Laws and Jurisprudence of England and America 233 (1894)). This adversarial testing serves important ends: notably, it increases the odds that the court will "reach the 'correct' decision because the advocates will uncover and present more useful information and arguments . . . than the court would develop on its own." Adam A. Milani & Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 Tenn. L. Rev. 245, 273 (2002).

*United States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020). The Ninth Circuit has held that courts may not dismiss claims *sua sponte* without notice and "an opportunity to at least submit a written memorandum in opposition to such motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 683 n.7 (9th Cir. 2001).

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 2
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

## III. SECTION 504 REQUIRES COVERED ENTITIES TO PROVIDE INDIVIDUALS WITH DISABILITIES WITH AN EQUAL OPPORTUNITY TO PARTICIPATE IN AND BENEFIT FROM PROGRAMS, INCLUDING FOOD SERVICES

The Court erred in dismissing Picciano's section 504 claim against Wellpath on the ground that section 504 does not require covered entities to ensure that individuals with disabilities have the same access to food services as non-disabled individuals. No party argued or briefed this issue that the Court raised *sua sponte*, and Picciano respectfully files this motion for reconsideration to brief the clearly established law on this point.

Section 504 of the Rehabilitation Act and its implementing regulations are worded broadly to prohibit discrimination by entities receiving federal financial assistance. For instance, the Department of Justice's section 504 regulation states:

> No qualified handicapped person shall, solely on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity receiving Federal financial assistance.

28 C.F.R. § 42.503(a). Department of Justice regulations further make clear that recipients may not discriminate by "deny[ing] a qualified handicapped person the opportunity accorded others" or "an equal opportunity to achieve the same benefits that others achieve." *Id.* § 42.503(b)(1)(i)-(ii).

Section 504 requires covered entities to ensure that qualified individuals with a disability have "meaningful access to the benefit" offered by a covered entity. The benefit cannot be defined in a way that effectively denies otherwise qualified individuals with a disability meaningful access to the covered entity's programs. *E.g.*, *Alexander v. Choate*, 469 U.S. 287,

PLAINTIFF'S MOTION FOR
RECONSIDERATION/TO VACATE - 3
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

301 (1985).  To ensure meaningful access, covered entities need to make the reasonable modifications necessary to ensure such individuals have meaningful access.  *Id.* at 301 & n.21.

Section 504 regulations make clear that a recipient "may not, directly or through contractual, licensing, or other arrangements, utilize criteria or methods of administration" that result in discrimination against the individual with a disability.  28 C.F.R. § 42.503(b)(3).  Recipients may not "perpetuate the discrimination of another recipient if both recipients are subject to common administrative control."  *Id.*

The Department of Justice has explained that correctional facilities and their contractors must make their food services accessible to individuals with disabilities:

> [T]hrough its experience in investigations and compliance reviews, the Department has noted that public entities contract for a number of services to be run by private or other public entities, for example, medical and mental health services, *food services*, laundry, prison industries, vocational programs, and drug treatment and substance abuse programs, all of which must be operated in accordance with title II requirements.

28 C.F.R. pt. 35, App A (2010) (interpretive guidance for § 35.152) (emphasis added).[1]  The Department of Justice's reference to "food services" makes crystal clear that equal access requires that food services within a prison must be made accessible to inmates with disabilities.

The Department of Justice has undertaken enforcement action confirming that the ADA requires covered entities to provide food that is accessible to individuals with dietary restrictions.  For example, the Department of Justice, which is charged with enforcing the ADA, entered into a settlement agreement with Lesley University requiring the school to provide gluten-free options

---

[1] The Americans with Disabilities Act is interpreted in manner similar to section 504.  Title II of the Americans with Disabilities Act provides that "[t]he remedies, procedures, and rights set forth in [section 504] shall be the remedies, procedures, and rights" applicable to ADA claims.  42 U.S.C. § 12133; *see also, e.g.*, *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (collecting cases).

