1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GAVEN PICCIANO,

                Plaintiff,

    v.

CLARK COUNTY, CLARK COUNTY JAIL,
WELLPATH, LLC, and NAPHCARE, INC.,

              Defendants.

No. 3:20-cv-06106-DGE

DEFENDANT NAPHCARE, INC.'S
MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS

NOTE ON MOTION CALENDAR:
FRIDAY, JUNE 16, 2023

ORAL ARGUMENT REQUESTED

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

162032459

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................. 3

        A.      Factual Background .................................................................. 3

        B.      Procedural Background .............................................................. 4

III.    ARGUMENT ....................................................................................................... 6

        A.      Plaintiff fails to sufficiently allege a Section 1983 claim against
                NaphCare. ................................................................................. 7

                1.      Plaintiff bases his *Monell* claim on an alleged records-review
                        policy. ......................................................................... 8

                2.      The records-review policy is not facially unconstitutional. ..................... 9

                3.      The records-review policy does not otherwise trigger *Monell*
                        liability. ...................................................................... 10

        B.      Plaintiff fails to sufficiently allege a Rehabilitation Act claim against
                NaphCare. ............................................................................... 16

                1.      NaphCare isn't the relevant party for Plaintiff's Rehabilitation Act
                        claim. ......................................................................... 16

                2.      NaphCare does not "receive[] federal financial assistance." ................... 18

                3.      Plaintiff otherwise fails to allege facts necessary to his
                        Rehabilitation Act claim. ................................................... 19

        C.      The Court should dismiss Plaintiff's *Monell* and Rehabilitation Act claims
                with prejudice. ......................................................................... 19

IV.     CONCLUSION .................................................................................................. 20

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – i
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

162032459

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4 *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 6

5 *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) ............................. 7, 9, 11

6 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 6

7 *Brooks v. Rogers*, 2021 WL 1589227 (W.D. Mich. Feb. 9, 2021) ................................. 9

8 *Brooks v. Rogers*, 2021 WL 972804 (W.D. Mich. Mar. 16, 2021) ................................ 9

9 *Canyon Props., LLC v. Pierce County*,

10     2020 WL 639412 (W.D. Wash. Feb. 11, 2020) .................................................... 11

11 *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ........................................ 11, 12

12 *Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012) .................................................. 5

13 *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ..................................................... 7

14 *City of Okla. City v. Tuttle*, 471 U.S. 808 (1985) ......................................................... 10

15 *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021) ................................ passim

16 *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ............................................. 16, 19

17 *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989) .................................. 6

18 *Eby v. Okezie*, 2021 WL 4146882 (N.D. Ill. Sept. 13, 2021) ......................................... 18

19 *Edwards v. Cornelius*, 2012 WL 2087413 (M.D. Fla. June 8, 2012) ................................ 9

20 *First Midwest Bank ex rel. La Porta v. City of Chicago*,

21     988 F.3d 978 (7th Cir. 2021) .............................................................................. 14

22 *Gordon v. County of Orange*, 6 F.4th 961 (9th Cir. 2021) ............................................. 8

23 *Gross v. Landry*, 2019 WL 1270922 (D. Maine March 19, 2019) .................................. 18

24 *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157 (C.D. Cal. 2018) .................... 11

25 *Hover v. Seattle-First Nat'l Bank*, 2018 WL 1695403 (W.D. Wash. Apr. 6, 2018) ............ 19

26 *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) ............................................................. 7

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – ii
(No. 3:20-cv-06106-DGE)

162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002) ................................ 17

*Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*,

    616 F.3d 963 (9th Cir. 2010) ........................................................................... 19

*Lee v. Corr. Corp. of Am./Correctional Treatment Facility*,

    61 F. Supp. 3d 139 (D.D.C. 2014) .................................................................... 18

*McDonald-Witherspoon v. City of Philadelphia*,

    481 F. Supp. 3d 424 (E.D. Penn. 2020) ........................................................... 18

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ..........................passim

*Mullen v. Comm'rs for Adams County, Colorado*,

    2022 WL 126618 (D. Colo Apr. 28, 2022) ....................................... 16, 17, 18

*Norman v. Texas Dep't of Criminal Justice*, 293 F. App'x 285 (5th Cir. 2008) ...................... 17

*Ragan v. Wellman*, 2022 WL 3908458 (W.D. Mich. Aug. 31, 2022) ......................................... 9

*Ragan v. Wellman*, 2022 WL 4244415 (W.D. Mich. July 19, 2022) .......................................... 9

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,

    75 F.3d 801 (2d Cir. 1996) ............................................................................... 19

*Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193 (9th Cir. 2021) ............................... 11

*Smith v. Tom Green Cnty. Jail*, 2018 WL 3873665 (N.D. Tex. Aug. 15, 2018) ...................... 13

*Tate v. Bell*, 2007 WL 1965592 (S.D. Ohio July 3, 2007) ......................................................... 9

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ........................................................................... 7

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ........................................................................... 8

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) .................................................... 14

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,

    637 F.3d 1047 (9th Cir. 2011) ........................................................................... 6

*Updike v. Multnomah County*, 870 F.3d 939 (9th Cir. 2017) ............................................. 16, 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3  *Washington v. Matheson Flight Extenders, Inc.*,

4    2021 WL 489090 (W.D. Wash. Feb. 10, 2021) ........................................................ 6

5  *Young v. Dep't of Corr.*, 2007 WL 703133 (W.D. Wash. Mar. 2, 2007) ................................. 19

6  *Zixiang Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013) ........................................................ 6

7  *Zongo v. Brott*, 2022 WL 2182196 (D. Minn. Mar. 30, 2022) ................................. 17

8

**<u>STATUTES</u>**

9  29 U.S.C. § 794 ........................................................................................................... passim

10  42 U.S.C. § 1983 ......................................................................................................... passim

11

**<u>RULES</u>**

12  Federal Rule of Civil Procedure 12 ............................................................... 1, 2, 6, 10

13  Federal Rule of Civil Procedure 8 ........................................................................... 6

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## I.     INTRODUCTION

Plaintiff Gaven Picciano was incarcerated for a few weeks at the Clark County Jail and alleges he did not receive gluten-free meals after telling jail staff he had a dietary restriction. Based on that, he has filed suit against the County, which runs the Jail, and the two companies that were providing healthcare services to inmates during his incarceration.

