THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GAVEN PICCIANO,

          Plaintiff,

    v.

CLARK COUNTY, CLARK COUNTY JAIL,
WELLPATH, LLC, and NAPHCARE, INC.,

          Defendants.

No. 3:20-cv-06106-DGE

**DEFENDANT NAPHCARE, INC.'S
MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS**

NOTE ON MOTION CALENDAR:
AUGUST 11, 2023

ORAL ARGUMENT REQUESTED

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

163117634

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 2

    A.   Picciano receives an unsubstantiated celiac disease diagnosis ........................... 2

    B.   NaphCare promptly orders a gluten-free diet upon confirming Picciano's diagnosis ..................................................................................................... 3

    C.   Picciano inexplicably experiences a "controlled fall" ........................................ 3

    D.   Picciano suffers no long-term harm ................................................................. 4

III.   ARGUMENT ................................................................................................. 4

    A.   Dr. Isabel Hujoel – Gastroenterologist ............................................................ 6

        1.   Dr. Hujoel is not qualified to render an opinion that Picciano suffered damages ................................................................. 6

        2.   Dr. Hujoel did not follow any scientific methodology in opining that Picciano has celiac disease ................................................. 8

    B.   Dr. Holliday – Registered Dietician ................................................................. 9

        1.   Dr. Holliday is not qualified to opine that NaphCare violated the standard of care ............................................................ 9

        2.   Dr. Holliday's opinions are not supported by facts, data, or reliable principles or methods .................................................. 11

        3.   Dr. Holliday offers no opinions that will assist the trier of fact .............. 12

IV.   CONCLUSION ............................................................................................. 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES**

2
                                                                                    **Page(s)**

3  CASES

4  *Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
5      666 F.2d 393 (9th Cir. 1982) .......................................................................12

6  *Cleveland ex rel. Cleveland v. United States*,
7      457 F.3d 397 (5th Cir. 2006) .........................................................................6

   *Cooper v. Brown*,
8      510 F.3d 870 (9th Cir. 2007) .........................................................................8

9  *Daubert v. Merrell Dow Pharms., Inc.*,
10     509 U.S. 579 (1993)................................................................................1, 5, 6

11 *Daubert v. Merrell Dow Pharms., Inc. [Daubert II]*,
       43 F.3d 1311 (9th Cir. 1995) .........................................................................5
12
   *Diviero v. Uniroyal Goodrich Tire Co.*,
13     114 F.3d 851 (9th Cir. 1997) .........................................................................5

14 *Kumho Tire Co. v. Carmichael*,
15     526 U.S. 137 (1999)......................................................................................2

16 *Laux v. Mentor Worldwide, LLC*,
       295 F. Supp. 3d 1094 (C.D. Cal. 2017) *aff'd*, 786 F. App'x 84 (9th Cir. 2019) ......................6
17
   *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,
18     89 F.3d 594 (9th Cir. 1996) ..........................................................................5

19 *Montera v. Premier Nutrition Corp.*,
20     2022 WL 1225031 (N.D. Cal. Apr. 26, 2022), ...............................................6, 9

21 *Schoen v. State Farm Fire & Cas. Co.*, 2022 WL 16579767
       2022 WL 16579767 (S.D. Ala. Nov. 1, 2022) .................................................11
22
   *Snyder v. Bank of Am., N.A.*,
23     2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ..................................................11

24 *Thomas v. Sheahan*,
       514 F. Supp. 2d 1083 (N.D. Ill. 2007) ...........................................................7
25

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – ii
(No. 3:20-cv-06106-DGE)

163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Wade v. BP Expl. & Prod., Inc.*,
    630 F. Supp. 3d 776 (E.D. La. 2022), *reconsideration denied*, 2022 WL
    17045863 (E.D. La. Nov. 17, 2022) ......................................................................................12

**STATUTES**

42 U.S.C. Section 1983 ............................................................................................................1

Section 504 of the Rehabilitation Act ......................................................................................1

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ..............................................................................................2, 5, 8, 11, 12

29 Victor J. Gold, Federal Practice & Procedure: Evidence § 6265.2 (2d ed. 2023) ...................12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## I.    INTRODUCTION

