UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GAVEN PICCIANO,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>CLARK COUNTY, CLARK COUNTY JAIL, WELLPATH, LLC, and NAPHCARE, INC.,<br><br>　　　　　　Defendant. | CASE NO. 3:20-cv-06106-DGE<br><br>ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 83) AND MOTION TO COMPEL DISCOVERY (DKT. NO. 97) |

## I.　　INTRODUCTION

This matter comes before the Court on Defendant NaphCare, Inc.'s motion for judgment on the pleadings (Dkt. No. 83)[1] and Plaintiff's motion to compel discovery (Dkt. No. 97). For the reasons set forth below, the motion for judgment on the pleadings is DENIED and the motion to compel discovery is GRANTED.

---

[1] Defendant Wellpath, LLC joins the Motion, adopting the arguments in full and asserting all NaphCare's arguments apply equally to Wellpath. (Dkt. No. 84.)

ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 83) AND MOTION TO COMPEL DISCOVERY (DKT. NO. 97) - 1

## II. BACKGROUND

**A. Factual Background**

    1. <u>Plaintiff's Allegations</u>

The following facts from Plaintiff's Second Amended Complaint ("SAC") are taken as true for the purposes of this Motion. (Dkt. No. 43.)

Defendants maintain a policy of not approving medically necessary diets until medical records are requested, reviewed, and determined to support a detainee's request for a modified diet plan. (*Id*. at 6.)

Plaintiff suffers from Celiac Disease, a disease that has no known cure and requires him to maintain a strict gluten-free diet. (*Id.* at 5.) When Plaintiff ingests gluten, he experiences a range of substantially limiting symptoms, including, among other things, vomiting, diarrhea, and stomach pain. (*Id*.)

Plaintiff was arrested on January 30, 2020 and booked at the Clark County Jail ("Jail"). (*Id*. at 1.) At the time, Wellpath was under contract to provide medical care to the inmates at the Jail through January 31, 2020, after which NaphCare would become the medical care provider. (*Id*. at 3.) During booking, Plaintiff completed a medical assessment form indicating he had Celiac Disease. (*Id*. at 6–7.) After his intake, no steps were taken to accommodate his request for a gluten-free diet. (*Id*. at 7.) The next day, on January 31, 2020, Plaintiff renewed his request for gluten-free meals and signed a records release for Defendants to obtain his medical records confirming he had Celiac Disease. (*Id*.)

On February 1, 2020, NaphCare took over as the medical provider at the Jail and Plaintiff had yet to be provided a meal he could safely eat. (*Id*.) Over the next several weeks, Plaintiff made repeated requests for gluten-free meals, including filing multiple grievances that repeatedly

were ignored. (*Id*. at 9–10.) At one point, due to lack of adequate food, Plaintiff collapsed and was hospitalized. (*Id*. at 11.) The hospital staff instructed the Jail to provide Plaintiff with a gluten-free diet. (*Id*.) When he was served gluten-free food, it was either not actually gluten-free or it was contaminated by other foods containing gluten. (*Id*. at 11–12.) Plaintiff suffered numerous ailments and injuries from the lack of proper food. (*Id*. at 4–15.) Plaintiff went without appropriate food for approximately 20 days and sustained physical injuries. (*Id*. at 6–15.)

2. <u>Discovery Requests Related to Federal Financial Assistance</u>

Plaintiff asked Naphcare to identify federal or state funding it received during 2020. (Dkt. No. 97-7 at 8.) He further asked Naphcare to produce various documents related to federal and state funding and its compliance with § 504 of the Rehabilitation Act. (*Id*. at 10–11.) Naphcare objected to these discovery requests as not relevant and/or not properly limited in scope. (*Id*. at 8, 10–11.)

Plaintiff also asked Wellpath to identify federal or state funding it received during 2020. (*Id*. at 14.) Wellpath initially stated it did not receive any federal or state funding, but then clarified it was not aware of having received any federal or state funding related to the Jail. (*Id*. at 14–15.)

Plaintiff seeks to compel Naphcare and Wellpath to fully respond to these discovery requests. (Dkt. No. 97.)

**B. Procedural History**

On January 25, 2022, Plaintiff filed the SAC, alleging, as relevant here, NaphCare and Wellpath violated Plaintiff's Fourteenth Amendment rights and § 504 of the Rehabilitation Act. (Dkt. No. 43.)

