THE HONORABLE DAVID G. ESTUDILLO

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  GAVEN PICCIANO,

                        10           Plaintiff,

11     v.

12  CLARK COUNTY, CLARK COUNTY JAIL,
WELLPATH, LLC, AND NAPHCARE, INC.,

13            Defendants.

No. 3:20-cv-06106-DGE

DEFENDANT NAPHCARE, INC.'S
MOTION FOR SUMMARY
JUDGMENT

NOTE ON MOTION CALENDAR:
FRIDAY, MAY 3

**ORAL ARGUMENT REQUESTED**

14
15
16
17
18
19
20
21
22
23
24
25
26

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT (No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

1

2

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

I.  The records-review policy ..................................................................................... 2

II.  Clark County Jail is exclusively responsible for inmate meals ............................ 3

III.  Picciano refuses to release his medical records. ................................................... 3

IV.  NaphCare prescribes a gluten-free diet. ................................................................ 4

V.  Picciano consumes gluten-free foods every day of his detention. ........................ 4

VI.  Picciano has a controlled fall. ............................................................................... 5

VII.  Picciano loses minimal weight while detained. .................................................... 5

VIII.  Procedural background .......................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.  Picciano's negligence claim fails. ......................................................................... 7

A.  Picciano has not even identified a standard of care that NaphCare breached. ........... 8

B.  Picciano cannot prove that NaphCare caused any injury. ......................... 10

II.  Picciano's outrage claim fails. ............................................................................ 11

III.  Picciano's *Monell* claim against NaphCare fails as a matter of law. ................. 12

A.  There is no evidence of a custom or practice. ........................................... 13

B.  There was no underlying constitutional violation. .................................... 13

C.  The records-review policy is not facially unconstitutional. ...................... 14

D.  The records-review policy does not amount to deliberate indifference. .................. 15

E.  The records-review policy was not the moving force behind any injury. ................. 18

IV.  Picciano's Rehabilitation Act claim fails as a matter of law ............................... 19

A.  NaphCare does not receive "federal financial assistance." ....................... 19

B.  Picciano does not have a disability ............................................................ 21

C.  NaphCare was not deliberately indifferent under the Rehabilitation Act. ................. 22

CONCLUSION ................................................................................................................... 23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – i
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdus–Sabur v. Hope Village, Inc.*,
 221 F. Supp. 3d 3 (D.D.C. 2016) ............................................................................20

*Abraham v. Corizon Health, Inc.*,
 No. 3:16-CV-01877, 2017 WL 11718378 (D. Or. Nov. 14, 2017) ...........................20, 21, 22

*Allen v. Diaz*,
 No. 21-CV-0602, 2022 WL 2345922 (S.D. Cal. June 29, 2022).............................19

*Beggs v. State Dept. of Soc. & Health Servs.*,
 171 Wash.2d 69, 247 P.3d 421 (2011).................................................................8, 10

*Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
 520 U.S. 397 (1997)..............................................................................................16, 18

*Branham v. Malloy*,
 No. 2:07-CV-243, 2009 WL 42263 (W.D. Mich. Jan. 5, 2009)..............................16

*Bryant v. Farmer*,
 460 F. App'x 644 (9th Cir. 2011) ...........................................................................18

*Button v. Bd. of Regents of Univ. & Cmty. College System of Nevada*,
 289 F. App'x 964 (9th Cir. 2008) ...........................................................................23

*Canyon Props., LLC v. Pierce County*,
 No. 3:19-CV-06168, 2020 WL 639412 (W.D. Wash. Feb. 11, 2020)....................13

*Castro v. Cnty. of Los Angeles*,
 833 F.3d 1060 (9th Cir. 2016) ...............................................................................15, 16

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)................................................................................................7

*Christian v. Tomeh*,
 191 Wash. App. 709, 366 P.3d 16 (2015)..............................................................11

*Clement v. California Dep't of Corr.*,
 220 F. Supp. 2d 1098 (N.D. Cal. 2022) .................................................................14, 18

*Connick v. Thompson*,
 563 U.S. 51 (2011).................................................................................................16, 17

NAPHCARE'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS – ii
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Coons v. Sec'y of U.S. Dep't of Treasury*,
  383 F.3d 879 (9th Cir. 2004) ...........................................................21

*Crichlow v. Fischer*,
  No. 9:17-CV-00194, 2017 WL 6466556 (N.D.N.Y. Sept. 5, 2017)........................................14

*Csutoras v. Paradise High Sch.*,
  12 F.4th 960 (9th Cir. 2021) .............................................................22

*Dean v. Wexford Health Sources, Inc.*,
  18 F.4th 214 (7th Cir. 2021) ........................................................ passim

*DeVargas v. Mason & Hanger–Silas Mason Co.*,
  911 F.3d 1377 (10th Cir. 1990) ...........................................................19

*Dixon v. Howe*,
  44 F. App'x 274 (9th Cir. 2002) ...........................................................18

*Duvall v. Cnty. of Kitsap*,
  260 F.3d 1124 (9th Cir. 2001) ....................................................19, 22, 23

*E.S. by & through R.S. v. Regence BlueShield*,
  No. C17-01609, 2018 WL 4566053 (W.D. Wash. Sept. 24, 2018)........................................21

*Eby v. Okezie*,
  No. 19 C 8404, 2021 WL 4146882 (N.D. Ill. Sept. 13, 2021).............................................20

*Edwards v. City of Balch Springs, Texas*,
  70 F.4th 302 (4th Cir. 2023) .............................................................14

*Estate of Silva v. City of San Diego*,
  No. 3:18-CV-2282, 2020 WL 6946011 (S.D. Cal. Nov. 25, 2020)........................................10

*Foster v. Runnels*,
  554 F.3d 807 (9th Cir. 2009) .............................................................14

*Frausto v. Yakima HMA, LLC*,
  188 Wash.2d 227, 393 P.3d 776 (2017).......................................................7, 8

*Gerhart v. Lake Cnty., Mont.*,
  637 F.3d 1013 (9th Cir.), *cert. denied*, 565 U.S. 881 (2011)....................................7

*Gibson v. Cnty. of Washoe, Nev.*,
  290 F.3d 1175 (9th Cir. 2002) ...........................................................15

*Gibson v. Franklin Cnty. Adult Detention Ctr.*,
  No. 08-3206, 2008 WL 4758590 (D. Kan. Oct. 29, 2008) ......................................16

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – iii
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

*Gordon v. County of Orange,*
6 F.4th 961 (9th Cir. 2021) ...................................................................................12, 13, 14

*Gross v. Landry,*
No. 2:17-CV-00297, 2019 WL 1270922 (D. Maine March 19, 2019)..................................20

*Hill v. Washington Interscholastic Activities Ass'n,*
17 Wash. App. 2d 1043 (2021)....................................................................................8

*Janaszak v. State,*
173 Wash. App. 703, 297 P.3d 723 (2013)..................................................................11

*Johnson v. Schwarzenegger,*
366 F. App'x 767 (9th Cir. 2010) ..............................................................................19

*Kimiko v. Alta California Regional Center,*
No. 2:19-CV-0068, 2020 WL 6146451 (E.D. Cal. Oct. 20, 2020)...............................19, 20

*Kloepfel v. Bokor,*
149 Wash.2d 192, 66 P.3d 630 (2003)..........................................................................8

*Lee v. Richland Parish Detention Ctr.,*
483 F. App'x 904 (5th Cir. 2012) ...............................................................................16

*Lovell v. Chandler,*
303 F.3d 1039 (9th Cir. 2002) ...................................................................................23

*Maloney v. Ryan,*
711 F. App'x 372 (9th Cir. 2017) ...............................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)..................................................................................................7