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 4
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

for students required to enroll in a meal plan. As the Department of Justice explained in a "Questions and Answers" statement accompanying the settlement:

> The Lesley Agreement involved a mandatory meal program for a defined group of students. Because its meal plan was mandatory for all students living on campus, the ADA required that the University make reasonable modifications to the plan to accommodate students with celiac disease and other food allergies.

Dep't of Justice, Questions and Answers About the Lesley University Agreement and Potential Implications for Individuals with Food Allergies, *at* https://www.ada.gov/q&a_lesley_university.htm (last accessed on June 6, 2022). The Department of Justice entered into a similar settlement agreement with Rider University to ensure that that school came into compliance with the ADA in providing safe meal options for students with celiac disease. Dep't of Justice, U.S. Attorney's Office Reaches Agreement with Rider University to Resolve Allegations Under the Americans with Disabilities Act, *at* https://www.justice.gov/usao-nj/pr/us-attorney-s-office-reaches-agreement-rider-university-resolve-allegations-under (last accessed on June 6, 2022). The Department of Justice's interpretation of its own regulations is entitled to "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see also, e.g.*, *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) (collecting cases).

In this case, Clark County Jail provides food services to the inmate population at large. Like in the DOJ cases involving universities with mandatory meal plans, Clark County Jail's food services program is required for all inmates—it is stating the obvious that inmates may not leave the facility in search of food alternatives. The jail and its contractors must therefore, pursuant to DOJ guidance, take the steps necessary to ensure that individuals with a disability have an equal opportunity to participate in and benefit from such food services. Clark County

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 5
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  Jail has set up a system that integrates Wellpath and Naphcare into the administration of food
2  services: inmates with disabilities and who request a special diet must receive sign off from these
3  contractors in order to receive the food that their disabilities require.  These entities individually
4  and collectively failed to take the necessary steps to ensure that Picciano had an opportunity
5  equal to that of other inmates to participate in and benefit from the food services offered to all
6  inmates.  If Picciano did not have celiac disease, he would have been able to eat safely without
7  necessary accommodation.  Accordingly, Picciano was denied food which was safe to eat on the
8  basis of his disability—as he alleged in the Complaint, "Food service was provided to other
9  detained individuals.  Because of his disability, Mr. Picciano cannot eat a standard diet, and
10 requires a strictly gluten-free diet."  Second Am. Compl. [Dkt. # 43] at ¶ 96.  Plaintiff has clearly
11 
12 alleged that he was denied services provided inmates without disabilities.
13      The Court, without the benefit of briefing on this issue, erroneously relied on a series of
14 unreported decisions that stand for the proposition that section 504 does not require covered
15 entities to provide specific medical treatment.  In *Price v. Shelton*, the correctional facility made
16 the medical determination that an inmate did not require a special diet.  3:18-cv-00540-BR, 2020
17 U.S. Dist. LEXIS 104046, at *2-3, 25-26 (D. Or. June 15, 2020).  The plaintiff challenged the
18 correctional facility's reasoned medical judgment that she did not require a special diet.  *Id.* at
19 
20 *25-26.  The court held that the correctional facility's determination that a medical diet was not
21 medically necessary was not actionable under section 504.  *Id.* at *16.
22      The other two unreported cases on which this Court relied were *pro se* cases.  In *Galvin v.*
23 *Cook*, CV-00-29-ST, 2000 U.S. Dist. LEXIS 15181 (D. Or. Aug. 31, 2000), the inmate filed suit
24 against the correctional facility for failing to provide certain medical treatment such as

PLAINTIFF'S MOTION FOR
RECONSIDERATION/TO VACATE - 6
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

administering a specific type of medication for his PTSD and diabetes. *Id.* at *20-21. The court held that section 504 is not a vehicle for bringing medical malpractice claims, and noted that the inmate had failed to actually allege that he had been denied "the benefits of any services, programs, or activities provided for other non-disabled inmates." *Id.*; *see also Reyes v. Ryan*, No. CV 09-2020-PHX-SMM (DKD), 2009 U.S. Dist. 138802, at *4 (D. Ariz. Nov. 24, 2009) (noting that the inmate had "not allege[d] that he was denied the benefits of or participation in a service, program, or activity").