One of those healthcare companies is NaphCare, Inc. ("NaphCare"), which provides medical, mental health, and dental care at the Jail (but not meals). Plaintiff claims that because NaphCare did not affirmatively diagnose him with celiac disease or expressly order him a gluten-free meal, that somehow NaphCare violated his rights under 42 U.S.C. Section 1983 and Section 504 of the Rehabilitation Act. Because neither claim can survive Rule 12 scrutiny—even after several amendments to the complaint—the Court should dismiss them with prejudice.

For starters, Plaintiff's Second Amended Complaint (ECF No. 43) ("SAC")—his *third* attempt at pleading claims—still fails to allege the basic elements of a Section 1983 claim against NaphCare. Since the United States Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), forty-five years of black letter precedent has held that an employer cannot be liable under Section 1983, unless it actually causes a constitutional injury. This "rigorous" standard requires Plaintiff to allege that: (1) NaphCare maintained some official policy or "persistent" and "widespread" custom that; (2) showed "deliberate indifference" to; and (3) was the "moving force" behind the alleged constitutional violation. This Court has repeatedly rejected *Monell* claims for failing to satisfy these requirements.

Plaintiff does not come close to meeting this exacting standard; the only "policy" to which he vaguely alludes is the notion that a medical provider won't recommend a special diet for someone without first looking at the patient's medical records—hardly an unconstitutional policy. But even if that policy were somehow flawed, he does not allege (because he cannot) that the policy has led to a pattern of violations reflecting that its implementation was deliberately indifferent to Plaintiff's needs. Plaintiff's *Monell* claim should be dismissed as a matter of law.

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 1
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

162032459

1    Plaintiff's Rehabilitation Act claim fares no better for three reasons. ***First***, at its core, this

2    claim is based on the notion that NaphCare somehow failed to accommodate Plaintiff's dietary

3    needs. The only cognizable accommodation is a gluten-free diet prepared by the Jail's kitchen

4    staff. But there is no allegation or assertion that *NaphCare was in charge of food*. NaphCare is

5    simply the company providing *medical services* at the Jail. Medical staff aren't cooking, preparing,

6    or serving food. In other words, Plaintiff has directed this claim against *the wrong party*. ***Second***,

7    for liability to attach to a party like NaphCare, that party must receive federal subsidies. That's

8    simply not the case here, and the only bare allegation vaguely alluding to "federal assistance"

9    confirms that NaphCare is not a recipient of federal aid. ***Third***, Plaintiff does not (and cannot)

10   allege that NaphCare intentionally discriminated against him; on the contrary, his case is based on

11   a pure negligence theory that NaphCare simply did not review the medical files quickly enough.

12   That is not intentional discrimination, and it falls far short of what is required to assert a claim

13   under the Rehabilitation Act.

14   Taken together, Plaintiff's claims against NaphCare under *Monell* and the Rehabilitation

15   Act fail as a matter of law and should be dismissed under Rule 12(c). Otherwise, this Court would

16   be the first to allow a Section 1983 claim to proceed on the bizarre theory that a records-review

17   policy for special diets amounts to deliberate indifference. And allowing the Rehabilitation Act

18   claim to proceed against NaphCare would violate a robust body of case law limiting such claims

19   to select entities that control the accommodation and receive subsidies.

20   The Court should grant NaphCare's motion for judgment on the pleadings.

21

22

23

24

25

26

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 2
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

## II.     STATEMENT OF FACTS

### A.     Factual Background

The facts here are not that complicated, and for purposes of a motion for judgment on the pleadings, hardly in dispute. The key assertions, as alleged in the SAC, boil down to the following: Plaintiff claims to have celiac disease and alleges that he must eat only gluten-free food. SAC ¶ 12. On January 30, 2020, after his arrest for domestic violence and assault, Plaintiff was booked into Clark County Jail. *Id.* ¶ 24. At that time, Wellpath was providing medical services for Clark County Jail. *Id.* ¶¶ 6, 19–21. Clark County contracted with NaphCare to take over providing medical services at the Jail beginning on February 1, 2020. *Id.* ¶ 5.

On or around February 3, 2020—five days into his detention—Plaintiff finally agreed to release his medical records to NaphCare. SAC ¶ 43. NaphCare received Plaintiff's medical records on February 6, 2020. *Id.* ¶ 48. NaphCare recommended, and Clark County Jail provided, a gluten-free diet for Plaintiff thereafter. *See id.* ¶ 53.

Plaintiff complains that the meals he received—after NaphCare recommended a gluten-free diet—contained gluten. SAC ¶¶ 53, 57, 62, 66, 71. Clark County Jail alone controlled the preparation and service of food to inmates. *Id.* ¶ 18. Plaintiff does not allege that NaphCare had any responsibility for preparing or providing food to inmates. Nor does he bring any claims against NaphCare based on the content of the food he received. *See id.* ¶¶ 150–93.[1]

Nevertheless, conflating all defendants together, Plaintiff broadly alleges that "it was the policy of Clark County, Clark County Jail, Wellpath, and NaphCare that individuals with food allergies and Celiac Disease not receive medically necessary diets until medical records are requested by the medical contractor (Wellpath or NaphCare), received by that medical contractor, approved by the medical contractor, and then the medical contractor notifies the jail kitchens." SAC ¶ 22. Notably, Plaintiff does not allege or identify any NaphCare policy that *caused* his

---

[1] NaphCare uses the term "inmates" in this motion to refer to both pre-trial detainees (like Plaintiff) and convicted prisoners housed at Clark County Jail.