Plaintiff Gaven Picciano, who claims to have celiac disease, alleges that Wellpath, LLC, NaphCare, Inc., and Clark County Jail deprived him of a gluten-free diet while incarcerated at the Jail. To prevail on his negligence and 42 U.S.C. Section 1983 claims against NaphCare, Picciano must prove, among other things, that a NaphCare policy gave rise to a pattern of constitutional violations of the standard of care for jail medical service providers. And to prevail on his claim under Section 504 of the Rehabilitation Act, Picciano must prove, as relevant to this motion, that his alleged celiac disease is a "disability" that substantially alters his life activities). And to prevail on any claims, Picciano must prove that he suffered damages.[1]

Picciano hired Isabel Hujoel, M.D. to opine that Picciano has celiac disease and was injured from his stay at the Jail. He hired Mitchel Holliday, Ed.D. to opine that the defendants violated the standard of care.

Neither expert is qualified to give those opinions under the rigorous standard set by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Dr. Hujoel is a physician, with virtually no experience in a correctional setting, and is not qualified to render any opinion on damages. And Dr. Holliday's work as a prison dietician does not come close to validating his conclusion that all three defendants somehow breached some unspecified standard of care.

The Court must exclude both experts for additional reasons. Dr. Hujoel opined that Picciano has seronegative celiac disease, without administering *any* tests to validate that conclusion. And Dr. Holliday's opinion—that NaphCare and Wellpath should have entered an "interim" order for a gluten-free diet before confirming Picciano's alleged diagnosis—directly contradicts guidance that Dr. Holliday provided to the Federal Bureau of Prisons *expressly*

---

[1] Picciano must satisfy additional elements to prevail on his negligence, Section 1983, and Rehabilitation Act claims, including that an unconstitutional NaphCare policy caused his damages, that he is qualified to receive benefits under the Rehabilitation Act, and that NaphCare is a recipient of federal subsidies. As explained in NaphCare's pending motion for judgment on the pleadings, Picciano cannot satisfy any of these elements.

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 1
(No. 3:20-cv-06106-DGE)

163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *prohibiting* prison staff from approving special diets before confirming an inmate's food allergy.

2    Dr. Holliday's inconsistent, vague, and unfounded opinion will not remotely help the trier of fact.

3         For these reasons, the Court must exclude both experts' proposed testimony as unreliable,

4    speculative, contradictory, and lacking the "intellectual rigor" required by Rule 702. *Kumho Tire*

5    *Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

6                            **II.    STATEMENT OF FACTS**

7    **A.    Picciano receives an unsubstantiated celiac disease diagnosis.**

8         In May 2018, Picciano visited Marquette General Hospital for generalized gastrointestinal

9    problems. Picciano weighed 180 pounds. His providers administered an endoscopy, took a biopsy,

10   and conducted a blood test. Although they concluded that Picciano had celiac disease, the results

11   of his visit were inconclusive for at least two reasons. First, Picciano did not undergo a follow-up

12   endoscopy and biopsies to confirm the accuracy of his initial diagnosis. Decl. of David A. Perez

13   ("Perez Decl."), Ex. A (IME); *see also id.* Ex. B (Expert Report of Andrew Ross, the "Ross

14   Report") at 1. Second, Picciano's blood tests revealed no markers for celiac disease. *Id.*

15        Almost two years later, Picciano was booked into Clark County Jail. Picciano weighed 180

16   pounds—that is, exactly what he weighed in 2018. *Id.* Ex. C (Baraga County Memorial Hospital

17   Records) at BCMH 000034-35, 39, 41. He told a Wellpath nurse at screening that he had celiac

18   disease. *Id.* Ex. D (Intake Package) at NC000064. In accordance with Wellpath and Jail policy, the

19   nurse asked Picciano to release his medical records to confirm his diagnosis. Picciano refused on

20   the belief that he would "get[] out tomorrow." *Id.* Ex. E (Receiving Screening) at NC000015.