On February 8, 2022, Wellpath filed a motion to dismiss (Dkt. No. 47), which NaphCare joined without addition (Dkt. No. 59). The Court denied Wellpath and NaphCare's motion as to the § 1983 claim but granted as to the Rehabilitation Act claim. (Dkt. No. 60.) Plaintiff then filed a motion for reconsideration on the Rehabilitation Act claim, which the Court granted. (Dkt. No. 68.)

On May 25, 2023, NaphCare filed the instant Motion, arguing Plaintiff failed to adequately plead the § 1983 claim and the Rehabilitation Act claim. (Dkt. No. 83.)

On August 3, 2023, Plaintiff filed a motion to compel responses and production of documents to its discovery requests related to federal financial assistance. (Dkt. No. 97.)

### III. DISCUSSION

#### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper only when there is no unresolved issue of fact, and no question remains that the moving party is entitled to a judgment as a matter of law. *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002). The standard applied on a Rule 12(c) motion is essentially the same as that applied on motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Thus, the allegations of the non-moving party are accepted as true, and all inferences reasonably drawn from those facts must be construed in favor of the responding party. *Id*. However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

B.  § 1983 Monell Claim

Naphcare asserts Plaintiff's SAC fails to allege the elements necessary to advance a 42 U.S.C. § 1983 claim. To establish a § 1983 *Monell* claim, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the [governmental entity] had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation and citation omitted; some alterations in original).

   1.  Deprivation of a Constitutional Right

The SAC alleges Plaintiff has "a constitutional right to receive and have access to adequate basic essentials including medically appropriate food and health care." (Dkt. No. 43 at 18.) It further alleges Defendants, including Naphcare, failed to "ensure that [Plaintiff] had adequate gluten-free meals [which] caused the deprivation of [Plaintiff's] rights, and was the ultimate cause of [Plaintiff's] injuries." (*Id*. at 19.) The SAC contains a detailed history of Plaintiff's stay at the Jail and the failure to provide gluten-free meals for over 20 days. (*Id*. at 6–15.)

"[T]he Eighth Amendment requires . . . that prisoners receive food that is adequate to maintain health[.]" *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1265 (W.D. Wash. 2013), aff'd, 639 F. App'x 484 (9th Cir. 2016) (citing *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted)). Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the same standards apply to pretrial detainees. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing

*Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991).  Accordingly, because the SAC alleges Plaintiff was deprived of medically appropriate meals for a significant duration of time, the SAC adequately pleads the deprivation of a constitutional right.

      2.  <u>Existence of a Policy</u>

"[A] policy is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter[.]'"  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986)).

The SAC asserts the Defendants, including Naphcare, had a policy whereby,

> individuals with food allergies and Celiac Disease [did] not receive medically necessary diets until medical records are requested by [Naphcare], received by [Naphcare], approved by [Naphcare], and then [Naphcare would] notif[y] the jail kitchen.  This policy, which resulted in the approval process for gluten-free meals taking weeks, was on its face life-threatening, dangerous, and discriminatory to individuals with disabilities that require medically necessary food all the time, not after weeks of detention without access to safe food in the interim.

(Dkt. No. 43 at 6.)  Thus, as alleged in the SAC, Naphcare had a policy of not approving a gluten-free meals for a detainee until after it first requested, received, and reviewed the detainee's medical records.

Moreover, the Court has already ruled on the existence of this policy (Dkt. No. 60 at 11), which Defendants concede (Dkt. No. 83 at 13–14).  Defendants argue Plaintiff intends to expand the scope of the purported policy to include the Defendants' follow up obligations once a diet order has been placed.  At this stage, the Court only analyzes whether the SAC adequately pled a policy and, finding it did, offers no opinion at this stage as to the scope of the policy or other potential policies.

3. Deliberate Indifference

A policy evidences a deliberate indifference "when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Oviatt*, 954 F.2d at 1477–78 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). When such is the case, a plaintiff need not also establish "a pattern of prior, similar violations of federally protected rights, of which the relevant policy makers had actual or constructive notice." *Hyun Ju Park v. City and County of Honolulu*, 952 F.3d 1136, 42 (9th Cir. 2020). "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt*, 954 F.2d at 1478.