*McDonald-Witherspoon v. City of Philadelphia,*
481 F. Supp. 3d 424 (E.D. Penn. 2020) .....................................................................20

*McMullen v. Wakulla Cnty. Bd. of Cnty. Comm'rs,*
No. 4:14-CV-117, 2015 WL 13376521 (N.D. Fla. Aug. 11, 2015)....................................20

*Monell v. Dep't of Soc. Servs. of City of New York,*
436 U.S. 658 (1978)...........................................................................................1, 12

*Mullen v. Comm'rs for Adams Cnty., Colorado,*
No. 21-CV-02398, 2022 WL 1266618 (D. Colo. Apr. 28, 2022)..................................19, 20

*N.L. v. Bethel Sch. Dist.,*
186 Wash.2d 422, 378 P.3d 162 (2016)........................................................................10

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – iv
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

*Neyens v. Am. Fam. Mut. Ins. Co.*,
   No. C12-1038, 2012 WL 5499870 (W.D. Wash. Nov. 13, 2012) ..........................................12

*Nolan v. Vilsack*,
   No. CV 14-08113, 2016 WL 3678992 (C.D. Cal. June 30, 2016) .........................................22

*Roosma v. Pierce County*,
   No. 3:16-CV-05499, 2018 WL 784590 (W.D. Wash. Feb. 8, 2018).......................................9

*Sandoval v. County of San Diego*,
   985 F. 3d 657 (9th Cir. 2021) ........................................................................................17

*Saved Mag. v. Spokane Police Dep't*,
   19 F.4th 1193 (9th Cir. 2021) ........................................................................................13

*Shotz v. Am. Airlines, Inc.*,
   420 F.3d 1332 (11th Cir. 2005) .....................................................................................20

*Smith v. NaphCare, Inc., et al.*,
   No. 3:22-CV-05069, 2022 WL 2983942 (W.D. Wash. July 28, 2022)..................................22

*Smith v. Tom Green Cnty. Jail*,
   No. 6:17-CV-0055, 2018 WL 3873665 (N.D. Tex. Aug. 15, 2018) .....................................14

*Suarez v. Superior Court of California*,
   283 F. App'x 470 ..........................................................................................................23

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
   806 F.3d 451 (9th Cir. 2015) ........................................................................................22

*Taylor v. Caldwell*,
   878 F.2d 1439 (9th Cir. 1989) ......................................................................................15

*Toussaint v. McCarthy*,
   801 F.2d 1080 (9th Cir. 1986) ......................................................................................15

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012) .................................................................................14, 15

*U.S. Dep't of Transportation v. Paralyzed Veterans of Am.*,
   477 U.S. 597 (1986).....................................................................................................20

*Updike v. Multnomah Cnty.*,
   870 F.3d 939 (9th Cir. 2017) ...................................................................................19, 23

*Van Ort v. Estate of Stanewich*,
   92 F.3d 831 (9th Cir. 1996) ..........................................................................................18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Walter Family Grain Growers, Inc. v. Foremost Pump & Well Servs., LLC,*
    21 Wash. App. 2d 451, 506 P.3d 705 (2022)...........................................................7

*Watson v. Wash. Dept. of Corr.,*
    No. C17-5968, 2018 WL 7150488 (W.D. Wash. Nov. 15, 2018) ............................8

*Wells v. Chase Home Fin., LLC,*
    No. C10-5001, 2010 WL 4858252 (W.D. Wash. Nov. 19, 2010) ........................12

*Wolff v. NH Dep't of Corr.,*
    No. 06-CV-321, 2007 WL 3232531 (D.N.H. Oct. 30, 2007) ..........................1, 14

STATUTES

RCW 7.70 ............................................................................................................8

OTHER AUTHORITIES

16 Wash. Prac. Series, Tort Law and Practice § 14:11 (5th ed.) ...............................11

AMERICAN CORRECTIONAL ASSOCIATION, *Standards & Accreditation,*
    https://bit.ly/3YKa4yX (last visited Mar. 27, 2024) ...............................................2

Federal Rule of Civil Procedure 56 ............................................................................7

NATIONAL COMMISSION ON CORRECTIONAL HEALTH CARE,
    https://www.ncchc.org/ (last visited Mar. 27, 2024) ..............................................2

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – vi
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

**INTRODUCTION**

Plaintiff Gaven Picciano ("Picciano") alleges that NaphCare was negligent, committed the tort of outrage, and violated the Constitution and Rehabilitation Act by failing to timely provide Picciano with a gluten-free diet while he was detained at Clark County Jail. But everyone agrees that NaphCare, as the Jail's *healthcare* provider, does not control the Jail *kitchen*. The medical providers' sole responsibility with respect to said diet was to render a medical opinion about whether Picciano *needed* a gluten-free diet. NaphCare rendered that opinion in a timely manner. Any delay was due to Picciano's *documented refusal* to release his medical records. Along the way, Picciano received many gluten-free foods like eggs but *did not eat them* because he "personally [didn't] really like" them. But the law is clear: "a diet is not unconstitutionally inadequate because it does not taste good." *Wolff v. NH Dep't of Corr.*, No. 06-CV-321, 2007 WL 3232531, at *5 (D.N.H. Oct. 30, 2007).

NaphCare was not negligent. Picciano's own purported standard-of-care expert fails to identify a *single* standard that NaphCare violated. NaphCare likewise did not engage in "outrageous," "extreme," "indifferent," or "reckless" conduct by reviewing medical documents before rendering a medical opinion.

In addition to not being able to establish even negligence, Picciano cannot remotely satisfy the "rigorous" standard for prevailing on a constitutional claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). NaphCare's records-review policy is not facially unconstitutional, and there is no evidence that applying it has violated *a single other inmate's* rights. Even if the policy were somehow flawed, Picciano cannot prove that the policy was the "moving force" behind a constitutional deprivation.

Finally, NaphCare is not a proper defendant under the Rehabilitation Act, because NaphCare does not receive "federal financial assistance." Compensation for *services rendered* is not "federal financial assistance." Moreover, Picciano does not have a disability, and there is no evidence that NaphCare *deliberately* failed to act.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The Court should grant NaphCare summary judgment on all claims.

STATEMENT OF FACTS

**I.      The records-review policy**

NaphCare is a family-owned company that provides healthcare services in correctional facilities across the country. Ex. A. The Department of Justice pays for services NaphCare provides to the Bureau of Prisons. Ex. AC at 4–7 (NaphCare's Answers to ROG 18). NaphCare also provides healthcare services at state and county jails, including Clark County Jail. *Id.*[1]

NaphCare provides services in compliance with standards developed by the National Commission on Correctional Health Care (NCCHC) and the American Correctional Association (ACA). Ex. A. The NCCHC is the primary licensing and professional-standards organization for correctional healthcare providers, and it issues model policies for providing "constitutionally appropriate correctional health care."[2] The ACA likewise promulgates "leading correctional policies, procedures, and practices across all areas of operation."[3] NaphCare's policies meet or exceed the standards issued by these nationally recognized organizations. Ex. D.

For example, and consistent with NCCHC standards, NaphCare has a policy relating to approval of medical diets. Ex. E at 23:17–24:19. According to that policy, NaphCare approves medical diets when clinically indicated after having a physician review the inmate's medical records and confirms that a medical diet is safe and necessary. Ex. F; Ex. I at 5–6. There are exceptions; inmates with readily confirmable conditions, such as pregnancy or diabetes, need not provide documentation. Ex. E at 38:21–39:21; 157:15–24. Pending medical diet requests, NaphCare educates inmates "on how to make healthful choices from the standard diet and canteen/commissary." Ex. F.

---

[1] All citations to exhibits in this motion are attached to the Declaration of David A. Perez in Support of Motion for Summary Judgment.