In contrast, in *Richards v. Dayton*, the inmate did not challenge the quality of the medical care that he received. Rather, the inmate alleged that as a result of the correctional facility's failure to provide necessary modifications for his celiac disease, he was denied the opportunity provided to non-disabled inmates to benefit from the jail's food services program or purchase toothpaste that he could use. Civ. No. 13-3029 (JRT/JSM), 2015 U.S. Dist. LEXIS 40478, at *107 (D. Minn. Jan. 30, 2015).[2] Since the inmate was "excluded from these services" as a result of the correctional facility's failure to make necessary modifications, he stated disability discrimination claims. *Id.* at *108.

These cases, read together, make clear that courts distinguish between claims challenging specific medical decisions regarding treatment made by correctional personnel (essentially for medical malpractice) and claims alleging denial of equal opportunity. As the cases that this Court relied upon make clear, plaintiffs may not use section 504 to essentially assert medical malpractice claims. *See supra*. When, however, a plaintiff does not assert inadequate medical

---

[2] The court noted that the correctional facility also refused to perform an endoscopy, but did not specify whether the inmate would have received an endoscopy but for his disability. *Richards*, 2015 U.S. Dist. LEXIS 40478, at *107-08.

PLAINTIFF'S MOTION FOR
RECONSIDERATION/TO VACATE - 7
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

treatment but rather the denial of access to services and programs offered all inmates, such as food services, because of plaintiff's disability, then the section 504 claim may move forward. *See, e.g.*, *Barker v. Osemwingie*, No. 20-15503, 2021 U.S. App. LEXIS 35132, at *2-3 (9th Cir. Nov. 29, 2021) (holding that "[t]ransferring an inmate from a wheelchair to the toilet is an accommodation to provide access to toileting services, rather than medical treatment for a disability"); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (holding that an inmate had stated a claim when he asserted that he was denied equal access to mental health services).[3]

Such a distinction between medical malpractice claims and equal opportunity claims is necessary because while every disability is by definition a "medical condition", covered entities must nonetheless take steps to ensure that individuals with disabilities are not excluded from the benefits offered others—holding as this Court did would mean that no entity is ever required to accommodate an individual with a disability because all accommodations needed are necessary as the result of that individual's "medical condition".[4] Thus, pursuant to both the ADA and section 504, covered entities must "start by considering how its [programs] are used by non-disabled [individuals] and then take reasonable steps to provide [the individual with a disability]

---

[3] This distinction between medical malpractice and equal access is confirmed by the case law making clear that a section 504 claim may go forward against a health care provider even in the absence of any medical malpractice, as when a hospital provides excellent medical care for a deaf individual but fails to provide qualified interpreters to ensure effective communication with that deaf individual. *See, e.g.*, *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017) (explaining that "claims for ineffective communication are not equivalent to claims for medical malpractice").

[4] Thus, for instance, a deaf person would no longer be able to obtain a sign language interpreter because the need for an interpreter is a result of the deaf person's medical condition, *i.e.*, the inability to hear. To the contrary, the law dictates that the focus is not on whether the deaf person has a medical condition that prevents him from understanding what is said, but whether the covered entity took the necessary steps to ensure effective communication. *See, e.g.*, *Silva*, 856 F.3d at 834.

PLAINTIFF'S MOTION FOR
RECONSIDERATION/TO VACATE - 8
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

with a like experience." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 451 (8th Cir. 2013) (quoting *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012)).

In this case, Picciano has alleged that Wellpath failed to take the necessary steps, which were its responsibility, to ensure that he had access to food services equal to that of other inmates. Wellpath was simply asked to make the administrative arrangements for Picciano to have the gluten-free diet he needs.  Wellpath did not have to provide Picciano with any medical care at all. Wellpath's failure to take even basic administrative steps ensured that Picciano did not have an opportunity equal to that of non-disabled inmates to participate in and benefit from the food services program. In short, he was denied the benefit of food as a result of his celiac disease.