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 3
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

alleged injuries—only that NaphCare sought to review medical records before concluding that an inmate had celiac disease or required a certain diet.

Plaintiff separately alleges that the defendants partook in a "custom or practice" of "not providing medically necessary meals in a timely manner to individuals with disabilities, including a custom or practice of not taking the necessary steps to ensure the timely provision of gluten-free meals for individuals with Celiac Disease." SAC ¶ 109. But, of course, the Jail rather than NaphCare's medical staff provides the meals, and more to the point: Plaintiff fails to identify *any other inmate* who allegedly faced similar issues as Plaintiff, as required for *Monell* liability.

As for his Rehabilitation Act claim, Plaintiff vaguely alleges that NaphCare receives federal assistance, but he apparently refers to NaphCare's federal contracts to provide services at federal institutions. Payment under those contracts are not federal subsidies.[2]

These allegations confirm that Plaintiff's *Monell* and Rehabilitation Act claims against NaphCare fail as a matter of law.

## B.    Procedural Background

Plaintiff initiated this lawsuit on November 11, 2020, bringing claims under 42 U.S.C. Section 1983, Section 504 of the Rehabilitation Act, and Washington state law against Clark County, Clark County Jail, and NaphCare. *See* ECF No. 1. Plaintiff amended his complaint on April 8, 2021 to add Wellpath as a defendant. *See* ECF No. 27. Wellpath moved to dismiss the Section 1983, Rehabilitation Act, and other claims on May 3, 2021. *See* ECF No. 31. On January 4, 2022, the Court dismissed Plaintiff's claims without prejudice and with leave "to file a second amended complaint addressing the deficiencies in the pleadings." ECF No. 42.

Plaintiff filed his Second Amended Complaint on January 25, 2022. *See* ECF No. 43. Wellpath moved to dismiss on February 8, 2022, *see* ECF No. 47, and NaphCare and Clark County partially joined in that motion, *see* ECF Nos. 52, 53. Regarding Plaintiff's Section 1983 claim,

---

[2]  USASpending.gov,  https://www.usaspending.gov/search/?hash=4570834ee4314ed9a731c3dee8626d41 (last accessed May 11, 2023).

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 4
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Wellpath largely focused on Plaintiff's "conclusory allegation that Wellpath had an

2   unconstitutional policy based '[u]pon information and belief.'" ECF No. 47 at 8. Wellpath

3   otherwise contended that the allegations underlying the Section 1983 claim were conclusory. *See*

4   *id.* On the Rehabilitation Act claim, Wellpath focused on Plaintiff's failure to sufficiently allege

5   who acted on behalf of Wellpath, and whether Wellpath provided adequate medical care to

6   Plaintiff. *See id.* at 6–7.

7       On May 23, 2022, the Court granted Wellpath's motion in part, declining to dismiss the

8   Section 1983 claim based on the specific arguments Wellpath raised. *See* ECF No. 60. In particular,

9   the Court held that allegations made "on information and belief" can support a Section 1983 claim.

10  *Id.* at 10. The Court otherwise confined its analysis to whether Plaintiff adequately pleaded the

11  existence of a policy, finding that he did. *Id.* at 11. The Court further dismissed the Rehabilitation

12  Act claim for reasons not raised by Wellpath—namely, that Plaintiff failed to allege that "the

13  failure to provide a gluten-free diet was *because of his* Celiac Disease." *Id.* at 9.

14      Plaintiff moved the Court to reconsider its dismissal of the Rehabilitation Act claim on

15  June 6, 2022. *See* ECF No. 61. He clarified the legal theory underlying his Rehabilitation Act

16  claim: Rather than alleging that any defendant affirmatively discriminated against him (by

17  depriving him food) because of his alleged disability (celiac disease), Plaintiff asserted that

18  Wellpath violated the Rehabilitation Act by "fail[ing] to take the necessary steps, which were its

19  responsibility, to ensure that he had access to food services equal to that of other inmates." *Id.* at

20  9. On August 12, 2022, the Court granted Plaintiff's motion on a narrow ground—that Plaintiff's

21  "failure to accommodate" theory is legally cognizable. *See* ECF No. 68 at 4. The Court did not

22  consider any other elements of the Section 1983 or Rehabilitation Act claims in that order, nor in

23  its prior orders on Wellpath's motions to dismiss.

24      This is NaphCare's first motion under Rule 12.

25

26

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 5
(No. 3:20-cv-06106-DGE)
162032459

1

### III.    ARGUMENT

2       "Judgment on the pleadings [under Rule 12(c)] is properly granted when, accepting all

3  factual allegations in the complaint as true, there is no issue of material fact in dispute, and the

4  moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102,

5  1108 (9th Cir. 2012) (alteration and citation omitted). "Analysis under Rule 12(c) is 'substantially

6  identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine

7  whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"

8  *Id*. (citation omitted). In such cases, a Rule 12(c) motion is "functionally identical" to a Rule

9  12(b)(6) motion, and courts apply the "same standard." *United States ex rel. Cafasso v. Gen.*

10 *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted).