21        Picciano did not "get out tomorrow," and he began to submit demands to the Jail for a

22   gluten-free diet. *See, e.g., Id.* Ex. F (January 31, 2020 Inmate Request Slip) at NC000002. He

23   continued to refuse to release his medical records, leaving the Jail and Wellpath with few options

24   to satisfy Picciano's demands. Wellpath ultimately advised Picciano to, and Picciano did, consume

25   items from the standard inmate meal that did not contain gluten. *Id.* Ex. G (Expert Report of

26   Kathryn J. Wild, the "Wild Report") at 6. This is a common method used by people with celiac

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 2
(No. 3:20-cv-06106-DGE)

163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  disease. *Id.* Ex. H (Deposition of Thomas Fowlkes, the "Fowlkes Tr.") at 64:5-21. Picciano also

2  purchased and consumed many items from the jail commissary, including M&Ms, Reese's Peanut

3  Butter Cups, Skittles, Cheetos, and Doritos. *Id.* at 10. Picciano consumed these items without

4  incident, even though they contain at least trace amounts of gluten. Wild Report at 10.

5  **B.   NaphCare promptly orders a gluten-free diet upon confirming Picciano's diagnosis.**

6  NaphCare began providing medical services at Clark County Jail on February 1, 2020—

7  three days into Picciano's incarceration. Although he refused to do so for the first five days of his

8  incarceration, Picciano finally signed a release of medical records on February 3. On February 5—

9  and in accordance with NaphCare and Jail policy—NaphCare reviewed, approved, and faxed the

10  release to Picciano's outside provider, Marquette General. NaphCare received Picciano's records

11  on February 6. A NaphCare licensed medical doctor reviewed the records, confirmed that Picciano

12  had been diagnosed with celiac disease in 2018, and, on February 8, approved a gluten-free diet to

13  begin on February 9. Perez Decl. Ex. I (Marquette General Medical Records) at NC000014.

14  **C.   Picciano inexplicably experiences a "controlled fall."**

15  The next day, Picciano had a "controlled fall" in his cell. NaphCare and the Jail guards

16  responded promptly and in accordance with Jail policy by administering Narcan, a commonly-

17  used emergency antidote for drug overdoses. When NaphCare attempted to take Picciano's vitals,

18  Picciano resisted opening his eyes, demonstrating that he had not lost consciousness. *See* Perez

19  Decl., Ex. J (Legacy Salmon Health Records) at NC000043.

20  Picciano was transferred to Legacy Salmon Creek emergency department. After physically

21  examining Picciano and running blood tests, Legacy reported that his labs and vital signs were

22  "grossly normal," and that he did not have any "acute infectious process or electrolyte

23  derangements" or "acute arrhythmia." *Id.* In other words, Legacy found **nothing wrong** with

24  Picciano. They sent him back to the Jail the same day. *Id.* at NC000072.[2]

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [2] The only irregularity noted was the possibility of "orthostatic syncope," which is a change in blood pressure due to a change in movement or position. *Id.* at NC000072.

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 3
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**D.    Picciano suffers no long-term harm.**

Picciano was released from the Jail on February 20, 2020. On February 25 and March 17, he visited PeaceHealth Fisher's Landing Family Medicine, where he underwent labs, an endoscopy, and a biopsy. *Id.* Ex. K (PeaceHealth Medical Records) at PHV_000023–26. Those examinations found mild inflammation in Picciano's gastrointestinal system. *Id.* But they did not report any significant or long-term problems associated with Picciano's stay at the Jail. Picciano's weight was 176 pounds as of March 11, 2020. *Id.* Ex. L (The Vancouver Clinic Medical Records) at TVC000004–15. Thus, between his booking and release from Clark County Jail, **Picciano only lost four pounds**. *Id.* Such modest weight loss is common in a jail setting, where inmates do not have access to food all day. *Id.* Ex. M (Deposition of Alfred Joshua, the "Joshua Tr.") at 125:3–126:10. Even at his lowest weight, Picciano had a healthy body mass index. *See id.* Ex. N (Expert Report of Alfred Joshua, the "Joshua Expert Report") at 5; *id.* Ex. O (Deposition of Isabel A. Hujoel ("Hujoel Tr.") at 49:10-19.