The potential harm from the failure to provide a detainee appropriate food while waiting for medical records, which can be delayed for a significant period, arguably is so obvious[2] that any reasonable policymaker would recognize the need to act to avoid delay. This is because the trier of fact could determine that a reasonable policymaker, including a medical service provider, should be aware of the risks associated with providing inappropriate meals to detainees suffering

---

[2] Naphcare also argues that the policy at issue is not facially unconstitutional. (Dkt. No. 83 at 14.) The Court offers no conclusions as to whether an obvious risk might equate to a facially unconstitutional policy but will note that the decisions Naphcare cites did not analyze whether a particular records review policy was facially unconstitutional and therefore are inapposite. *See Tate v. Bell*, 2007 WL 1965592 (S.D. Ohio July 3, 2007) (medical records review policy not at issue; rather, the plaintiff refused to undergo allergy testing to support request for a medical accommodation); *Ragan v. Wellman*, 2007 WL 4244415, *7 (W.D. Mich. July 19, 2022) (medical records review policy not at issue; rather, the plaintiff "has shown nothing more than a difference of opinion regarding whether he needed a high-protein snack bag or a low-fat snack bag"); *Brooks v. Rogers*, 2021 WL 1589227, *6 (W.D. Mich. Feb. 9, 2021) (medical records review policy not at issue; rather, the "decision to place and continue [the plaintiff] on the low-residue therapeutic diet was [no]thing more than a difference of opinion"); *Edwards v. Cornelius*, 2012 WL 2087413, 1 (medical records review policy not at issue; rather, "without specifying his reasons for doing so, Plaintiff requested a vegan diet from" the jail).

ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 83) AND MOTION TO COMPEL DISCOVERY (DKT. NO. 97) - 7

from serious illness (such as Celiac Disease).  Undoubtedly, food allergies and other serious illnesses can lead to severe injury and even death if inappropriate food is provided.  Indeed, as alleged in the SAC, Plaintiff experienced severe symptoms such as vomiting and unresponsive collapse, ultimately needing to be hospitalized.

The SAC adequately alleges the policy at issue evidenced deliberate indifference to Plaintiff's constitutional rights.

4. <u>Moving Force Behind Injuries.</u>

A policy is the moving force behind a constitutional violation if the "policy was 'closely related to the ultimate injury.'"  *Oviatt*, 954 F.2d at 1478 (quoting *City of Canton*, 489 U.S. at 391).  Put another way, a Plaintiff need only prove that the injury would have been avoided had Naphcare instituted some affirmative procedure designed to timely approve appropriate meals for inmates who may suffer from food illnesses.  *See id.* ("Specifically, plaintiff must prove that the injury would have been avoided had [the defendant] instituted some affirmative procedure designed to discover inmates who had missed arraignments."[3]).

The SAC alleges there were various opportunities for Naphcare to take action to ensure Plaintiff was given a gluten-free meal, including after he filed medical grievances or immediately after Naphcare received Plaintiff's medical records.  This means it is a question of fact whether Naphcare could have instituted some other affirmative procedure designed to avoid or reduce delays in authorizing medically appropriate meals.  Plaintiff has sufficiently alleged the policy at issue was closely related to his injuries.

Plaintiff, therefore, has sufficiently pled a §1983 *Monell* claim against NaphCare.

---

[3] In *Oviatt*, the local sheriff's policy on missed arraignments resulted in the plaintiff being unconstitutionally detained without arraignment, a bail hearing, or trial for 114 days.

ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 83) AND MOTION TO COMPEL DISCOVERY (DKT. NO. 97) - 8

## C. § 504 of Rehabilitation Act

### 1. Proper Defendant

NaphCare argues it "is not the proper party for Plaintiff's Rehabilitation Act claim because NaphCare is not in charge of the food at Clark County Jail." (Dkt. No. 83 at 22.) NaphCare contends "indirect control is not enough" and that holding NaphCare accountable "would ignore Clark County's ability to provide special diets even without a nursing recommendation." (*Id*.) Naphcare cites *Mullen v. Commissioners for Adams County, Colorado,* 2022 WL 1266618 (D. Colo. Apr. 28, 2022), for support. *Mullen*, however, is inapposite because the plaintiff in that case assumed a county's board of commissioners affirmatively denied specific requests to fund accommodations to detainees. Because no facts alleged the board denied specific funding requests for accommodations, the board was not involved in denying the accommodations requested and, therefore, was not a proper party. 2022 WL 1266618, * 7 ("Plaintiff's conclusory allegations that the Board controlled the Sheriff's budget do not adequately support her conclusions that the Board, in turn, restricted the budget as to accommodations for detainees.").