[2] NATIONAL COMMISSION ON CORRECTIONAL HEALTH CARE, https://www.ncchc.org/ (last visited Mar. 27, 2024).

[3] AMERICAN CORRECTIONAL ASSOCIATION, *Standards & Accreditation*, https://bit.ly/3YKa4yX (last visited Mar. 27, 2024).

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 2
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II.     Clark County Jail is exclusively responsible for inmate meals.

Picciano was arrested for domestic violence, unlawful imprisonment, and malicious mischief on January 30, 2020. Ex. G. He was booked that same day into the Jail and was detained until February 20. During his detention, the Jail prepared all inmate meals. Wellpath provided healthcare services from January 30 through January 31, 2020. Starting on February 1, NaphCare took over healthcare services. Wellpath and NaphCare were not responsible for preparing meals, as the Jail confirmed in deposition and its Request for Proposal for healthcare services. Ex. H at 148:2–9; Ex. J.

```
2           So earlier you were testifying about the
3    cooking of meals.  I just wanted to make sure I have
4    everything correct.  Clark County Jail is the entity,
5    or the kitchen is the entity responsible for cooking
6    the meals for inmates; correct?
7      A    Correct.
8      Q    Not Medical?
9      A    Medical does not do that.
```

## III.     Picciano refuses to release his medical records.

Upon booking, Picciano told a Wellpath nurse that he had celiac disease. Ex. K. The nurse asked Picciano to sign a "Release of Information" form so that Wellpath could obtain Picciano's medical records. *Picciano declined to sign the form* and even signed a "Refusal of Treatment" form confirming that Picciano was "fully informed of and underst[ood] the ... refused treatment and the risks involved in refusing." Ex. L at NC 000063.[4]

---

[4] NaphCare reserves its right to dispute the validity of Plaintiff's celiac disease diagnosis at trial.

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 3
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

I acknowledge that I have been fully informed of and understand the above refused treatment and the risks involved in refusing. I hereby release and agree to hold harmless CCS and correctional personnel from all responsibility and any ill effects which may result from this refusal.

I have read this form and certify that I understand its contents.

_____    _____
Witness Signature    Patient Signature

_____
Witness Signature

_____    _____
Date    Time

Patient Name  TAYVN PICCIANO    TDI 239843    DOB 12/27/93    Date 01/30/20

## IV.    NaphCare prescribes a gluten-free diet.

Five days into his detention, Picciano finally executed the "Release of Information" form. Ex. M. When NaphCare took over health services on February 1, it did not immediately have access to Picciano's medical records because of Picciano's own refusal to sign the release and because Wellpath was still transitioning those files to NaphCare. Ex. N at 8:7–10:14. But on February 5, NaphCare routed Picciano's "Release of Information" form within NaphCare and faxed it to Picciano's outside medical provider. *See* Ex. E at 84:5–20.

NaphCare received Picciano's records the next day. Ex. O. A NaphCare administrative assistant scanned it into NaphCare's online system and sent an alert to a NaphCare provider to review the records. Ex. E at 86:10–21. A NaphCare physician then reviewed the records, consulted with a registered nurse, and determined that a gluten-free diet was appropriate. *See* Ex. E at 86:19–87:5; 107:11–14. On February 8—*only five days after Picciano authorized release of his records*—a NaphCare provider prescribed a gluten-free diet. Ex. P.

## V.    Picciano consumes gluten-free foods every day of his detention.

Picciano admits that he was able to eat every day of his detention. Ex. Q at 80:9–24; 105:12–14. Before NaphCare prescribed a gluten-free diet, Picciano supplemented his diet through commissary purchases. Ex. R. The commissary offered additional nutritious and gluten-free

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 4
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

options, such as Ensure and Pedialyte, but Picciano declined to purchase them. Ex. Q at 170:23–171:9. Picciano similarly refused to eat certain gluten-free items from the standard inmate diet, including hard-boiled eggs, because he "personally [doesn't] really like" them. *Id.* at 168:23–169:11. In other words, Picciano had the *opportunity* to eat gluten-free foods, but he didn't like the menu.

After NaphCare prescribed Picciano's gluten-free diet, Picciano received the following items, which he noted were gluten-free and not cross-contaminated: milk, oranges, Rice Krispies, eggs, pears, chips, green beans, peanut butter, carrots, bananas, oranges, corn flakes, and cereal. Ex. S. Picciano nonetheless complained that his meals were not 100% gluten-free. NaphCare escalated Picciano's concerns to the Jail. Exs. T, U. The Jail has admitted that its kitchen is "not a hundred percent gluten-free." Ex. H at 157:9–16. But again, NaphCare is not in any way, shape, or form responsible for the kitchen.

**VI.    Picciano has a controlled fall.**

On February 10, Picciano had a controlled fall and appeared to be unresponsive. Ex. V. NaphCare and Jail guards immediately responded. Ex. W at NC 000043. In accordance with Jail policy, NaphCare administered Narcan, a commonly used emergency antidote for overdoses. Ex. V at NC 000032.

NaphCare transferred Picciano to Legacy Salmon Creek. Picciano complained that he had "decreased PO intake for the past 10 days due to gluten content in the food, 'unable to find alternatives,'" and symptoms of "lightheadedness, dizziness, abdominal cramping, nausea, vomiting, fatigue, and dry mouth." Ex. W at NC 000040. Though Picciano was found to be slightly dehydrated, his test results were "grossly normal" and "did not show major abnormalities." Ex. X at NC 000021; Ex. W at NC 000043. Picciano went back to the Jail the same day. *Id.*

**VII.    Picciano loses minimal weight while detained.**

Picciano's medical records reflect that he weighed 180 pounds at booking and reached his lightest weight of 172 pounds during his incarceration. Exs. Y, T. That slight weight loss,

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 5
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

1    constituting 4% of Picciano's total weight, is within the normal range for inmate weight loss. Ex.

2    E at 132:18–133:25; *see also* Ex. Z at 125:16–22, 126:1–10. After his release, Picciano regained

3    the lost weight plus 5–10 pounds. Ex. Q at 36:4–5.

4    **VIII.   Procedural background**

5           Picciano's complaint sets forth two theories of his *Monell* claim, which requires Picciano

6    to plead a policy, custom, or practice through which the defendants allegedly violated the

7    Constitution. First, Picciano describes something close to the records-review policy, alleging "it

8    was the policy of [defendants] that individuals with food allergies and Celiac Disease not receive

9    medically necessary diets until medical records are requested by the medical contractor (Wellpath

10   or NaphCare), received by that medical contractor, approved by the medical contractor, and then

11   the medical contractor notifies the jail kitchens." ECF No. 43 ¶ 22. Second, Picciano alleges a

12   "custom or practice" of "not providing medically necessary meals in a timely manner to

13   individuals with disabilities, including a custom or practice of not taking the necessary steps to

14   ensure the timely provision of gluten-free meals for individuals with Celiac Disease." *Id.* ¶ 109.

15          The Court confirmed that Picciano adequately alleged a policy of "not approving a gluten-

16   free meal for a detainee until after [the medical provider] first requested, received, and reviewed

17   the detainee's medical records." ECF No. 131 at 6. But the Court declined to recognize a "custom

18   or practice." *Id.*

19          The Court also clarified the meaning of "federal financial assistance" under the

20   Rehabilitation Act. It confirmed the pertinent question is "whether the funding from the

21   Department of Justice" to NaphCare "may be considered some form of a subsidy," as necessary to

22   qualify as "federal financial assistance." *Id.* at 12.