The practical consequences of the Court's Order must be noted.  Unlike a preferential diet where a detainee might be able to pick and choose some foods that they can eat off an otherwise unmodified tray, such as a vegetarian not eating any meat on their regular tray, a detainee with celiac disease who needs and is denied a strictly gluten-free diet without cross contact with gluten-containing foods would be, quite literally, unable to safely eat at all.  The only possible result of the failure to provide gluten-free meals is that inmates with celiac disease cannot safely eat while detained, even as inmates without disabilities get to eat three meals a day. Section 504 cannot be read to allow detainees with celiac disease to starve in prison or to risk serious health consequences by eating food that is unsafe because of their disability.

### IV. CLARK COUNTY JAIL AND NAPHCARE DISCRIMINATED AGAINST PICCIANO IN VIOLATION OF SECTION 504

Notably, neither Clark County/Clark County Jail nor NaphCare joined Wellpath's motion to dismiss with respect to Picciano's section 504 claim.  As a result, none of the parties briefed

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 9
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

the merits of Picciano's section 504 claims against Clark County/Clark County Jail or NaphCare and it was error for this Court to dismiss *sua sponte* Picciano's claims against these defendants.

Courts have cautioned against dismissing claims against all defendants when only one defendant moves to dismiss. For instance, in *Lee v. City of Los Angeles*, plaintiffs asserted claims against a police department and against individual police officers. Only the police department moved to dismiss, while officers each filed answers. Even though the officers had not moved to dismiss, the court nonetheless dismissed the claims against the officers. The Ninth Circuit held that it was error to dismiss without giving the plaintiffs notice and an opportunity to brief the issues presented. 250 F.3d at 683 n.7. Similarly, in this case, only Wellpath moved to dismiss the section 504 claim but the district court nonetheless dismissed the section 504 claim against all defendants, in the process glossing over factual differences in the allegations against the different defendants.

Picciano has asserted section 504 claims against Clark County/Clark County Jail and NaphCare for failing to take the necessary administrative steps for him to have the same opportunity as other inmates to benefit from the jail's food services program. These defendants repeatedly failed to arrange for gluten-free meals even though Picciano, as an inmate, had nowhere else to go to obtain his meals. *See, e.g.*, Second Am. Compl. [Dkt. # 43] at ¶¶ 39-71. NaphCare and Clark County Jail repeatedly told Picciano to talk to the other defendant instead or to trade food with other inmates—evidence that what Picciano sought was not medical services but rather equal access to the food program jointly administered by the jail and its medical contractors. *E.g.*, *id.* at ¶ 41 ("Medical services" telling Picciano to talk to "food services," and "food services" telling Picciano to talk to "medical services").

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 10
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

As a result of the defendants' dilatory conduct in administratively approving Picciano's request for gluten-free meals, he went without food for nearly three weeks even though feeding him did not require any medical treatment. For instance, NaphCare told Picciano that processing his request for gluten-free meals would take a while, even though all NaphCare had to do was tell the jail that Picciano had requested and should be given gluten-free meals. *See, e.g.*, *id*. ¶¶ 34, 38-43. NaphCare repeatedly ignored his requests for gluten-free meals, even taking as long as 11 days to respond to a written request for administrative approval of his request for gluten-free meals. *Id.* ¶ 44. Clark County Jail similarly took an extended period of time to finally provide Picciano with gluten-free meals, taking nearly three weeks to finally provide Picciano with food he could safely eat even as other inmates had safe meals each day. *E.g.*, *id.* ¶¶ 66-67, 70. The denial of meaningful access to food services based on disability over such an extended period of time was discrimination against Picciano on the basis of his disability, as made clear by the Department of Justice's enforcement actions against universities that required students with celiac disease to participate in mandatory meal plans with no gluten-free options. *See supra*.