11      The "principal difference" between Rule 12(b)(6) and Rule 12(c) motions "is the time of

12 the filing." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Rule 12(c)

13 motions, unlike Rule 12(b)(6) motions, may be filed anytime "[a]fter the pleadings are closed—

14 but early enough not to delay trial." Fed. R. Civ. P. 12(c). This motion is timely because the Court

15 has not set a trial date. *Washington v. Matheson Flight Extenders, Inc.*, 2021 WL 489090, at *2

16 n.4 (W.D. Wash. Feb. 10, 2021) (finding a 12(c) motion timely "[b]ecause no trial is currently

17 scheduled").

18      Dismissal is proper when the complaint "lacks a cognizable legal theory" or "fails to allege

19 sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th

20 Cir. 2013). To assess whether a complaint alleges sufficient facts, courts use the pleading standard

21 established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556

22 U.S. 662 (2009). "Factual allegations must be enough to raise a right to relief above the speculative

23 level," *Twombly*, 550 U.S. at 555, and must state a *plausible* claim for relief, which requires

24 "content that allows the court to draw the reasonable inference that the defendant is liable for the

25 misconduct alleged," *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of

26 action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, "[a] pleading that

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 6
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

offers labels and conclusions . . . will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct*, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

\* \* \*

Even accepting as true the allegations in the Second Amended Complaint, and drawing all reasonable inferences in favor of Plaintiff, he still fails to allege a cognizable legal claim against NaphCare under *Monell* or Section 504 of the Rehabilitation Act. The *Monell* claim fails because the alleged records-review policy is not facially unconstitutional and it does not otherwise trigger *Monell* liability. Plaintiff likewise cannot satisfy the threshold elements of a Rehabilitation Act claim against NaphCare, and he certainly cannot recover compensatory damages for that claim.

## A.    Plaintiff fails to sufficiently allege a Section 1983 claim against NaphCare.

At its core, Plaintiff's entire case against NaphCare is based on a negligence theory; namely, that his medical records were not reviewed quickly enough to get his "gluten free" diet approved by the Jail. Plaintiff tries to morph that strained (but relatively straightforward) negligence claim into a *constitutional* injury by asserting a *Monell* claim against NaphCare, the company providing medical services to the Jail.

But not every negligence claim can rise to the level of a constitutional one. A Section 1983 claim "based on prison medical treatment[] . . . must show 'deliberate indifference to serious medical needs,'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), and "[l]iability . . . arises only upon a showing of personal participation by the defendant," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). It is black letter law that there is no *respondeat superior* liability under Section 1983, and an employer like NaphCare can only be held liable where it "itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. 658). That's because "in enacting § 1983, Congress did not intend

to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997) (citing *Monell*, 436 U.S. at 694).

Plaintiff's *Monell* claim fails outright because he does not and cannot meet the exacting standard to assert *Monell* liability against NaphCare. Unless the policy or custom is facially unconstitutional, the policy must "demonstrate[] municipal fault, i.e., deliberate indifference." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citation omitted). "This is a high bar." *Id.* (citation omitted). The plaintiff primarily must prove "that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences" (culpability). *Id.* (cleaned up). And the plaintiff must show that "the municipal action was the 'moving force' behind the federal-rights violation" (causation). *Id.* (cleaned up).

## 1.    Plaintiff bases his *Monell* claim on an alleged records-review policy.

Plaintiff apparently advances his Section 1983 claim based on an alleged policy according to which inmates do "not receive medically necessary diets" until NaphCare is able to verify the need for those diets with the inmate's medical records (referred to throughout as "records-review policy"). *See, e.g.*, SAC ¶ 22; *see also* ECF No. 57 at 12. Later in the Second Amended Complaint, Plaintiff seemingly advances a different theory: that NaphCare and the other defendants partook in an amorphous "custom or practice of not providing medically necessary meals in a timely manner to individuals with disabilities, including a custom or practice of not taking the necessary steps to ensure the timely provision of gluten-free meals for individuals with Celiac Disease." SAC ¶ 109. Plaintiff does not link this "custom or practice" theory to the records-review policy.

Plaintiff cannot proceed on the "custom or practice" theory, because Plaintiff has not alleged and cannot demonstrate that the claimed custom or practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (citations omitted). That is fatal to Plaintiff's "custom or practice"

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 8
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    theory, because "[l]iability for improper custom may not be predicated on isolated or sporadic

2    incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

3    the conduct has become a traditional method of carrying out the policy." *Id.* (quoting *Trevino v.*

4    *Gates*, 99 F.3d 911, 918 (9th Cir. 1996)) (affirming summary judgment in favor of county for

5    plaintiff's failure to cite "any other event involving similar conduct or constitutional violations").

6         This Court previously confirmed that Plaintiff does adequately allege *the existence* of a

7    formal policy (the records-review policy) as a predicate to a Section 1983 claim. *See* ECF No. 60

8    at 11. But Plaintiff fails to demonstrate that the records-review policy is facially unconstitutional

9    or furnishes the basis for liability under *Monell*.

10        **2.    The records-review policy is not facially unconstitutional.**

11        Plaintiff alleges that the records-review policy "was on its face life-threatening, dangerous,

12   and discriminatory to individuals with disabilities that require medically necessary food." SAC ¶

13   22. He does not specifically tether this allegation to his Section 1983 claim or otherwise cite facts

14   in support of a facial challenge.