## III.    ARGUMENT

To be admissible, expert testimony must meet five requirements:

1.    The expert offering testimony must be qualified "by knowledge, skill, experience, training, or education";

2.    "[T]he expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue";

3.    The testimony must be "based on sufficient facts or data";

4.    The testimony must be "the product of reliable principles and methods"; and

5.    The expert must have "reliably applied the principles and methods to the facts of the case."

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 4
(No. 3:20-cv-06106-DGE)

163117634

1    Fed. R. Evid. 702. As the Supreme Court explained in *Daubert*, "The adjective 'scientific' implies

2    a grounding in the methods and procedures of science." 509 U.S. 579, 590 (1993). "Similarly, the

3    word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id.*

4          Expert testimony need not "be 'known' to a certainty." *Id.* But, critically, "an inference or

5    assertion must be derived by the scientific method." *Id.* There must be "good grounds" for the

6    proposed testimony, "based on what is known." *Id.* In short, there must be indicia of "evidentiary

7    reliability—that is, trustworthiness." *Id.* The proponent of the expert testimony must prove that the

8    testimony meets these standards. *Id.* at 590 n.9 (emphasis omitted). *Lust By & Through Lust v.*

9    *Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

10          In *Daubert*, the Supreme Court "charged trial judges with the responsibility of acting as

11    gatekeepers" to enforce Rule 702 and "exclude unreliable expert testimony." Fed. R. Evid. 702,

12    Advisory Comm. Note to 2000 Amendments. This "gatekeeping function requires more than

13    simply 'taking the expert's word for it.'" *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*

14    *[Daubert II]*, 43 F.3d 1311, 1319 (9th Cir. 1995)). A district court cannot allow an expert to offer

15    opinions based on "unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal*

16    *Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).

17                                    *     *     *

18          Picciano hired two experts to opine on his alleged disability (celiac disease), the damages

19    he allegedly suffered from his stay at the Jail, and the defendants' alleged breach of the standards

20    of care. But neither expert is qualified to render these opinions, and both must be excluded for

21    additional reasons under *Daubert*.

22

23

24

25

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 5
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**A.      Dr. Isabel Hujoel – Gastroenterologist**



Dr. Hujoel has limited expertise in the field of medicine. She only recently became a resident physician at the University of Washington in 2021. Hujoel Tr. at 79:14-80:10. She has never worked in a jail or correctional facility, beyond spending one day at a jail while she was a medical student. *Id.* at 87:11-17; 87:25-88:5. She admitted that she "never practiced in emergency medicine" and that "it's been a long time since [she] practiced in internal medicine." *Id.* at 112:8-14. She certainly is not an economist or accountant, and she admitted that she is not qualified to opine on damages. *Id.* at 46:10-21.

Dr. Hujoel nonetheless opines that Picciano has celiac disease, and that he suffered "acute injury and distress" from not receiving gluten-free meals. *See* Perez Decl. Ex. P (Expert Report of Isabel Hujoel, the "Hujoel Report") at 10. As evidence of the distress, she relies on Picciano's "controlled fall" at the Jail. *See id.* at 10-11.

**1.      Dr. Hujoel is not qualified to render an opinion that Picciano suffered damages.**

As the gatekeepers under *Daubert*, courts routinely exclude opinions from doctors when they attempt to testify outside their field of expertise. *See, e.g.*, *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *9 (N.D. Cal. Apr. 26, 2022) ("Just because Dr. Silverman is qualified to testify about osteoporosis, bone health, and related issues does not mean he is qualified to testify on all other medical topics."); *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1098 (C.D. Cal. 2017) (excluding plastic surgeon's opinion that plaintiff suffered from a biotoxin disease allegedly caused by mold in a breast implant), *aff'd*, 786 F. App'x 84 (9th Cir. 2019); *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 405 (5th Cir. 2006) (internist was not qualified to testify as expert as to the standard of care owed by emergency room physicians, even if internist was qualified to testify as to appropriate standard of care for diagnosing congestive

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 6
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    heart failure);  *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1093 (N.D. Ill. 2007) (holding that a

2    physician who was not an expert on meningitis or infectious diseases could not testify as to the

3    manifestations of meningitis).