Here, Plaintiff asserts more than indirect involvement in denying Plaintiff a medically appropriate diet. The SAC details a history of the interactions between Plaintiff, the Jail and Naphcare employees whereby Naphcare was significantly involved in authorizing medically appropriate meals. (Dkt. No. 43 at 5–15.) Based on these allegations, at this stage the Court is convinced Plaintiff adequately alleges Naphcare is a proper defendant for its role in denying Plaintiff gluten-free meals.

### 2. Deliberate Indifference

NaphCare next contends Plaintiff's SAC "fails to allege discrimination or deliberate indifference as prerequisites to recovery of compensatory damages." (Dkt. No. 83 at 24.)

The Court previously concluded the SAC alleged deliberate indifference in its order on Plaintiff's motion for reconsideration. (Dkt. No. 68.) There, the Court found that, "[a]s alleged in the SAC, Defendants 'intentionally and with deliberate indifference' failed 'to take the necessary steps to ensure that [he] had access to a gluten-free diet[.]' . . . That is enough for a Rehabilitation Act claim to survive at this stage as the alleged failure to provide appropriate meals may amount to discrimination based on the failure to provide reasonable accommodations." (*Id*. at 4.)

Based on the prior order, and as again concluded in this Order, *see* Section III.B.3, *supra*, the SAC sufficiently alleges deliberate indifference.[4]

### 3. Federal Financial Assistance

§ 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"Federal financial assistance means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance . . . ." *Kimiko v. Alta California Reg'l Ctr.*, 2020 WL 6146451, at *3 (E.D. Cal. Oct. 20, 2020) (quoting 45 C.F.R. §

---

[4] For purposes of this Motion, the Court assumes, just as Naphcare does, that the deliberate indifference standard under § 504 of the Rehabilitation Act is the same as the deliberate indifference standard for a *Monell* claim. (*See* Dkt. No. 83 at 19.)

84.3(h)(2005)).  It is well established that receipt of "federal financial assistance can be direct or indirect."  *Sharer v. Oregon*, 581 F.3d 1176, 1181 (9th Cir. 2009).  But an entity that "merely benefits from federal funding" is not a recipient of federal funds.  *Doe One v. CVS Pharmacy, Inc.*, 2022 WL 3139516, at *11 (N.D. Cal. Aug. 5, 2022) (quoting *Nat'l Coll. Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999)).

Courts have allowed § 504 Rehabilitation claims to proceed with bare-bone allegations, with the understanding that discovery is needed to flesh out exactly what financial assistance defendants received from the federal government.  *See Moore v. Equity Residential Mgmt., LLC*, 2017 WL 897391, at *4 (N.D. Cal. Mar. 7, 2017) ("Unlike allegations relating to matters within Plaintiff's personal knowledge . . . details regarding Defendants' receipt of federal funding will likely need to be sought through formal discovery.").  "[T]he vast majority of courts faced with the issue of whether an entity receives federal financial assistance within the meaning of the civil rights laws have concluded that the resolution of the issue requires inquiry into factual matters outside the complaint and, accordingly, is a matter better suited for resolution after both sides have conducted discovery on the issue."  *PAS Commc'ns, Inc. v. U.S. Sprint, Inc.*, 112 F. Supp. 2d 1106, 1111 (D. Kan. 2000) (collecting cases); *see also Melton by and through Mosier v. California Dep't of Developmental Servs.*, 2021 WL 5161929, at *14 (N.D. Cal. Nov. 5, 2021).

NaphCare argues Plaintiff's § 504 claim fails because NaphCare "cursorily alleges" Naphcare has received federal funding and does not allege Naphcare receives federal subsidies.  (Dkt. No. 83 at 23.)  Citing *Mullen*, Naphcare argues this dooms Plaintiff's § 504 claim.  In *Mullen*, the complaint alleged only that the defendant "is the recipient of federal financial assistance within the meaning of Section 504[.]"  2022 WL 1266618, * 13.  Without more,

*Mullen* decided that plaintiff's conclusory allegation was insufficient to survive a motion to dismiss. *Id*.