23          On February 23 and March 14, 2024, NaphCare confirmed that it did not receive or use

24   any subsidies in 2020. Ex. AC. The only funds it received from the Department of Justice were

25   contract payments *for services performed* for the Bureau of Prisons. *Id.* NaphCare did not receive

26   or use any funds from grants or the Medicaid or Medicare programs. *Id.* Finally, NaphCare did not

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 6
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   and was not required to execute any documents reflecting "assurance of compliance" with the

2   Rehabilitation Act. *Id.*

3                                    **ARGUMENT**

4           Summary judgment is appropriate when there is no genuine issue as to any material fact,

5   and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Gerhart v.*

6   *Lake Cnty., Mont.*, 637 F.3d 1013, 1019 (9th Cir.), *cert. denied*, 565 U.S. 881 (2011). The moving

7   party first must prove that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co.,*

8   *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The burden then shifts to the opposing party

9   to establish a genuine issue of material fact. *Id.* The opposing party must go beyond the pleadings

10  to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S.

11  317, 323 (1986). Failure to prove any element of claim requires granting summary judgment. *See*

12  *id.* at 322.

13                          *        *        *

14          The undisputed facts require dismissing all of Picciano's claims asserted against NaphCare.

15  First, there is no evidence establishing the most basic elements of Picciano's negligence claim

16  against NaphCare, which appropriately prescribed a gluten-free diet for Picciano after confirming

17  that diet was safe and appropriate based on Picciano's medical records. Second, there are no facts

18  to support Picciano's outrage claim. Third, Picciano's *Monell* claim fails because the records-

19  review policy is constitutional and did not injure Picciano. Fourth, Picciano cannot satisfy the

20  threshold elements of a Rehabilitation Act claim or recover compensatory damages.

21  **I.      Picciano's negligence claim fails.**

22          To prove negligence, Picciano must establish (1) the applicable standard of care for

23  NaphCare, (2) that NaphCare breached that standard, and (3) that NaphCare's breach caused

24  Picciano's damages. *Walter Family Grain Growers, Inc. v. Foremost Pump & Well Servs., LLC*,

25  21 Wash. App. 2d 451, 506 P.3d 705 (2022) (common-law negligence); *Frausto v. Yakima HMA,*

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*LLC*, 188 Wash.2d 227, 231, 393 P.3d 776 (2017) (RCW 7.70.040). Picciano's negligence claim fails on all three elements.[5,6]

### A.    Picciano has not even identified a standard of care that NaphCare breached.

Picciano's negligence claim fails out of the gate because Picciano has not even identified the standard of care that NaphCare failed to meet. His purported standard-of-care expert, Mr. Holliday, provided conflicting testimony, suggesting the relevant standard might follow ACA standards (Ex. AA at 101:3–10; 106:1–107:10), "the Academy of Nutrition and Dietetics" standard (*id.* at 125:3–13), the "standard of care for someone with celiac disease requiring a 100 percent gluten-free diet" (*id.* at 116:10–117:5; 120:16–121:4), "the medical nutrition management of [a] diet" for an individual with celiac disease (*id.* at 252:10–15), or "independent per patient and per diagnosis" (*id.* at 197:17–198:2), but without confirming which standard applies or explaining *what any standard required*. He also admitted that he *cannot* opine on the applicable standard of care because he is not a medical provider or otherwise qualified to do so. *Id.* at 201:7–202:18. This is dispositive, because "expert testimony will generally be necessary to establish the standard of care." *Frausto*, 188 Wash.2d at 231–32, 393 P.3d at 779 (citation omitted). Because discovery has closed, it is too late for Mr. Holliday to fill in the blanks, and Picciano cannot otherwise prove what the standard of care requires.

---

[5] The Court previously concluded that RCW 7.70 does not apply to Plaintiff's negligence claim *against Wellpath*, because the challenged conduct (noting Picciano's celiac disease diagnosis and failing to order a gluten-free diet) does not constitute the provision of "health care." *See* ECF No. 132 at 11. The Court has not previously resolved this question regarding NaphCare. Picciano's allegations regarding NaphCare are different in kind. He challenges NaphCare's "process" of "treating or caring for" Picciano's alleged celiac disease, which is the provision of "health care" under RCW 7.70. *Beggs v. State Dept. of Soc. & Health Servs.*, 171 Wash.2d 69, 79, 247 P.3d 421, 426 (2011); *see also Watson v. Wash. Dept. of Corr.*, No. C17-5968, 2018 WL 7150488, at *9 (W.D. Wash. Nov. 15, 2018) (concerning whether "the standard of care required a gluten-free diet" from jail doctors under RCW 7.70). But regardless of whether RCW 7.70 applies, Picciano still must prove a standard of care, breach, causation, and damages.

[6] In addition to a negligence claim, Picciano also brings a negligent infliction of emotional distress ("NIED") claim against NaphCare. *See* ECF No. 43 ¶¶ 137–38. Washington courts have consistently held that plaintiffs bringing an NIED claim must "establish the same elements necessary for a negligence action." *See Hill v. Washington Interscholastic Activities Ass'n*, 17 Wash. App. 2d 1043, at *5 (2021) (citing *Strong v. Terrell*, 147 Wash. App. 376, 387, 195 P.3d 977, 982-83 (2008). Washington courts have also held that NIED claims are related to outrage claims but require the additional proof of objective symptomology. *See Kloepfel v. Bokor*, 149 Wash.2d 192, 197–198, 66 P.3d 630, 633 (2003). In any case, because Picciano cannot prove the elements of his negligence claim, his NIED claim must also fail.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Nor has Picciano proved that NaphCare *breached any standard*. Mr. Holliday generally

2 concluded that all three "defendants, plural" did "not provid[e] a standard of care of a gluten-free

3 diet for an individual with celiac disease." Ex. AA at 116:18–22; *see also* Ex. AB at 7. Mr. Holliday

4 confirmed that he was "not providing any opinions with respect to NaphCare specifically." Ex.

5 AA at 112:24–113:6. He also confirmed that he was "not contending or providing an opinion that

6 NaphCare violated the NCCHC" or ACA standards. *Id.* at 113:8–115:7. Because "there is no

7 showing by any person remotely qualified as an expert" that NaphCare's conduct "fell below the

8 standard of care," the Court must dismiss Picciano's negligence claim. *Roosma v. Pierce County*,

9 No. 3:16-CV-05499, 2018 WL 784590, at *8 (W.D. Wash. Feb. 8, 2018).

10    If anything, Mr. Holliday's testimony *absolves* NaphCare of liability from the criticism

11 that it should have provided Picciano with a 100% gluten-free diet, where Mr. Holliday confirmed

12 the Jail is solely responsible for preparing inmate meals. Ex. AA at 45:6–46:11. Mr. Holliday's

13 testimony also undermines any argument that NaphCare should have taken additional steps to

14 ensure the Jail's "gluten-free" meals were in fact gluten-free, conceding: "[I]t was the

15 responsibility of Clark County to ensure that once a gluten-free diet was ordered that a gluten-free

16 diet was provided." *Id.* 44:6–45:16. And NaphCare's staff *did* take steps to help Picciano obtain a

17 gluten-free diet, including alerting the Jail of Picciano's complaints. Ex. U.

18    The only other possible criticism of NaphCare is that its employees delayed in *prescribing*

19 a gluten-free diet for Picciano. The documentary evidence confirms the opposite: Five days of any

20 alleged "delay" resulted from Picciano's *own documented refusal* to release his medical records.