Additionally, Picciano has asserted additional facts against Clark County/Clark County Jail and NaphCare that are not present with respect to Wellpath. Picciano has, for instance, alleged that the jail guards mocked him for his disability, telling him that he did not need to worry about being handcuffed because the handcuffs were gluten-free. Second Am. Compl. [Dkt. # 43] at ¶ 73. Guards also falsely told other inmates that he was faking his disability. *Id.* ¶ 69. The jail's mocking of Picciano based on his disability was discrimination in violation of section 504. *See, e.g.*, *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 351 (11th Cir. 2012) (deaf

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 11
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

individual could make out a section 504 damages claim against a hospital when its doctor "laughed at her" and taunted her in asking whether she could read lips).

Clark County/Clark County Jail and NaphCare also told Picciano that he was being served with gluten-free meals when the meals in fact contained gluten. Second Am. Compl. [Dkt. # 43] at ¶¶ 61-62, 68, 71. The provision of unsafe gluten-containing meals were an ineffective reasonable modification that failed to accommodate his disability. *Cf., e.g.*, *Argenyi*, 703 F.3d at 444-45, 451 (university failed to meet its legal obligations by offering an ineffective FM system to a deaf student).

Given the factual complexity of the record at this motion to dismiss stage and the fact that neither Clark County/Clark County Jail nor NaphCare moved to dismiss Picciano's section 504 claims against them, it was error for the Court to dismiss *sua sponte* his claims against these defendants.

V.     **CONCLUSION**

Therefore, Plaintiff respectfully requests that the Court reconsider its Order [Dkt. # 60] dated May 23, 2022, and vacate the dismissal of Plaintiff's section 504 claims.

DATED THIS 6th day of June, 2022.

By:

/s/ *Conrad Reynoldson*
Conrad Reynoldson, WSBA #48187
Marielle Maxwell, WSBA #54957
WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
Tel: (206) 876-8515
conrad@wacda.com

PLAINTIFF'S MOTION FOR
RECONSIDERATION/TO VACATE - 12
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

Mary C. Vargas, *pro hac vice*
Michael Steven Stein, *pro hac vice*
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Mary.Vargas@steinvargas.com
Tel:240-793-3185
Fax: 888-778-4620
mary.vargas@steinvargas.com
michael.stein@steinvargas.com

Charles Weiner, *pro hac vice*
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel: (267)685-6311
Fax: (215)604-1507
charles@charlesweinerlaw.com

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 13
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2022, I electronically filed the foregoing and this CERTIFICATE OF SERVICE with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| **Attorney for Defendants Clark County Jail and Clark County:**<br><br>John E. Justice<br>Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S.<br>2674 R.W. Johnson Road<br>Tumwater, WA 98512<br>P.O. Box 11880<br>Olympia, WA 98508<br>jjustice@lldkb.com | _____Via First Class Mail<br>_____Via Facsimile<br>_____x_____Via CM/ECF Notice<br>_____Via E-Mail |
| **Attorneys for Defendant NaphCare, Inc.:**<br><br>Ketia Wick<br>Amy Craft<br>FAVROS<br>701 Fifth Ave., Suite 4750<br>Seattle, WA 98104<br>ketia@favros.com<br>amy@favros.com<br>alisha@favros.com | _____Via First Class Mail<br>_____Via Facsimile<br>_____x_____Via CM/ECF Notice<br>_____Via E-Mail |
| **Attorney for Defendant Wellpath, LLC:**<br><br>Iain Armstrong<br>Bruce Smith<br>Lewis Brisbois Bisgaard & Smith LLP<br>888 SW Fifth Avenue, Suite 900<br>Portland, OR 97204-2025<br>Iain.armstrong@lewisbrisboise.com<br>bruce.smith@lewisbrisbois.com | _____Via First Class Mail<br>_____Via Facsimile<br>_____x_____Via CM/ECF Notice<br>_____Via E-Mail |

By:   *s/ Marielle Maxwell*_____
Marielle Maxwell, WSBA #54957
Attorney for Plaintiff

PLAINTIFF'S MOTION FOR RECONSIDERATION/TO VACATE - 14
No.: 3:20-cv-06106-DGE

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558