15        To the extent Plaintiff does mean to lodge a facial challenge under the Constitution, that

16   claim fails as a matter of law. As far as NaphCare can tell, there is not a single case holding that a

17   policy like the one here—requiring medical records review before prescribing a special diet—

18   facially or otherwise violates the Constitution. To the contrary, courts have characterized such

19   policies as "reasonable," *Tate v. Bell*, 2007 WL 1965592, at *6 (S.D. Ohio July 3, 2007), and

20   routinely dismissed Section 1983 claims in cases where prison officials complied with them, *see,*

21   *e.g.*, *Ragan v. Wellman*, 2022 WL 4244415 (W.D. Mich. July 19, 2022), *report and*

22   *recommendation adopted*, 2022 WL 3908458, at *5 (W.D. Mich. Aug. 31, 2022); *Brooks v.*

23   *Rogers*, 2021 WL 1589227 (W.D. Mich. Feb. 9, 2021), *report and recommendation adopted*, 2021

24   WL 972804, at *5 (W.D. Mich. Mar. 16, 2021); *Edwards v. Cornelius*, 2012 WL 2087413, at *8

25   (M.D. Fla. June 8, 2012).

26

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 9
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

### 3.    The records-review policy does not otherwise trigger *Monell* liability.

Claims alleging that a facially lawful policy, as applied to a particular plaintiff, present "difficult problems of proof." *Wexford*, 18 F.4th at 236 (quoting *Brown*, 520 U.S. at 406). "*[C]onsiderably more proof than the single incident [involving the plaintiff] will be necessary in every case* to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional violation." *Id.* (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985)) (internal quotation marks omitted) (emphasis in original).

To proceed past the Rule 12 stage on a *Monell* claim, a plaintiff specifically must "introduce evidence of a prior pattern of similar constitutional violations." *Wexford*, 18 F.4th at 234. Only in "rare" cases—where "the risk of unconstitutional consequences from a municipal policy" are "patently obvious"—will a plaintiff be able to carry his burden "without proof of a pre-existing pattern of violations." *Id.* at 236.

Plaintiff fails to plead sufficient facts, under either the "prior pattern" theory or otherwise, to satisfy either the culpability or causation elements of a *Monell* claim.

### a.    Plaintiff fails to allege a pattern of similar constitutional violations.

A "prior pattern" of similar violations is necessary to establish a *Monell* claim because it "puts the municipality on notice of the unconstitutional consequences of its policy, such that its 'continued adherence' to the policy might establish the conscious disregard for the consequences of its action—the 'deliberate indifference'—necessary to trigger municipal liability." *Wexford*, 18 F.4th at 246 (cleaned up). A pattern is similarly necessary to show that the policy itself, "rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* (citation omitted).

Plaintiff fails to allege a single other violation—let alone a prior pattern of violations—stemming from NaphCare's adherence to the records-review policy. He exclusively cites his own alleged deprivation as the basis for his claim. *See* SAC ¶¶ 102–14. These omissions are fatal to Plaintiff's Section 1983 claim. *See Wexford*, 18 F.4th at 237 (reversing jury verdict in favor of

plaintiff where he "did not offer substantive evidence that collegial review had caused unconstitutional delays for other prisoners" and "only offered substantive evidence of collegial review causing unconstitutional delays in his own healthcare").

Courts have consistently dismissed Section 1983 claims against employers where the plaintiff alleges only isolated incidents of employee negligence or misconduct. *Brown*, 520 U.S. at 403 (collecting cases) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) ("Plaintiffs' allegations amount to no more than an isolated or sporadic incident that cannot form the basis of *Monell* liability for an improper custom." (citation and quotations omitted)); *Canyon Props., LLC v. Pierce County*, 2020 WL 639412, at *3 (W.D. Wash. Feb. 11, 2020) ("[I]mposing liability for unconstitutionally enforcing a constitutional law in isolated instances would amount to precisely the type of *respondeat superior* liability that was rejected in *Monell*."). The Court must do the same thing here.

### b. Plaintiff fails to allege that the records-review policy constituted deliberate indifference to a "patently obvious" risk.

The *Monell* claim also fails because Plaintiff does not and cannot alternatively allege that the policy rose to the level of deliberate indifference of a "patently obvious" risk of constitutional violations. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410 (cleaned up). "Merely alleging that Defendants acted with deliberate indifference is conclusory and does not show that the alleged deficiencies were obvious and the constitutional injury was likely to occur." *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (citations and quotations omitted) (collecting cases).

*Castro v. County of Los Angeles* is one of the few cases involving bona fide deliberate indifference to a "patently obvious" risk of constitutional violations, and it illustrates the flaws with Plaintiff's liability theory. 833 F.3d 1060 (9th Cir. 2016). A police station engaged in a custom

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 11
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    of housing highly intoxicated detainees together in "sobering cells" without visual surveillance or

2    audio monitoring. *Id.* at 1065. The risk of unconstitutional deprivations from this custom (that

3    detainees would be injured) was obvious, particularly given county regulations mandating that

4    "sobering cells" include audio monitoring. *Id.* at 1077. What's more, the police station actually

5    appreciated the risk, as reflected by its own manual mandating that a sobering cell "allow for

6    maximum visual supervision of prisoners by staff." *Id.*

7         In contrast to the plaintiff in *Castro*, Plaintiff here does not allege any facts suggesting that

8    NaphCare actually knew of the alleged risk—that the records-review policy would deprive inmates

9    of special diets. Nor does he otherwise allege how that risk is "patently obvious." The alleged

10   policy itself supports the opposite inference: It sets forth procedures meant to ensure that inmates

11   *are* given diets that meet their unique medical and other needs. Where the central purpose of the

12   policy is to provide inmates with special diets (not to deprive them of food), it makes no sense that

13   the policy would "obviously" deprive them of the same thing.

14        Plaintiff's *Monell* claim suffers from more problems. Plaintiff necessarily assumes, for

15   instance, that the records-review policy requires all inmates to provide NaphCare with medical

16   records before they can receive a special diet. Plaintiff here ignores that certain inmates with

17   readily observable or confirmable conditions, such as pregnancy or diabetes, would not need to

18   provide medical documentation to substantiate their need for a special diet. He does not contend

19   that these same inmates would need to furnish documentation of their condition. This hypothetical

20   undercuts the notion that medical records are always necessary to a special-diet prescription, and

21   that the process of obtaining and reviewing those records will unduly delay the process of

22   prescribing special diets.