4            Dr. Hujoel stretches far beyond her limited expertise as a gastroenterologist. Her opinions

5    concern the damages Picciano claims to have suffered while housed at Clark County Jail. But as a

6    physician, rather than an economist or an accountant, Dr. Hujoel has no expertise to opine on

7    Picciano's damages. The doctor herself has admitted that she is not qualified to evaluate damages.

8    Hujoel Tr. at 46:10-21. The Court therefore should exclude those opinions of Dr. Hujoel regarding

9    any damages that Picciano suffered.

10           There are additional reasons why the Court should exclude Dr. Hujoel's "damages"

11    opinions. She bases them on NaphCare's emergency response to Picciano's "controlled fall," even

12    though Dr. Hujoel has no experience in emergency department care (Hujoel Tr. at 112:8-14) or in

13    a correctional setting (*id.* at 87:11-17; 87:25-88:5). And Dr. Hujoel followed no scientific

14    methodology in concluding that Picciano suffered "acute injury and distress." This is evidenced

15    by not only the dearth of any methodological recitations or literature that Dr. Hujoel cites in

16    support of her opinion, but also inconsistencies in her opinion: On one hand, Dr. Hujoel relies on

17    the fall as evidence of "acute injury and distress." *See* Hujoel Report at 10. On the other, Dr. Hujoel

18    admits that, after Picciano's fall, his vital signs, laboratory results, and electrolyte readings were

19    completely normal. Hujoel Tr. at 24:6-15. She likewise agreed that Picciano's four-pound weight

20    loss "would not necessarily trigger fire alarms." *Id.* at 44:18-23. And she testified that she sees no

21    evidence that Picciano suffered long-term harm, including cancer risk. *Id.* at 99:24-100:5. In other

22    words, Dr. Hujoel's testimony jibes with the emergency department's conclusion **that there was**

23    **nothing wrong with Picciano** during his incarceration. *Id.* at 20:21-25. But her "acute distress"

24    opinion contradicts that testimony and evidence. For these reasons, the Court should exclude Dr.

25    Hujoel's opinion that Picciano's "controlled fall" demonstrates "acute injury and distress."

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 7
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

### 2. Dr. Hujoel did not follow any scientific methodology in opining that Picciano has celiac disease.

Courts only admit expert testimony based in methodology that "is rigorously scrutinized and verified." *Cooper v. Brown*, 510 F.3d 870, 946 (9th Cir. 2007) (explaining that "only methods tested and subsequently accepted by the scientific community are methods on which the courts should rely"); *see also* Fed. R. Evid. 702(c) (requiring expert opinions to be "the product of reliable principles and methods").

Dr. Hujoel opines that Picciano's "acute injury and distress" stems from his celiac disease. *See* Hujoel Report at 10-11. But in reaching that conclusion, Dr. Hujoel fails to follow the methodologies outlined in her own report that are required to confirm celiac disease—specifically, taking a blood test for celiac disease markers, taking small-bowel biopsies, and administering a gluten challenge prior to an upper endoscopy. Hujoel Report at 4–5. These procedures are critical to validate a celiac disease diagnosis because, as Dr. Hujoel herself notes, that "diagnosis can be challenging and cannot be done based on history and physical exam alone." *Id*. at 5.

Dr. Hujoel inexplicably declined to follow any of these procedures. She did not, for instance, administer a "gluten challenge," which involves assessing the effects when a patient consumes certain amounts of gluten over a certain period. *See id.* at 5, 10. Dr. Hujoel instead merely interviewed Picciano by Zoom for an hour, believing that was enough to confirm a condition (seronegative celiac disease) experienced by only 5-15% of all patients with celiac disease. *Id.* at 5; Hujoel Tr. at 12:11-13:9.[3]

Beyond failing to independently verify Picciano's celiac disease, Dr. Hujoel further errs by ignoring evidence suggesting a contrary diagnosis. For instance, Dr. Hujoel does not wrangle with the fact that in 2018, Picciano's blood tests showed no markers for celiac disease. Hujoel Report at 8, 10. Rather than engaging with this issue, Dr. Hujoel simply claims that Picciano suffers from an exceedingly rare condition called seronegative celiac disease. *Id.* at 8; Hujoel Tr. at 85:5-17. In

---

[3] As Dr. Hujoel has acknowledged, Picciano himself likewise failed to take any steps to verify his 2018 diagnosis.