Here, Plaintiff asserts that "[a]t all times relevant to this action, Clark County, Clark County Jail, Wellpath, and NaphCare were recipients of federal financial assistance." (Dkt. No. 43 at 17.)  Plaintiff specifically asserts that "NaphCare[] has received at least $155.1 million dollars in federal financial assistance including substantial funds from the United States Department of Justice." (*Id*. at 3.)  This allegation creates a factual dispute as to the type of federal funding Naphcare may in fact have received and whether the funding from the Department of Justice may be considered some form of a subsidy.  It may be ultimately determined that Naphcare is not the recipient of federal financial assistance within the meaning of § 504, but at this stage the SAC presents a factual dispute best reviewed once discovery on this issue is completed.

### D.  Motion to Compel (Dkt. No. 97)

Without the benefit of complete discovery, Naphcare and Wellpath ask the Court to declare neither received federal financial assistance within the meaning of § 504 and, therefore, that Plaintiff's discovery requests are irrelevant.  However, having already determined the SAC raises a factual dispute, *see* III.C.3 *supra*, the information Plaintiff seeks would meet the minimal relevancy standards of Federal Rule of Civil Procedure 26.

Naphcare also asserts any federal funding must be "tethered to the activity and facility at issue," which makes Plaintiff's discovery request overbroad and irrelevant.  (Dkt. No. 120 at 10.)  Similarly, Wellpath notes it "did not receive any federal funding for its services at Clark County Jail in January 2020[.]" (Dkt. No. 123 at 9.)  Naphcare again cites *Mullen* to support this argument.  Again though, *Mullen* is inapposite.  It never considered the definition of "program or

activity" as contained in 29 U.S.C. §794; in particular, it never analyzed the language in 29 U.S.C. § 794(b)(3).  The Court is convinced by Plaintiff's reading of what appears to be the relevant portion of 29 U.S.C. § 794.  The definition of a "program or activity" receiving federal financial assistance for purposes of a § 504 claim is not limited to a location or facility.  *See* 29 U.S. Code § 794(b)(3)(A) (defining a program or activity as ". . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . health care[.]").  *Compare with* § 794(b)(3)(B) (which alternatively defines a program or activity as "the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship[.]").

        Naphcare also identifies that federal financial assistance is not defined in the Rehabilitation Act and that one needs to look to case authority to determine when federal financial assistance has been provided.  (Dkt. No. 120 at 11.)  The Court does not disagree.  However, complete discovery has not been exchanged.  As such, all sides may not be able to present the Court with the relevant facts they believe should be considered in analyzing and determining whether Naphcare or Wellpath received federal financial assistance for purposes of § 504.

        Wellpath also argues the discovery requested is not proportional to the claim asserted against it.  (Dkt. No. 123 at 5.)  It notes it played a limited role in this case and extensive discovery has already occurred.  (*Id*. at 7.)  This point is acknowledged, but Wellpath has not been dismissed and Plaintiff's § 504 claim remains valid as of now.  To the extent Wellpath challenges a key element of Plaintiff's claim, i.e., whether it received federal financial assistance, it is not unreasonable for Plaintiff to seek discovery on this issue.  Moreover, Plaintiff seeks a

complete response to only one discovery request propounded to Wellpath.  (Dkt. No. 130 at 6.) The Court does not find this request to be disproportional based on the dispute regarding applicability of § 504.

Wellpath further asserts Plaintiff's discovery request seeks privileged information.  (*Id*. at 10–12.)  But the interrogatory at issue seeks information about funding from federal and state government, which, arguably, should not be privileged information given that such funding involves taxpayer funds.  And, as Plaintiff points out, a protective order can be crafted to deal with any alleged trade secrets assuming trade secrets are raised by the interrogatory.

ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 83) AND MOTION TO COMPEL DISCOVERY (DKT. NO. 97) - 14

## IV. CONCLUSION

Accordingly, and having reviewed the Motion, the briefing of the parties, and the remainder of the record, the Court hereby:

1. DENIES Defendants' motion for judgment on the pleadings (Dkt. No. 83).

2. GRANTS Plaintiff's motion to compel discovery (Dkt. No. 97) and ORDERS:

    a. Defendant NaphCare to provide complete responses to Plaintiff's:

        i. Interrogatory No. 18;

        ii. Request for Production No. 13;

        iii. Request for Production No. 14;

    b. Defendant Wellpath to provide a complete response to Plaintiff's Interrogatory No. 14; and

    c. Such responses shall be provided within 30 days of this Order.

Dated this 29th day of January 2024.

David G. Estudillo
United States District Judge