21 The time needed for Picciano's outside provider to send his medical records took up another day

22 of "delay." A NaphCare provider reviewed the received records, reached a medical judgment, and

23 prescribed a gluten-free diet within the remaining four days. There is no evidence to suggest that

24 a short processing period violates any possibly applicable standard of care.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

What's more, Picciano has furnished no evidence that a NaphCare employee should have prescribed a gluten-free diet more quickly. And Mr. Holliday *declined to confirm* that NaphCare should have immediately prescribed a gluten-free diet without first reviewing Picciano's records. Ex. AA at 190:8–191:12. It makes sense that Mr. Holliday would not want to go that far. The decision to prescribe (or not prescribe) a particular course of treatment is an exercise of medical judgment. *See Beggs*, 171 Wash.2d at 79. To non-negligently exercise that judgment, NaphCare needed to first consult Picciano's medical documents, which could only be received after he consented to the release of said records. *Cf. Estate of Silva v. City of San Diego*, No. 3:18-CV-2282, 2020 WL 6946011, at *9 (S.D. Cal. Nov. 25, 2020) (jail staff were allegedly deliberately indifferent where they "ignore[d] patients' medical charts or disregard[ed] the information contained in their medical records"). As far as NaphCare can tell, no court in the nation has found a medical provider negligent for doing so.

### B.      Picciano cannot prove that NaphCare caused any injury.

To prove causation, Picciano must show that the actions of NaphCare's employees were the (1) cause in fact and (2) legal cause of an injury. *N.L. v. Bethel Sch. Dist.*, 186 Wash.2d 422, 437, 378 P.3d 162, 169 (2016). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Id.* (quoting *Hartley v. State*, 103 Wash.2d 768, 778, 698 P.2d 77 (1985)). And "legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Id.* (cleaned up).

Picciano cannot demonstrate that the actions of any NaphCare employee were either the cause in fact or legal cause of any injury. If Picciano contends NaphCare's "delays" caused injury, he must prove both that NaphCare employees caused the alleged delays, and that the delays injured Picciano in some way. Picciano can prove neither link in this causal chain. But there *is* evidence that factors besides NaphCare employees caused delays—in particular, Picciano's documented decision to withhold medical records and refuse treatment. *See* Ex. M. The available evidence also refutes the notion that NaphCare deprived Picciano of a gluten-free diet. It instead shows that

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 10
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

Picciano simply *declined* to eat certain gluten-free items he didn't like, such as eggs and nutrition supplements. Picciano's own decisions—including his refusal to release medical records or consume nutritious food—break any causal chain between NaphCare and Picciano's alleged injuries. Plaintiff cannot blame others for the consequences of his own actions.

Even if Picciano could prove a bona fide deprivation, he could not prove causation against NaphCare because *NaphCare does not control food or the kitchen*. NaphCare's role was limited with respect to the subject diet: simply to prescribe Picciano a gluten-free diet when clinically indicated. NaphCare does not cook or prepare inmate meals. The Jail is exclusively responsible for that. And even if NaphCare had prescribed a gluten-free diet immediately, the Jail does not provide 100% gluten-free diets. Ex. H at 142:11–19.

## II. Picciano's outrage claim fails.

To establish a claim for outrage, Picciano must demonstrate that (1) he suffered severe emotional distress, (2) the emotional distress was inflicted intentionally or recklessly, (3) the conduct complained of was outrageous and extreme, and (4) he personally was the object of the outrageous conduct. *Janaszak v. State*, 173 Wash. App. 703, 726, 297 P.3d 723, 735 (2013).

"To prove extreme and outrageous conduct, it is not enough to show that the defendant acted with an intent that was tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct can be characterized by malice." 16 Wash. Prac. Series § 14:11 (5th ed.). "Liability exists only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "The emotional distress complained of must be inflicted intentionally or recklessly. Mere negligence is not enough." *Id.* And "[a] review of the cases might lead one to ask if the conduct of a health care provider might ever be considered outrageous." *Christian v. Tomeh*, 191 Wash. App. 709, 738, 366 P.3d 16, 31 (2015).

Picciano has furnished no evidence to satisfy the elements of his outrage claim, nor could he. The mere fact of delay certainly does not rise to the level of "outrageous and extreme" conduct,

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 11
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

nor can Picciano rely on it to prove that a NaphCare employee acted "intentionally or recklessly." *See Neyens v. Am. Fam. Mut. Ins. Co.*, No. C12-1038, 2012 WL 5499870, at *4 (W.D. Wash. Nov. 13, 2012); *Wells v. Chase Home Fin., LLC*, No. C10-5001, 2010 WL 4858252, at *8 (W.D. Wash. Nov. 19, 2010).

### III.    Picciano's *Monell* claim against NaphCare fails as a matter of law.

It is a grave charge to allege that a private company has an institutional policy to systematically violate the Constitution. Section 1983 does not allow vicarious liability of institutional defendants for the acts of its employees. *Monell*, 436 U.S. at 691. The statute permits liability only where the defendant's own policy, custom, or practice actually "*caused* a constitutional tort." *Id.* at 690–91.

To avoid the temptation that juries might experience to impermissibly impose *respondeat superior* liability, a *Monell* plaintiff faces a demanding burden to prove that (1) the plaintiff was deprived a constitutional right; (2) the entity had a policy, custom, or practice; (3) the policy, custom, or practice was facially unconstitutional or deliberately indifferent; and (4) the policy was the "moving force" behind the deprivation. *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). The Ninth Circuit has repeatedly rejected *Monell* claims seeking to hold an entity liable without rigorous proof of a policy, custom, or practice to violate the Constitution. *E.g., Gordon*, 6 F.4th at 973.

Picciano argues that a NaphCare policy, custom, or practice violated the Constitution by delaying access to or depriving Picciano of a gluten-free diet. *See* ECF No. 43 ¶¶ 22, 109. Picciano's entire case turns on his *own* alleged injury; he has not produced evidence of a *single other time* that a NaphCare policy, custom, or practice delayed or deprived an inmate of a medical diet. He has not even proved that a *single other inmate* has complained about the policy. Without this evidence, Picciano cannot prove the elements of his *Monell* claim, or that NaphCare engaged in a "custom or practice" of deprivations.

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 12
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**A.      There is no evidence of a custom or practice.**

Picciano alleges that NaphCare had an unconstitutional policy *and* "custom or practice." *See* ECF No. 43 ¶¶ 22, 109. But the Court previously confirmed that only the records-review policy is relevant to Picciano's *Monell* claim. ECF No. 60 at 11; ECF No. 131 at 6.

And Picciano cannot prove a "custom or practice" of failing to "take[] the necessary steps to ensure the timely provision of gluten-free meals for individuals with Celiac Disease." ECF No. 43 ¶ 109. To do that, he would have to prove the claimed custom or practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon*, 6 F.4th at 974 (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out the policy." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). The Ninth Circuit has routinely rejected "custom or practice" theories based on single events. *Id.*; *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021); *Canyon Props., LLC v. Pierce County*, No. 3:19-CV-06168, 2020 WL 639412, at *3 (W.D. Wash. Feb. 11, 2020).

As far as NaphCare can tell, there is no Ninth Circuit "custom or practice" case imposing *Monell* liability based on one event. This case would be the first unless the Court confirms, as it must, there is no "custom or practice" to speak of. Only the records-review policy is relevant.

**B.      There was no underlying constitutional violation.**

A *Monell* claim requires proof of a constitutional deprivation. *Gordon*, 6 F.4th at 973. There is no evidence to support any version of Picciano's alleged injury.

**The "delay" theory fails on the facts and the law.** The evidence contradicts Picciano's claim that the records-review policy "resulted in the approval process for gluten-free meals taking weeks." NaphCare prescribed a medical diet five days (not "weeks") after receiving medical records. *Supra* at Part I(B). And modest delays in providing medical diets do "not rise to a level of a constitutional violation" as a matter of law. *Smith v. Tom Green Cnty. Jail*, No. 6:17-CV-

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 13
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

0055, 2018 WL 3873665, at *12 (N.D. Tex. Aug. 15, 2018) (no violation for ten-day delay in medical evaluation and ordering a medical diet); *see also Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1107 (N.D. Cal. 2022) (granting summary judgment where "Plaintiff has not presented any evidence that he suffered any harm from the [twelve-day] delay" in receiving a special diet); *Crichlow v. Fischer*, No. 9:17-CV-00194, 2017 WL 6466556, at *14 (N.D.N.Y. Sept. 5, 2017) (limited denial of food does not "rise to a level of constitutional significance," where inmate did not allege "total deprivation of food for an extended period of time"), *adopted by* 2017 WL 6459512 (N.D.N.Y. Dec. 18, 2017).