23        Plaintiff further impermissibly assumes that Clark County's provision of a special diet is

24   strictly contingent on NaphCare's approval of that diet. To the contrary, the records-review policy

25   sets forth the preconditions for NaphCare's *recommendation* of special diets; it does *not* dictate

26   under what circumstances that *Clark County, the sole entity responsible for preparing and*

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 12
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*providing inmate diets*, will provide special diets to inmates. The alleged records-review policy, then, does not impede Clark County's ability to provide an inmate with a special diet. Plaintiff himself seems to recognize this fact by seeking to hold Clark County liable for failing to provide Plaintiff with a gluten-free diet in the days even before NaphCare recommended it. *See* SAC ¶ 25.

The records-review policy in these ways resembles the same one underlying an unsuccessful *Monell* claim in *Wexford*. An inmate in an Illinois state prison alleged that Wexford Health Sources, Inc., a jail medical care provider, unduly delayed in diagnosing and treating his kidney cancer pursuant to a "collegial review" policy. 18 F.4th at 221. That policy required Wexford's corporate office to preapprove offsite care for inmates. *Id.* The inmate contended, and the district court concluded, that the policy "would obviously and inevitably delay urgently needed care for some inmates, including Plaintiff." *Id.* at 237. The Seventh Circuit disagreed, concluding that the policy would not obviously delay urgently needed care for inmates, because the policy allowed Wexford's medical directors to circumvent the collegial review process in emergent or urgent situations. *Id.* at 237. So too here with the records-review policy, which does not necessarily apply to all inmates of all conditions, and which Clark County can circumvent at its option.

Even if the above assumptions were true—i.e., that no inmate could receive a special diet without NaphCare first prescribing it based on that inmate's medical records—Plaintiff's claim still fails because he does not sufficiently allege that delays are an inevitable consequence of the policy. He does not cite even one other time (let alone a prior pattern) that an inmate experienced delays in receiving a medical diet. He merely extrapolates from a single incident that the policy must yield delays in all cases. That allegation is a far cry from supporting a "patently obvious" risk of constitutional violations.

At any rate, modest delays that the diet-approval process may entail do not themselves amount to a constitutional violation. *See Smith v. Tom Green Cnty. Jail*, 2018 WL 3873665, at *12 (N.D. Tex. Aug. 15, 2018) (concluding that delay in ordering a medical diet "does not rise to the level of a constitutional violation"). At most, they are a circumstance of *individual NaphCare*

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 13
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  *employees'* "one-time negligent administration" of the policy. *Wexford*, 18 F.4th at 240. *Monell*

2  expressly forecloses that theory of Section 1983 liability. *See id.*

   **c.    Plaintiff fails to allege that the records-review policy was
3          the "moving force" behind a constitutional violation.**

4         Plaintiff's Section 1983 claim fails for another reason: He has not alleged that the records-

5  review policy was the "moving force" behind his alleged deprivation. *Wexford*, 18 F.4th at 235.

6  "This 'rigorous causation standard' requires 'a direct causal link' between the challenged

7  municipal action and the violation of the plaintiff's constitutional rights." *Id.* (quoting *First*

8  *Midwest Bank ex rel. La Porta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021)) (cleaned up).

9  The plaintiff must show that the policy was both the but-for and proximate cause of the violation.

10 *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012).

11        Plaintiff's most significant failing is that he exclusively cites the conduct of NaphCare's

12 *employees*—not any policy—as the cause of his alleged injuries. Nearly all of the Second

13 Amended Complaint, in fact, specifically concerns the conduct of individual NaphCare employees:

14 Plaintiff contends that NaphCare and the other defendants "fail[ed] to take the steps necessary to

15 ensure that he and access to medically necessary gluten-free meals" (SAC at 1); failed to respond

16 to certain of Plaintiff's grievances (SAC ¶ 62); made "false statements and assurances" to Plaintiff

17 (SAC ¶¶ 63, 71); and failed to "act" after Plaintiff's family contacted Clark County and the State

18 Attorney General "in an attempt to seek intervention for [Plaintiff's] health" (SAC ¶ 72). Plaintiff

19 almost exclusively cites the defendants' "acts" and/or "omissions" (not any policy) as the "cause"

20 or "result" of his alleged damages. *See, e.g.*, SAC ¶¶ 76, 105, 106, 108. Those "acts" (or failure to

21 act) necessarily would have been carried out by the defendants' employees.

22        At no time in the Second Amended Complaint does Plaintiff link the records-review policy

23 to NaphCare's claimed failure to provide him with a gluten-free diet. There are only two

24 paragraphs that get close, but they do not allege that *the records-review policy* caused his claimed

25 damages. Plaintiff here instead subtly shifts his theory of the case, alleging for the first time in his

26

193-paragraph complaint that the defendants had a "*custom or practice* of not taking the necessary steps to ensure the timely provision of gluten-free meals for individuals with Celiac Disease." SAC ¶ 109 (emphasis added); *see also id.* ¶ 110 ("The *custom or practice* of [defendants] of not taking the necessary steps to ensure that individuals with Celiac Disease such as [Plaintiff] have timely access to gluten-free meals caused [Plaintiff's] injuries." (emphasis added)). As mentioned, Plaintiff does not allege any facts supporting a "custom or practice" theory of Section 1983 liability. *See supra* at 8–9. Plaintiff may not even intend to invoke that theory of *Monell* liability, instead citing a generalized "custom or practice" for the distinct purpose of attempting to allege a causal link between *some policy* (or custom or practice) and his claimed damages. He does not at any point, however, link *the records-review policy* to those damages.