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 8
(No. 3:20-cv-06106-DGE)
163117634

1  reflexively reaching this conclusion, Dr. Hujoel fails to consider myriad alternative diagnoses,

2  including other types of gluten sensitivity.

3        Because Dr. Hujoel did not follow any scientific methodology for diagnosing seronegative

4  celiac disease, she should not be allowed to opine that Picciano had celiac disease.

5  **B.     Dr. Holliday – Registered Dietician**



6                                            Dr. Holliday is the Chief Dietician Officer of the United States

7  Public Health Service. He has experience as a dietician, but he is not a

8  medical doctor, nurse, or medical provider of any kind. Perez Decl. Ex.

9  Q (Deposition of Mitchell Holliday, the "Holliday Tr.") at 200:9-

10  201:3. He has no medical training and has no medical licenses. *See id.*

11  at 201:1-6. Thus, Dr. Holliday is a "doctor" only in the sense that he

12  holds a Doctorate of Education. *Id.* at 69:9-16. He cannot render a

13  diagnosis. *Id.* at 71:21-72:2. And he cannot write a medical prescription. *Id.* at 169:12-23. In his

14  capacity as a prison dietician, his authority is limited to *recommending—not prescribing*—certain

15  diets for inmates. *Id.* at 246:9-16. The ultimate decision of whether to prescribe a medical diet falls

16  squarely within the hands of jail medical service providers.

17        Dr. Holliday criticizes NaphCare and Wellpath for their decision to confirm Picciano's

18  *medical diagnosis* (celiac disease) before *prescribing* a gluten-free diet. *See* Perez Decl. Ex. R

19  (Expert Report of Mitchell Holliday, the "Holliday Report") at 9. He concludes that, by refusing

20  to immediately prescribe Picciano a gluten-free diet, NaphCare and Wellpath violated the standard

21  of care. *See id.* The Court must exclude this opinion for multiple reasons.

22        **1.     Dr. Holliday is not qualified to opine that NaphCare
                  violated the standard of care.**

23

24        In order to meet the test of admissibility, an expert must opine on issues within their field

25  of expertise. *See, e.g.*, *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *9.  By opining

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 9
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   on whether two jail medical service providers complied with the standard of care, Dr. Holliday far

2   exceeds his experience, training, and qualifications as a prison dietician.

3          That is primarily because Dr. Holliday is not a medical doctor, nurse, or provider; is not

4   qualified to render a diagnosis; and is not qualified to render a medical prescription. *See* Holliday

5   Tr. at 69:9-16; 71:21-72:2. That is also because Dr. Holliday has no certifications or other

6   qualifications that would allow him to interpret, apply, or opine on the standards set by the National

7   Commission of Correctional Health Care ("NCCHC") and the American Correctional Association

8   ("ACA"), Holliday Tr. at 69:7-19, 69:21-70:12, on which Dr. Holliday exclusively bases his

9   opinions, *see* Holliday Report at 3-5. And he has never audited a jail medical services provider to

10  ensure they complied these standards. Holliday Tr. at 109:19-110:8.

11         Perhaps because of his lack of his education, training, experience, and qualifications, Dr.

12  Holliday himself agrees that he is not qualified to opine on the standard of care for nurses or

13  physicians, like those NaphCare employs at Clark County Jail:

14              Q. Do you believe you're qualified to express an opinion on what
                the standard of care is in Washington for a registered nurse?
15
16              A. No.

17              Q. Same question. Do you think you're qualified to express what the
                standard of care is for a physician in the State of Washington?
18
19              A. I believe that would be better suited for other experts in this case.

20  Holliday Tr. 201:14-22.

21         Dr. Holliday nevertheless boldly proclaims that NaphCare and Wellpath violated the

22  standard of care by failing to immediately prescribe Picciano a gluten-free diet, even before they

23  could confirm that such diet was medically indicated. *See* Holliday Report at 8. Because Dr.