**Picciano was not deprived of food.** Picciano previously contended he was completely deprived of food and cited a food deprivation case, *Foster v. Runnels*, 554 F.3d 807 (9th Cir. 2009). *See* ECF No. 36 at 16; ECF No. 86 at 15. *Foster* does not support Picciano's claim but it is a useful comparator. There, a corrections officer provided the plaintiff *nothing* to eat for several meals over 23 days. 554 F.3d at 812–13. Here, Picciano admittedly had something to eat every meal of every day, including gluten-free options, though he declined to consume some of them due to *personal preference*. Ex. Q at 80:9–24; 105:12–14; 168:23–169:10; 170:23–171:9. But jails are not restaurants, and "a diet is not unconstitutionally inadequate because it does not taste good." *Wolff*, 2007 WL 3232531, at *4–5. Unlike the plaintiff in *Foster*, Picciano therefore cannot show "total deprivation of food for an extended period of time." *Crichlow*, 2017 WL 6466566, at *14.

**C.    The records-review policy is not facially unconstitutional.**

In addition to proving an injury, Picciano must prove that the records-review policy was either facially unconstitutional or amounts to deliberate indifference. *Gordon*, 6 F.4th at 974; *Wexford*, 18 F.4th at 235. A policy is facially unconstitutional "only if it affirmatively allows or compels unconstitutional conduct." *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 309 (4th Cir. 2023); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1144 (9th Cir. 2012). For instance, a policy that affirmatively requires pregnant female employees to take unpaid leave is facially unconstitutional. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002)

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 14
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    (citing *Monell*, 436 U.S. 658), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833

2    F.3d 1060 (9th Cir. 2016). But a plaintiff cannot facially attack a policy that is allegedly

3    unconstitutional by omission (i.e., "fail[s] to implement procedural safeguards"). *Tsao*, 698 F.3d

4    at 1143. The plaintiff must show the policy amounts to deliberate indifference. *Id.*

5         Picciano initially alleged the records-review policy "was *on its face* life-threatening,

6    dangerous, and discriminatory[.]" ECF No. 43 ¶ 22 (emphasis added). Picciano later clarified that

7    he is actually pursuing an "omission" theory of *Monell* liability. ECF No. 86 at 13–14. That theory

8    puts this case squarely within the deliberate-indifference framework more fully discussed below.

9         Picciano cannot prove the policy is facially unconstitutional anyway because it does not

10   "affirmatively allow or compel" unconstitutional conduct. It does not, for instance, compel

11   NaphCare providers to deny all requests for medical diets. It does not even compel NaphCare

12   providers to wait a certain timeframe before approving a medical diet. And Picciano supplies no

13   evidence or explanation for a facial challenge.

14        **D.    The records-review policy does not amount to deliberate indifference.**

15        Unless a policy or custom is facially unconstitutional, the policy must "demonstrate[]

16   municipal fault, i.e., deliberate indifference." *Wexford*, 18 F.4th at 235 (citation omitted). "This is

17   a high bar," requiring Picciano to prove that NaphCare made a *considered choice* to condone the

18   constitutional torts of its employees. *Id.* Where Picciano cannot even show that NaphCare was

19   negligent, Picciano falls far short of proving deliberate indifference.

20        **With respect to Plaintiff's "omission of safeguard policies" theory, short delays do**

21   **not amount to deliberate indifference.** In the Ninth Circuit, "[n]either precedent nor common

22   senses suggests that delay in providing a special diet arises to the level of deliberate indifference."

23   *Toussaint v. McCarthy*, 801 F.2d 1080, 1112 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987),

24   *overruled in part on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995); *see also Taylor v.*

25   *Caldwell*, 878 F.2d 1439 (9th Cir. 1989) (four-day delay of soft-food diet was not deliberate

26   indifference). Other courts have ruled similarly. *See, e.g., Lee v. Richland Parish Detention Ctr.*,

1    483 F. App'x 904 (5th Cir. 2012); *Gibson v. Franklin Cnty. Adult Detention Ctr.*, No. 08-3206,

2    2008 WL 4758590, at *2 (D. Kan. Oct. 29, 2008); *Branham v. Malloy*, No. 2:07-CV-243, 2009

3    WL 42263, at *5 (W.D. Mich. Jan. 5, 2009). And even a short deprivation of entire meals is not

4    deliberate indifference. *Maloney v. Ryan*, 711 F. App'x 372 (9th Cir. 2017) (alleged deprivation

5    of lunch meals over three-day period failed to establish deliberate indifference). In line with this

6    legal authority, a policy of awaiting receipt of records confirming a medical condition, that cannot

7    be diagnosed by a standard blood or urine test, before prescribing a medical diet is not a

8    deliberately indifferent policy.

9        **No pattern evidence to show deliberate indifference.** Picciano could not otherwise prove

10    deliberate indifference, because he would have to show "a prior pattern of similar constitutional

11    violations resulting from the policy [or practice]." *Wexford*, 18 F.4th at 236. That is almost always

12    the only way to show that a defendant knew its policy would violate the Constitution. *Board of*

13    *Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997); *Connick v. Thompson*,

14    563 U.S. 51, 62 (2011). Picciano fails to allege, let alone prove, *a single other constitutional injury*

15    *stemming from the records-review policy*, besides his own alleged injury. At most, that reflects a

16    "one-time negligent administration" of the policy. *Wexford*, 18 F.4th at 240.

17        **No proof of obvious danger to show deliberate indifference.** In "rare" cases, the risk of

18    unconstitutional consequences from a policy "could be so patently obvious that a [municipality]

19    could be liable under § 1983 without proof of pre-existing violations." *Connick*, 563 U.S. at 64.

20        "Rare" indeed. NaphCare has found only two cases in this Circuit concluding that a single

21    event could reflect a patently obvious risk. In *Castro*, the Ninth Circuit concluded that housing

22    highly intoxicated detainees together in "sobering cells" without monitoring obviously would

23    cause violations. 833 F.3d at 1076. The Court heavily relied on evidence the defendant *actually*

24    *appreciated* the risk of harm, because its own manual mandated that sobering cells "allow for

25    maximum visual supervision of prisoners." *Id.* at 1077.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    There's also *Sandoval v. County of San Diego*, where a detainee died of an overdose "after
2    medical staff left him unmonitored for eight hours" in a "mixed-use cell" despite signs he was
3    intoxicated. 985 F.3d 657, 661–662 (9th Cir. 2021). The detainee's widow alleged the county's
4    practice of using a "mixed use cell" for general detention and medical observation "without proper
5    communication protocols" led to the detainee's death. *Id.* at 664. As in *Castro*, there was evidence
6    the county *actually knew* that failure to rectify the situation was "substantially certain" to result in
7    harm. *Id.* at 682–683. Even with that evidence, the court observed that it was "a close question
8    whether [the widow] had mustered sufficient evidence to create a triable issue of fact on whether
9    the [c]ounty was deliberately indifferent." *Id.* at 682.