More to the point: None of *NaphCare's* alleged policies or customs could be the "moving force" behind Plaintiff's alleged injuries because there was nothing stopping the County from just giving him gluten-free meals *even without a NaphCare recommendation*. There is no law or regulation blocking the County from simply serving gluten-free meals to anyone who simply asks for one. That NaphCare would wait for *medical* records before making a *medical determination* is hardly surprising, but not the "moving force" behind any injury.

Plaintiff's own allegations confirm that NaphCare was not the moving force behind his alleged injuries. In fact, according to Plaintiff, *all meals* at Clark County Jail either contained gluten or likely were contaminated with gluten. *See* SAC ¶¶ 53, 57, 62, 66, 71. No matter how quickly NaphCare recommended a "gluten-free" meal for Plaintiff, then, he still would not have received one. Plaintiff therefore cannot say that, but for NaphCare's conduct, he would have received a gluten-free diet.

Because Plaintiff fails to cite a single aspect of the records-review policy that caused his alleged harm, he cannot demonstrate that this is one of those "rare" cases justifying Section 1983 liability. On the "causation" element of the *Monell* test, then, Plaintiff again reveals that this is a classic example of *respondeat superior* masquerading as a Section 1983 claim.

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 15
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
              \*     \*     \*

2      Plaintiff has not alleged a prior pattern of constitutional violations by the records-review

3 policy. He has not alleged any facts suggesting a "patently obvious" risk that the policy would

4 yield constitutional violations. And he fails to explain how the policy, rather than the defendants'

5 employees, caused any injuries. Each of these failings independently requires dismissing

6 Plaintiff's Section 1983 claim asserted against NaphCare.

7 **B.**     **Plaintiff fails to sufficiently allege a Rehabilitation Act claim against NaphCare.**

8      Plaintiff's claim under the Rehabilitation Act fails outright because he cannot possibly

9 meet the elements of this claim. To prevail on a claim under Section 504 of the Rehabilitation Act,

10 a plaintiff "must show that (1) he is an individual with a disability; (2) he is otherwise qualified to

11 receive the benefit; (3) he was denied the benefits of the program by reason of his disability; and

12 (4) the program receives federal financial assistance." *Updike v. Multnomah County*, 870 F.3d 939,

13 949 (9th Cir. 2017) (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). To

14 obtain compensatory damages, the plaintiff further must show that the denial was the result of

15 intentional discrimination or deliberate indifference. *Duvall*, 260 F.3d at 1138–39.

16     **1.**     **NaphCare isn't the relevant party for Plaintiff's Rehabilitation Act claim.**

17      A plaintiff can bring a Rehabilitation Act claim only against the party that is responsible

18 for and failed to provide the requested accommodation, as illustrated by *Mullen v. Commissioners*

19 *for Adams County, Colorado*, 2022 WL 126618 (D. Colo Apr. 28, 2022). Ms. Mullen, a deaf

20 woman who was arrested for assault, alleged that she was denied an American Sign Language

21 interpreter throughout the course of her arrest, booking, and detention at Adams County Detention

22 Facility. *Id.* at \*1. She brought Rehabilitation Act claims against the Adams County Board of

23 County Commissioners and other defendants. *Id.* at \*3. The Court granted the Board's motion to

24 dismiss, concluding that the Board was not responsible for jail operations, notwithstanding Ms.

25 Mullen's threadbare allegations that the Board restricted the budget for ASL interpreters and

26 otherwise exercised control over jail accommodations. *Id.* at \*7. Courts in other cases have

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 16
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  similarly dismissed Rehabilitation Act claims brought against persons or entities with no

2  responsibility for the requested accommodation. *See, e.g.*, *Zongo v. Brott*, 2022 WL 2182196, at

3  *10 (D. Minn. Mar. 30, 2022) (dismissing Rehabilitation Act claim against jail officer where

4  plaintiff "fails to draw a connection between Sheriff Brott in his official capacity and the lack of

5  lactose-free options at breakfast"); *Norman v. Texas Dep't of Criminal Justice*, 293 F. App'x 285,

6  287–88 (5th Cir. 2008) (affirming dismissal of Rehabilitation Act claim, where "TDCJ was not

7  responsible for the daily medical operations at the prison, and . . . neither the TDCJ nor any of its

8  employees had any supervisory or enforcement authority over the university health care staff");

9  *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 181 (3d Cir. 2002) (same, where

10  defendants "had no decisionmaking authority over" plaintiff).

11      Like the Board in *Mullen*, NaphCare here is not the proper party for Plaintiff's

12  Rehabilitation Act claim because *NaphCare is not in charge of the food at Clark County Jail*. In

13  fact, NaphCare was not responsible for providing inmates with *any food whatsoever*, gluten-free

14  or otherwise. As Plaintiff himself acknowledges, food was exclusively Clark County Jail's

15  responsibility. *See* SAC ¶ 18. In other words, the only entity *in charge of the accommodation* was

16  the County, not NaphCare.

17      Plaintiff may attempt to overcome this fact by alleging that NaphCare indirectly exercises

18  control over diets by declining to prescribe them until confirming their necessity based on inmates'

19  medical records. That argument would fare no better than Ms. Mullen's unsuccessful claim that

20  the Board used its budget to indirectly restrict the availability of ASL interpreters. *Mullen*, 2022

21  WL 1266618, at *7. In other words, indirect control is not enough. That argument also would

22  ignore Clark County's ability to provide special diets even without a nursing recommendation.

23  Again, there is nothing stopping Clark County Jail from simply giving any inmate a special-diet

24  or gluten-free diet upon request.