24  Holliday has no education, training, experience, or qualifications that would allow him to criticize

25  a jail medical service provider's diet prescription, the Court should exclude his opinions.

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 10
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

2.      **Dr. Holliday's opinions are not supported by facts, data,
or reliable principles or methods.**

To be admissible, expert opinions must be reliable—i.e., "based on sufficient facts or data"
and be "the product of reliable principles and methods." Fed. R. Evid. 702. An expert opinion can
be neither of these things if that opinion contradicts the same expert's prior statements. *See, e.g.*,
*Snyder v. Bank of Am., N.A.*, 2020 WL 6462400, at *6 (N.D. Cal. Nov. 3, 2020) (holding that
expert's opinion was "unreliable" and "incomprehensible" where the expert's 2018 opinion
contradicted his 2016 opinion on property values); *Schoen v. State Farm Fire & Cas. Co.*, 2022
WL 16579767, at *3-4 (S.D. Ala. Nov. 1, 2022) (excluding affidavit testimony that directly
contradicted deposition testimony).

One of the most concerning issues with Dr. Holliday's opinions is that they are squarely
contradicted by his own guidance to the Federal Bureau of Prisons. In 2017, Dr. Holliday served
as the "primary author" for a Bureau of Prisons "Management of Food Allergies" manual. Holliday
Tr. at 134:8-14. Dr. Holliday cited that very manual in his expert report in this case. *See* Holliday
Report at 8. The manual expressly *prohibits* ordering special diets for inmates until their food
allergies are confirmed, as excerpted below. *See* Holliday Tr. at 154:3-15; Perez Decl. Ex. S ("2017
Bureau of Prison Report") at 5.

---

SPECIAL DIET ORDERS

A Special Diet should not be considered for allergic avoidance, unless:
• The food allergy is reported for fruit.
• The individual has a confirmed diagnosis of allergy to baked egg, wheat, or milk, or a
confirmed diagnosis of multiple-food allergies.

---

Dr. Holliday criticizes NaphCare and Wellpath for failing to enter a special diet order
before Picciano's celiac disease diagnosis was confirmed. *See* Holliday Tr. at 132:21-133:4. That
opinion directly contradicts Dr. Holliday's own prior guidance. Dr. Holliday had multiple
opportunities at deposition to explain the inconsistency. He testified that the guidance does not
apply to the Jail because its "food offerings" may be different from those at the Bureau of Prisons,
but he also admitted that he did not know that for sure because he never examined the Jail's menu.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *Id.* at 159:23-160:4. Nor could Dr. Holliday explain how different food offerings would impact

2    the relevance of his Bureau of Prisons guidance. *Id.* at 160:5-15. Dr. Holliday's opinions therefore

3    are unreliable and must be excluded.

4           **3.**      **Dr. Holliday offers no opinions that will assist the trier of fact.**

5          An expert's testimony is only admissible if that opinion will assist the trier of fact. Fed. R.

6    Evid. 702; *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393 n.3 (9th Cir. 1982) ("When

7    opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of

8    time"); *Wade v. BP Expl. & Prod., Inc.*, 630 F. Supp. 3d 776 (E.D. La. 2022), *reconsideration*

9    *denied*, 2022 WL 17045863, at *10 (E.D. La. Nov. 17, 2022) (holding expert testimony as

10   inadmissible because they were unhelpful for determining causation). Thus, expert testimony "fails

11   to 'help' where the reasoning behind that testimony is so illogical," "confusing," "misleading," or

12   "ambiguous" that it "cannot affect the probabilities of the existence of facts at issue." 29 Victor J.