10    Here, the question is not close: Picciano has furnished no evidence that NaphCare *actually*
11    *appreciated* the risk of harm from the records-review policy or identified any aspect of the policy
12    that would put it on par with the policies in *Castro* or *Sandoval*. Those policies led to fatal injuries;
13    the alleged "risk" from the records-review policy is that some inmates might have to wait for a
14    medical diet and eat foods they might not "really like" in the meantime. And the policy will not
15    always result in delay. The policy does not, for instance, *require* NaphCare providers to wait a
16    certain number of days before acting on a medical diet request, or to simply refuse such requests.
17    The policy does the opposite, outlining procedures to ensure inmates are prescribed safe and
18    appropriate diets that fit their medical condition. *See* Ex. F; Ex. I at 5–6. When inmates promptly
19    release their medical records, that process can happen fairly quickly. Here, however, Picciano
20    refused to cooperate until the fifth day of his detention. *See* Ex. L at NC 000063.

21    If anything, the policy resembles another corrections healthcare policy that the Seventh
22    Circuit confirmed is *not* obviously risky. In *Wexford*, an inmate did not receive surgery until seven
23    months after showing cancer symptoms, and he blamed the delay on Wexford's "collegial review"
24    policy requiring the corporate office to preapprove offsite care. 18 F.4th at 237. The Seventh
25    Circuit concluded the risk of delays was not obvious, because the policy allowed for exceptions:

26

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 17
(No. 3:20-cv-06106-DGE)

165854864

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

"Wexford allows its medical directors to go outside the normal collegial review process in urgent or emergent situations, so it could not have been obvious from the face of the policy that collegial review would delay urgently needed care." *Id.* The records-review policy does the same thing. Though NaphCare generally requires medical documentation before prescribing a medical diet, that requirement does not apply to inmates with certain conditions that can be confirmed on-site. Ex. E at 39:3–21. Delay therefore is not an "obvious" risk of the records-review policy.

### E.    The records-review policy was not the moving force behind any injury.

On top of showing a constitutional injury and deliberate indifference, Picciano must prove the records-review policy was the "moving force" behind his injury. *Brown*, 520 U.S. at 408. "This 'rigorous causation standard' requires 'a direct causal link' between the challenged municipal action and the violation of the plaintiff's constitutional rights." *Wexford*, 18 F.4th at 235 (cleaned up). "But-for" causation is not enough; proximate causation is required. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). And a pattern of violations, "rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident," is often required to prove a policy "is the 'moving force' behind the plaintiff's injury." *Wexford*, 18 F.4th at 246 (citation omitted).

For the same reasons that Picciano cannot prove causation on his negligence claim, *see supra* at Part I(B), Picciano certainly cannot show that the policy was the "moving force" behind any injury. Because there is evidence that other factors caused delays, and there is no evidence that the policy caused delays or that any delays caused injury, Picciano cannot satisfy *Monell*'s "rigorous causation standard." *See Bryant v. Farmer*, 460 F. App'x 644, 645 (9th Cir. 2011) (delay in providing plaintiff with pain medication did not cause any injuries); *Dixon v. Howe*, 44 F. App'x 274, 275 (9th Cir. 2002) (plaintiff "failed to demonstrate that the delay caused him any harm"); *see also Clement*, 220 F. Supp. 2d at 1105 (granting summary judgment dismissing Section 1983 claim based on three-month delay in colonoscopy where the test ultimately did not detect cancer). And where NaphCare is not responsible for any alleged deprivations, Picciano has no viable

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 18
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

1    *Monell* claim against it. *See Allen v. Diaz*, No. 21-CV-0602, 2022 WL 2345922, at *2 (S.D. Cal.

2    June 29, 2022) (plaintiff failed to plead a Section 1983 claim because he did not allege that

3    defendants were "responsible for ensuring [plaintiff] received a vegan diet"); *see also Johnson v.*

4    *Schwarzenegger*, 366 F. App'x 767 (9th Cir. 2010) (affirming summary judgment where "named

5    Defendants were not responsible for any interruption in Plaintiff's medication").

6                                      *       *       *

7            There is no evidence to support Picciano's "custom or practice" theory, or three elements

8    of Picciano's *Monell* claim—a constitutional injury, an unconstitutional policy, or causation.

9    Those are three independent reasons to dismiss the *Monell* claim on summary judgment.

10   **IV.    Picciano's Rehabilitation Act claim fails as a matter of law.**

11           To prevail on his Rehabilitation Act claim, Picciano must show, among other things, that

12   (1) NaphCare receives "federal financial assistance" and (2) Picciano has a disability. *Updike v.*

13   *Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d

14   1124, 1135 (9th Cir. 2001)). To obtain compensatory damages, he must show that (3) NaphCare

15   *intentionally discriminated* or was *deliberately indifferent*. *Duvall*, 260 F.3d at 1138–39.

16           The evidence undercuts all three elements of Picciano's claim.[7]

17   **A.      NaphCare does not receive "federal financial assistance."**

18           The Rehabilitation Act only applies to entities that "receive[] federal financial assistance."

19   *Kimiko v. Alta California Regional Center*, No. 2:19-CV-0068, 2020 WL 6146451, at *3 (E.D.

20   Cal. Oct. 20, 2020). To determine whether funds are "federal financial assistance," the controlling

21   question is whether it was the "intention of the government to give a *subsidy*, as opposed to

22   government intent to provide *compensation*." *DeVargas v. Mason & Hanger–Silas Mason Co.*,

23   911 F.3d 1377, 1382 (10th Cir. 1990) (emphasis added); *see also Mullen v. Comm'rs for Adams*

24   *Cnty., Colorado*, No. 21-CV-02398, 2022 WL 1266618, at *12 (D. Colo. Apr. 28, 2022); *Kimiko*,

25   2020 WL 6146451, at *3–4; *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005).

26   ───────────────────────

        [7] NaphCare reserves the right to contest the other elements should the case proceed to trial.

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 19
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

165854864

Consistent with this principle, the Court confirmed that the relevant question to Picciano's Rehabilitation Act claim is whether the federal government subsidizes NaphCare's activities. *See* ECF No. 131 at 12.

On the other hand, "federal financial assistance" does *not* mean "the federal government's compensation of an entity for services provided." *Mullen*, 2022 WL 1266618, at *12; *see also Abdus–Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 10 (D.D.C. 2016); *McMullen v. Wakulla Cnty. Bd. of Cnty. Comm'rs*, No. 4:14-CV-117, 2015 WL 13376521, at *3 (N.D. Fla. Aug. 11, 2015). That includes grant funds that are used by the grant recipient to compensate a private entity for services. *U.S. Dep't of Transportation v. Paralyzed Veterans of Am.*, 477 U.S. 597, 606–07 (1986); *Abraham v. Corizon Health, Inc.*, No. 3:16-CV-01877, 2017 WL 11718378, at *3 (D. Or. Nov. 14, 2017).

Numerous courts have relied on this distinction in dismissing Section 504 claims against jail and prison contractors. *See, e.g., Mullen*, 2022 WL 1266618, at *12; *Eby v. Okezie*, No. 19 C 8404, 2021 WL 4146882, at *6 (N.D. Ill. Sept. 13, 2021); *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 440 (E.D. Penn. 2020); *Gross v. Landry*, No. 2:17-CV-00297, 2019 WL 1270922, at *9 (D. Maine March 19, 2019); *Corizon Health*, 2017 WL 11718378, at *3; *Abdus–Sabur*, 221 F. Supp. 3d at 10.

The District of Oregon's decision in *Corizon Health* is particularly apt. A deaf inmate claimed that Corizon Health, a correctional healthcare provider, violated the Rehabilitation Act by failing to provide sign language interpreters to inmates. 2017 WL 11718378, at *1. The plaintiff argued that the Rehabilitation Act covered Corizon Health because the *jail* received federal financial assistance, which the jail in turn used to pay Corizon Health for healthcare services. *Id.* at *2–3. The court disagreed because the funds were "merely compensatory" and did not subsidize Corizon Health's services. *Id.* at *4. On that basis, the court granted summary judgment in favor of Corizon Health, even where its contract with Clackamas County required Corizon Health to

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    "comply with all laws, specifically the Rehabilitation Act." *Id.* Again, the distinction was
2    dispositive: Getting paid *for services rendered* is not the same thing as getting *a subsidy*.