25

26

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 17
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Because Plaintiff's Rehabilitation Act claim exclusively concerns an accommodation that only *Clark County* could provide (i.e., providing gluten-free meals), NaphCare is not a proper party to this claim, and the Court should dismiss this claim as to NaphCare.

### 2. NaphCare does not "receive[] federal financial assistance."

The Rehabilitation Act exclusively applies to entities that "receive[] federal financial assistance." 29 U.S.C. § 794(a). "Courts interpreting § 504 of the Rehabilitation Act have consistently construed 'Federal financial assistance' to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided." *Mullen*, 2022 WL 126618, at *12 (quoting *Lee v. Corr. Corp. of Am./Correctional Treatment Facility*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014)).

Applying this requirement, courts have consistently dismissed Rehabilitation Act claims against jail medical service providers like NaphCare. *See, e.g.*, *Mullen*, 2022 WL 126618, at *12; *Eby v. Okezie*, 2021 WL 4146882, at *6 (N.D. Ill. Sept. 13, 2021); *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 440 (E.D. Penn. 2020); *Gross v. Landry*, 2019 WL 1270922, at *9 (D. Maine March 19, 2019).

The Court must dismiss the Rehabilitation Act claim against NaphCare for the same reason. Plaintiff cursorily alleges that NaphCare has received "financial assistance including substantial funds from the United States Department of Justice." SAC ¶ 5. Plaintiff here apparently references "compensation" from the federal government "for services provided" under federal contracts,[3] which cannot support a Rehabilitation Act claim. *Mullen*, 2022 WL 126618, at *12. Critically, *Plaintiff does not, nor could he, otherwise allege that NaphCare receives federal subsidies.* The Court must dismiss his claim accordingly. *See Mullen*, 2022 WL 126618, at *13 (dismissing Rehabilitation Act claim where "Plaintiff does not allege that Wellpath receives subsidies from the federal government").

---

[3] *See* USASpending.gov, https://www.usaspending.gov/search/?hash=4570834ee4314ed9a731c3dee8626d41 (last accessed May 11, 2023).

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 18
(No. 3:20-cv-06106-DGE)
162032459

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 3. Plaintiff otherwise fails to allege facts necessary to his Rehabilitation Act claim.

Even if Plaintiff could establish that NaphCare is the proper party and receives federal subsidies (he cannot), he still fails to plead facts sufficient to satisfy the remaining elements of a Rehabilitation Act claim. Most significantly, Plaintiff fails to allege intentional discrimination or deliberate indifference as prerequisites to recovery of compensatory damages. *See Duvall*, 260 F.3d at 1138–39. The second amended complaint is completely bereft of any allegation of intentional discrimination. And for the reasons explained above, *see supra* at 10–13, Plaintiff has alleged no facts supporting NaphCare's deliberate indifference. At most, the complaint reflects generalized allegations of "bureaucratic slippage" or "an absence of effective communication and coordination" between jail entities—allegations that are not sufficient to permit recovery on a Rehabilitation Act claim. *Updike*, 870 F.3d at 952 (affirming grant of summary judgment in favor of defendants).

### C. The Court should dismiss Plaintiff's *Monell* and Rehabilitation Act claims with prejudice.

Dismissal without leave to amend is appropriate when an amended complaint fails to cure pre-existing deficiencies, or "[w]here it is clear that a complaint 'could not be saved by any amendment.'" *Hover v. Seattle-First Nat'l Bank*, 2018 WL 1695403, at *2 (W.D. Wash. Apr. 6, 2018) (quoting *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010)); *Young v. Dep't of Corr.,* 2007 WL 703133, at *3 (W.D. Wash. Mar. 2, 2007); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir. 1996) (affirming dismissal with prejudice where "the District Court had already granted plaintiffs the right to amend their complaint once" and amendment would not cure the pleading's deficiencies).

Fact discovery is now closed, and Plaintiff has long had access to NaphCare's documents and other information bearing on the alleged records-review policy. If Plaintiff was capable of making out the bare elements of his Section 1983 or Rehabilitation Act claims, he would have. His

1   persistent failure to do so confirms that any amendment would be futile. The Court should therefore

2   dismiss with prejudice Plaintiff's Section 1983 and Rehabilitation Act claims against NaphCare.

3                           IV.     CONCLUSION

4          The Court should grant NaphCare's motion for partial judgment on the pleadings and

5   dismiss Plaintiff's Section 1983 and Rehabilitation Act claims against NaphCare with prejudice.

6          RESPECTFULLY SUBMITTED this 25th day of May, 2023.

7

8                                               By:  s/ David A. Perez
    I certify that this brief contains 6,694 words,      David A. Perez, Bar No. 43959
9   in compliance with the Court's order.            Zachary E. Davison, Bar No. 47873
                                                      Michelle L. Maley, Bar No. 51318
10                                                    Mason Ji, Bar No. 58292
11                                                    **Perkins Coie LLP**
                                                      1201 Third Avenue, Suite 4900
12                                                    Seattle, Washington 98101-3099
                                                      Telephone: +1.206.359.8000
13                                                    Facsimile: +1.206.359.9000
                                                      DPerez@perkinscoie.com
14                                                    ZDavison@perkinscoie.com
                                                      MMaley@perkinscoie.com
15                                                    MJi@perkinscoie.com

16                                                    *Attorneys for Defendant NaphCare, Inc.*

17

18

19

20

21

22

23

24

25

26

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – 20
(No. 3:20-cv-06106-DGE)
162032459

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## CERTIFICATE OF SERVICE

2           I certify under penalty of perjury that on May 25, 2023, I caused to be electronically filed

3    the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a

4    notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice

5    List.

6           Dated: May 25, 2023

7                                                          s/ Carla Bone
                                                           Carla Bone, Legal Practice Assistant
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

162032459