13   Gold, Federal Practice & Procedure: Evidence § 6265.2 (2d ed. 2023).

14         Dr. Holliday's opinions suffer from all these problems. They are illogical, confusing, and

15   misleading, because they contradict Dr. Holliday's own guidance. *See* 2017 Bureau of Prison

16   Report at 5. Moreover, Dr. Holliday's opinions are ambiguous, vague, and conclusory. In

17   deposition, **Dr. Holliday could not even say what parts of his report constitute "opinions" to**

18   **a reasonable degree of certainty**, versus what parts merely regurgitate assumptions. *See, e.g.*,

19   Holliday Tr. at 194:2-23.

20         There are additional problems. In particular, Dr. Holliday's report lumps all three

21   defendants together, and concludes that all three defendants violated some unspecified standard of

22   care, without explaining what standard of care applies to each defendant. This is problematic,

23   because it is well-settled that specific standards of care apply to different actors in a jail medical

24   setting. *See supra* at 6-7. Dr. Holliday similarly refused to explain what *NaphCare*, versus

25   Wellpath, versus Clark County Jail, did or failed to do that breached the standard of care. He said

26   that he "didn't view it was my opinion to establish fault by any specific defendant." Holliday Tr.

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 12
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    at 119:18-120:5. And Dr. Holliday repeatedly declined to distinguish among defendants, instead

2    purporting to provide opinions on defendants "plural." *See, e.g., id.* at 189:3-8.

3          What's more, Dr. Holliday has refused to clarify what sources serve the basis for his

4    amorphous standard of care. His report heavily quotes standards from the NCCHC and the ACA—

5    standards that apply to correctional facilities, and even then, only to the extent those facilities elect

6    to obtain and maintain NCCHC and ACA accreditation. Holliday Report at 4, 7. Dr. Holliday did

7    not explain—either in his report or deposition—whether and, if so, how those standards inform

8    the standard of care for jail medical service providers. In deposition, Dr. Holliday contradicted his

9    own report by suggesting that he is not relying on those standards after all. *See, e.g.*, Holliday Tr.

10   at 189:14-18 (Q: "So you're not relying on the ACA standards?" A. "No, this is based off of the

11   recommended management for celiac disease in general.").

12         Dr. Holliday himself all but concedes that his opinions in this case will do nothing to assist

13   the trier of fact. In deposition, when he was unable to answer questions regarding his opinions, he

14   retreated and said that the Court, not himself, should decide these issues. *See id.* at 107:22-108:3

15   (testifying that it is "up to the Court to decide" the relevance of ACA standards to this case); 113:4-

16   6 ("I feel that it's up to the Court to decide if NaphCare specifically is at fault in any area."); 120:3-

17   14 ("[I]n my view it was going -- it's the determination of the Court to determine" … "fault by

18   any specific defendant."); *see also id.* at 193:19-195:2 (testifying that "it would be up to the Court"

19   to decide what parts of Dr. Holliday's report contains opinions versus facts). NaphCare agrees; Dr.

20   Holliday's opinions will not assist the trier of fact and must be excluded.

21                            **IV.    CONCLUSION**

22         The Court should exclude Dr. Hujoel's opinions regarding damages and Picciano's alleged

23   celiac disease, and Dr. Holliday's opinions regarding the standard of care.

24

25

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 13
(No. 3:20-cv-06106-DGE)
163117634

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1 | *I certify that this brief contains 4,188 words,*   s/ David A. Perez
  | *in compliance with the Local Civil Rules.*   _____

2 | David A. Perez, Bar No. 43959
  | Zachary E. Davison, Bar No. 47873

3 | Michelle L. Maley, Bar No. 51318
  | Mason Y. Ji, Bar No. 58292

4 | **Perkins Coie LLP**
  | 1201 Third Avenue, Suite 4900

5 | Seattle, Washington 98101-3099
  | Telephone: +1.206.359.8000

6 | Facsimile: +1.206.359.9000
  | DPerez@perkinscoie.com

7 | ZDavison@perkinscoie.com
  | MMaley@perkinscoie.com
  | MJi@perkinscoie.com

8 |

9 | Attorneys for Defendant NaphCare, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NAPHCARE, INC.'S MOTION TO EXCLUDE
PLAINTIFF'S EXPERTS – 14
(No. 3:20-cv-06106-DGE)

163117634

1

**CERTIFICATE OF SERVICE**

2

  I certify under penalty of perjury that on July 27, 2023, I caused to be electronically filed

3

the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a

4

notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice

5

List.

6

  Dated: July 27, 2023

7

          *s/ David A. Perez*

8

          David A. Perez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

163117634