3         Like Corizon Health, NaphCare does not receive any funds from the government that
4    subsidize NaphCare's activities. NaphCare received *no federal subsidies* during 2020. Ex. AC at
5    6. That is why NaphCare does not have to execute documents assuring compliance with the
6    Rehabilitation Act. *Id.* Picciano has alleged that NaphCare "has received at least $155.1 million
7    dollars [sic] in federal financial assistance including substantial funds from the United States
8    Department of Justice," ECF No. 43 at 3, but the alleged "assistance" is *compensation* from the
9    federal government for services rendered to the Bureau of Prisons, Ex. AC at 6. Compensation is
10   not a subsidy—Picciano's attempt to conflate the two is why this claim fails as a matter of law.

11        No other funds that NaphCare received or used in 2020 constitute "federal financial
12   assistance." NaphCare provided healthcare services at select jails (not Clark County Jail) that
13   received funding through federal, state, and county grants. *Id.* at 7. Some of those jails used grant
14   money to compensate NaphCare for its healthcare services. *Id.* But those funds are "merely
15   compensatory" with respect to NaphCare and were not subsidies. *Corizon Health*, 2017 WL
16   11718378, at *4.

17        Because NaphCare did not receive or use any "federal financial assistance" during the
18   period of Picciano's detention, the Court should grant summary judgment in favor of NaphCare.

19   **B.    Picciano does not have a disability.**

20        A plaintiff faces a heavy burden in satisfying the "disability" element of a Rehabilitation
21   Act claim. A disability must "substantially limit a major life activity." *Coons v. Sec'y of U.S. Dep't*
22   *of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004). Under this exacting standard, conditions that are
23   commonly considered "disabilities," such as hearing loss, often are not "disabilities" under the
24   Rehabilitation Act. *See, e.g.*, *E.S. by & through R.S. v. Regence BlueShield*, No. C17-01609, 2018
25   WL 4566053, at *3 (W.D. Wash. Sept. 24, 2018), *aff'd in part, rev'd in part and remanded sub*
26   *nom. E. S. by & through R.S. v. Blueshield*, 812 F. App'x 539 (9th Cir. 2020).

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 21
(No. 3:20-cv-06106-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Picciano's alleged celiac disease does not "substantially limit a major life activity."

2    Picciano admits, "[a]s long as [he's] maintaining the strict [gluten-free] diet, there's not much of

3    an impact" on his life. Ex. Q at 32:11–14; *see also id.* at 35:20–36:3 ("[A]s long as I don't digest

4    [gluten], then I'll be fine[.]"). And when asked how living with celiac disease impacts his life,

5    Picciano identified no other ways that celiac disease impacts his life. *Id.* at 30:18–32:19. Picciano

6    also does not think of himself as disabled. He admitted that he has never submitted a claim for

7    disability benefits. *Id.* at 21:16–17. When asked directly about whether he considers himself

8    disabled, Picciano confirmed that he believes gluten intolerance and a disability are "*kind of two*

9    *different things.*" *Id.* at 90:22–91:2 (emphasis added). That's dispositive. *See Nolan v. Vilsack*, No.

10    CV 14-08113, 2016 WL 3678992, at *5 (C.D. Cal. June 30, 2016) (granting summary judgment

11    where plaintiff admitted celiac disease did not significantly affect his work as a firefighter or day-

12    to-day living); *see also Smith v. NaphCare, Inc., et al.*, No. 3:22-CV-05069, 2022 WL 2983942

13    (W.D. Wash. July 28, 2022) (Estudillo, C.J.) (dismissing claim).

14    **C.    NaphCare was not deliberately indifferent under the Rehabilitation Act.**

15    Picciano must "clear an additional hurdle" to recover compensatory damages: "proving a

16    *mens rea* of intentional discrimination …, which may be met by showing deliberate indifference."

17    *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 969 (9th Cir. 2021) (cleaned up). "Deliberate

18    indifference" under the Rehabilitation Act "requires both knowledge that a harm to a federally

19    protected right is substantially likely, and a failure to act upon that … likelihood." *Id.* (quoting

20    *Duvall*, 260 F.3d at 1139). Picciano must prove a *deliberate* failure to act. *See T.B. ex rel.*

21    *Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 469 (9th Cir. 2015). "[T]o meet the

22    second element of the deliberate indifference test, a failure to act must be a result of conduct that

23    is more than negligent, and involves an element of deliberateness." *Duvall*, 260 F.3d at 1139.

24    "Because in some instances events may be attributable to bureaucratic slippage that constitutes

25    negligence rather than deliberate action or inaction, … deliberate indifference does not occur

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  where a duty to act may simply have been overlooked, or a complaint may reasonably have been
2  deemed to result from events taking their normal course." *Id.*

3      Picciano cannot prove a failure to act. When NaphCare's staff received notice of Picciano's
4  request for a gluten-free diet, they took the steps necessary to prescribe that diet for him. And when
5  Picciano complained that the gluten-free meals he received were not 100% gluten-free, NaphCare
6  passed on his complaints to the Jail. Exs. T, U.

7      Picciano also has not mustered any evidence that NaphCare employees *deliberately* failed
8  to act. Picciano's claim in this way starkly contrasts with those cases with evidence of
9  deliberateness, involving an entity's reflexive denial of benefits (*Button v. Bd. of Regents of Univ.*
10 *& Cmty. College System of Nevada*, 289 F. App'x 964, 968 (9th Cir. 2008)), or categorical
11 exclusion of a disabled person from a covered program (*Lovell v. Chandler*, 303 F.3d 1039, 1057
12 (9th Cir. 2002)). Without evidence that NaphCare employees deliberately failed to act, Picciano
13 will be left to contend that they took too long to act. But the Ninth Circuit has rejected the theory
14 that delay alone constitutes deliberate indifference under the Rehabilitation Act. *See Suarez v.*
15 *Superior Court of California*, 283 F. App'x 470 (delay in ordering interpreter for plaintiff was not
16 deliberate indifference). Regardless, Picciano cannot explain how any alleged delay constitutes a
17 deliberate failure to act, as opposed to a consequence of "events taking their normal course" or
18 "bureaucratic slippage that constitutes negligence rather than deliberate action or inaction."
19 *Duvall*, 260 F.3d at 1139.

20     Because there is no evidence that NaphCare employees deliberately failed to act, the Court
21 must confirm that Picciano cannot recover compensatory damages on his Rehabilitation Act claim.
22 *See Updike*, 870 F.3d at 952 (affirming grant of summary judgment for lack of deliberate
23 indifference).

## CONCLUSION

24

25     The Court should grant summary judgment for NaphCare on all of Picciano's claims.

26     RESPECTFULLY SUBMITTED this 11th day of April, 2024.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    *I certify that this brief contains 8149 words,*    s/ David A. Perez

2    *in compliance with the Local Civil Rules.*    David A. Perez, Bar No. 43959

Zachary E. Davison, Bar No. 47873

3    Michelle L. Maley, Bar No. 51318

Mason Y. Ji, Bar No. 58292

4    **Perkins Coie LLP**

1201 Third Avenue, Suite 4900

5    Seattle, Washington 98101-3099

Telephone: +1.206.359.8000

6    Facsimile: +1.206.359.9000

DPerez@perkinscoie.com

7    ZDavison@perkinscoie.com

MMaley@perkinscoie.com

8    MJi@perkinscoie.com

9    *Attorneys for Defendant NaphCare, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NAPHCARE'S MOTION FOR SUMMARY
JUDGMENT – 24
(No. 3:20-cv-06106-DGE)

165854864