The Honorable David G. Estudillo

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

GAVEN PICCIANO,

    Plaintiff,

    vs.

CLARK COUNTY, CLARK COUNTY
JAIL, WELLPATH, LLC, and NAPHCARE,
INC.,

    Defendants.

Civil Action No. 3:20-cv-06106-DGE

**DEFENDANT WELLPATH, LLC'S MOTION
FOR SUMMARY JUDGMENT**

**HEARING DATE: MAY 3, 2024**

**ORAL ARGUMENT REQUESTED**

## I. <u>MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW Defendant, Wellpath, LLC ("Wellpath") by and through its counsel of record, and hereby moves the Court pursuant to Fed. R. Civ. P. 56 for an order granting summary judgment dismissing Plaintiff's Complaint against Wellpath. By this Motion, this Defendant seeks dismissal of any and all claims Plaintiff has asserted against Wellpath.

## II. <u>INTRODUCTION</u>

Wellpath provided less than 35 hours of medical services while Plaintiff was an inmate at Clark County Jail. There is no clear evidence that during that time Plaintiff communicated to any Wellpath agent that he wanted a gluten free diet. In the intake form where he provided information

/ / /

**Defendant Wellpath, LLC's
Motion for Summary Judgment - 1**

1  and signed, he did not indicate that he was on a medical diet. When specifically questioned at his

2  deposition, he candidly admitted he did not recall the conversation with the Wellpath nurse.

3  Furthermore, he affirmatively represented to Wellpath's agents he would be released from

4  the jail in approximately 12 hours after his first contact with Wellpath's agents. Wellpath's agents

5  had no basis to question the Plaintiff's affirmative representations. At that time, Wellpath's agents

6  also requested that Plaintiff sign a document that would allow the release of his medical records.

7  He did indicate he had celiac disease and Wellpath was attempting to confirm that. However,

8  Plaintiff refused to cooperate in obtaining that information at that time. He signed the document

9  where he recognized the potential risk for doing so.

10  Finally, it is important to note that during the 35-hour period, there is no evidence that

11  Plaintiff received any damages. Plaintiff himself testified he did not recall being sick or ill during

12  that time. Plaintiff's expert expressed no opinion that Plaintiff specifically incurred any damage

13  during that time period. She candidly admitted she did not know what he had eaten, if anything,

14  during that period of time. She also admitted she did not have any evidence that he was sick or ill

15  during that 35-hour period.

16  These undisputed facts alone mandate that summary judgment be granted to Wellpath.

17  When you add in the legal issues, it creates an even significantly more basis requiring summary

18  judgment in favor of Wellpath.

19  ### III. STATEMENT OF FACTS

20  **A.    RELEVANT PROCEDURAL BACKGROUND**

21  Plaintiff filed a Complaint on November 11, 2020, against Clark County, Clark County

22  Jail, and NaphCare, Inc. alleging numerous causes of action, thirteen (13) in total. Dkt. No. 1. On

23  April 8, 2021, Plaintiff filed his First Amended Complaint, adding Wellpath, LLC, as a Defendant.

24  Dkt. No. 27. Plaintiff maintained his thirteen (13) causes of action. Id. Plaintiff filed a Second

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 2**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  Amended Complaint (referred to herein as "Complaint") on January 25, 2022, alleging against

2  Wellpath, causes of action for violation of Section 504 of the Rehabilitation Act of 1973, 42 U.S.C.

3  § 1983, The Washington Law Against Discrimination[1], Negligence, Negligent Infliction of

4  Emotional Distress, and Outrage. Dkt. No. 43.

5       With regard to Wellpath's Motion to Dismiss the First Amended Complaint, Dkt. No. 31,

6  Plaintiff voluntarily dismissed counts 7, 8, 9, 11, 12, and 13 against Defendant Wellpath.

7  Plaintiff's remaining claims as to Defendant Wellpath were dismissed, as well, with leave to

8  amend. Dkt. No. 42. On Wellpath's Motion to Dismiss the Second Amended Complaint. Dkt. No.

9  47. The Court granted in part, and denied in part, that Plaintiff's **WLAD** claim was dismissed as

10 to all defendants.  Plaintiff's **negligent** infliction of emotion distress claim was not dismissed

11 Plaintiff's **outrage** claim was not dismissed.

12       1.    General background

13      On January 30, 2020, after being arrested for domestic violence and assault, Plaintiff was

14 booked into Clark County Jail. Complaint, ¶ 23–24. At that time, Wellpath had a contract with the

15 Jail to provide medical services. Id. ¶¶ 4, 19. The contract with Wellpath ended on midnight of

16 January 31, 2020, and on February 1, 2020, Jail's contract with NaphCare, Inc, for medical services

17 began. Id. ¶¶ 5, 21.

18       2.    Wellpath's role at Clark County Jail

19      To remind this Court, Wellpath was contracted to provide medical services at the Clark

20 County Jail. Complaint, ¶ 4. Wellpath was not contracted to provide nutritional or dietitian

21 services. (Declaration of Jerome R. Aiken, hereinafter "Decl. of J. Aiken", ¶ 11, Exhibit J).

22

23 
---
[1] This cause of action was dismissed with prejudice pursuant to this Court's May 23, 2022, Order On Defendant
24 Wellpath, LLC's Motion To Dismiss The Second Amended Complaint.

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 3**

1    Medical services is a different facet of services provided at Clark County Jail than food services.

2    Id. at p. 153. Wellpath had no control over the Jail's kitchen. Id. Wellpath was not required to have

3    a registered dietitian. Id. Wellpath was not responsible for assessing the nutrition or contents of

4    the meals that Jail provided. Id. at p. 153–54.

5       Dietary or nutritional services, including the preparation of meals and review thereof to

6    ensure compliance with nutritional or special needs, should not be conflated with the medical

7    services that Wellpath agreed to provide, and did provide.

8       It is important to emphasize that under jail policy, a therapeutic or specialized diet (medical

9    diet) could only be provided with the approval of a registered dietician or contract physician. There

10   was no such approval during Wellpath's 35 hours of medical care.

11      3.    Wellpath's written policy

12      There is some confusion regarding Wellpath's written policy. Wellpath's written policy

13   only states that "medical diets are provided per provider order and documented in the health

14   record." Also, that self-reported food allergies are determined by qualified healthcare

15   professionals that includes nurses. (Decl. of J. Aiken, ¶ 11, Exhibit J). There is nothing in

16   Wellpath's policies that a medical diet could only be ordered if records are obtained and a diagnosis

17   is confirmed. It is clear under Wellpath's contract with Clark County Jail that a provider (which

18   can be a physician, physician assistant, or ARNP (advanced registered nurse practitioner)) was on

19   call 24/7. (Decl. of J. Aiken, ¶ 11, Exhibit J). Specifically, Plaintiff's expert Dr. Holliday testified

20   such a policy is appropriate. (Decl. of J. Aiken, ¶ 3, Exhibit B, p. 215-221).

21      4.    Plaintiff's representations at intake

22      As part of the intake process, Wellpath's agent registered nurse Tarah Ward (Crotty),

23   questioned Plaintiff about his health history as well as other issues. (Declaration of Tarah Ward,

24   (hereinafter "Decl. of Ward"), ¶ 5). During the intake screening, Plaintiff did state he is allergic

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 4**

to gluten.  He also stated he is currently being treated by a physician for celiac disease.  His response to the specific question: "Are you on a specific diet prescribed by a physician?  If yes, explain" was "**No**."  (Decl. of J. Aiken, ¶ 10, Exhibit I).  (Emphasis supplied).

     5.    <u>Plaintiff executed a document entitled a document entitled "Refusal of Treatment"</u>

Also, at the time of intake, Nurse Ward wanted to obtain Plaintiff's medical record to confirm he had celiac disease.  (Decl. of Ward, ¶ 10).  Nurse Ward described that document to Plaintiff in detail.  She explained to him the consequences of not agreeing to provide his medical records.  Plaintiff signed the document.  (Decl. of Ward, ¶¶ 15-18).

That document states in part:

> I acknowledge that I have been fully informed of and understand the above refused treatment and the acts and risks involved in refusing.  I hereby release and agree to hold harmless CCS and correctional personnel from all responsibility and any ill effects which may result from this refusal.

(Decl. of Ward, ¶ 19, Exhibit B).[2]

     6.    <u>Inmate request slip dated 1/31/2020</u>

On January 31, 2020, Plaintiff prepared a "Inmate Request Slip" also known as a kite.  (Decl. of Ward, ¶ 22, Exhibit C).  In that kite, he indicated he had celiac disease and that he required a strict gluten free diet.

There is no evidence that Wellpath received that document on January 31, 2020.  Plaintiff admits he did not see any healthcare providers on that date.  He admits he did not learn that he was not going to be released from jail until late that day after business hours.  (Decl. of J. Aiken, ¶ 10, Exhibit I).  It is clear that the document is not filled out correctly because it does not indicate to

---

[2] This is demonstrated by exhibits in Plaintiff's possession used at the deposition of Wellpath's agent Mr. Lamb.  (Decl. of J. Aiken, ¶ 8, Exhibit G).

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 5**

whom the request is specifically directed. The information from witnesses is that Wellpath would

not have received that by midnight of January 31, 2020. (Decl. of Ward, ¶ 22).

       7.   <u>Pertinent facts after Wellpath ceased providing medical care</u>

     Plaintiff finally agreed to sign a release for his medical records on February 3, 2020.

Complaint, <u>Dkt No.</u> 27, ¶ 43. On or about February 6, 2020, NaphCare received Plaintiff's medical

records and thereafter ordered the Plaintiff be placed on a special gluten free diet. <u>Id.</u>, ¶ 53.

However, Plaintiff alleges even after a gluten free diet was ordered, he continued to receive meals

that contained gluten resulting in exposure to ingestion of gluten. <u>Id.</u>, ¶¶ 53, 56, 59, 62, 68, 71.

Nevertheless, Plaintiff's own expert has admitted that even if Plaintiff ingested gluten food, he

suffered no long-term consequences. (Decl. of J. Aiken, ¶ 3, Exhibit B).

     Plaintiff did not see a mental health professional on January 31, 2020. That demonstrates

the issue of food was addressed, but apparently not a concern of Plaintiff. (Decl. of J. Aiken, ¶ 3,

Exhibit B).

       8.   <u>Admissions by Plaintiff</u>

     For the convenience of Court, we will refer to admissions made by Plaintiff in his

deposition in the order of the pages in the deposition where he so testified.

- Plaintiff stated that other than not being able to ingest gluten, celiac disease does not really impact his life. (Decl. of J. Aiken, ¶ 10, Exhibit I at 30:18-32:19.
- He testified that as long as he maintains a strict gluten free diet, that his celiac disease does not have much of an impact on his life. <u>Id.</u> at 32:11-14, 35:20-36:3).
- Plaintiff testified that at the time of intake he really does not recall anything that happened because according to him he was in shock and felt like he was in a dream, did not know what was going on. <u>Id.</u> at 72:6-10
- He stated he was not to sign the Refusal of Treatment form. <u>Id.</u> at 73:12-14, 22-25, and 74:1-2.
- He told the intake person that he was going to get out the next day. <u>Id.</u> at 74:9-17.

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 6**

- He testified he does not recall what was discussed with him regarding the Refusal of Treatment form. Id. at 75:17-25, 76:1-8.
- He admits that he signed the Refusal of Treatment document. Id. at 75:17.
- He learned he was not going to get out of jail until late in the afternoon and it becoming after the business day. Id. at 77:5-10, 78:8-11.
- Plaintiff testified that having celiac disease or gluten intolerance and disability are distinct things. Id. at 90:22-91:2.
- He testified that the first time he received any food while at the jail was on Friday morning, January 31, 2020.  However, he does not know what he was served that day or what he ate that day. Id. at 104:5-24.
- He admits he has not seen a healthcare provider regarding alleged celiac issues since over four years ago. Id. at 149:25, 160:1-10.
- He testified he does not know if he vomited during the time that Wellpath was providing care. Id. at 154:15-25, 155:1-4.
- He cannot recall whether he lost any weight during the time that Wellpath was providing care. Id. at 155:5-13.
- He admitted he was educated on what goods contained gluten and that he had had a good idea during the time he was incarcerated he knew what items on his food would be gluten free. Id. at 167:8-25, 168:1-19.
- He admitted he does not know if he was told he cannot receive a medical diet until he signed a release. Id. at 181:6-25, 182:1-4.

9.    Wellpath did not receive federal funding

After thorough investigation in this matter, Wellpath has continually represented it does not receive federal funding. Dkt. Nos. 136 and 137. It is undisputed that it certainly did not receive any federal funding for its care at Clark County Jail.  The only payments it received was under the specific contract it had with Clark County.

## IV. **LEGAL ARGUMENT AND AUTHORITY**

### A.    SUMMARY JUDGMENT STANDARD

This Court is well aware of the summary judgment standard in federal court.  Thus, we will not burden the Court in discussing it at length.  Nevertheless, it is well to remember what the U.S. Supreme Court stated regarding summary judgments in the seminal case of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The Federal Rules of Civil Procedure have more than 50 years to authorize motions for summary judgment upon proper showing of the lack of a genuine, triable issue

Defendant Wellpath, LLC's
Motion for Summary Judgment - 7

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  of material fact.  Summary Judgment procedure is properly guarded, not as a
   favorable procedural shortcut, but rather as an integral part of the federal rules as a
2  whole, which are designed "to secure the just, speedy, and inexpensive
   determination of every action." . . . Rule 56 must be construed with due regard not
3  only for the rights of persons asserting claims and defenses that are adequately
   based in fact to have those claims and defenses tried to a jury, but also for the rights
4  of a person opposing such claims and defenses to demonstrate in the manner
   provided by the rule, prior to trial, that the claims and defenses have no factual
5  basis.

6  Id. at 106 S. Ct. at 255.

7      As to Wellpath, this is such a case where the Plaintiff's claims against Wellpath have no

8  factual basis.  Moreover, they have no legal basis.

9  **B.    THE COURT MUST DISMISS ANY CLAIMS BROUGHT UNDER 42 USC**
   **§ 1983**
10
       1.    For §1983 liability Plaintiff must establish that Wellpath had a custom, policy or
11           practice of deliberate indifference to detainees' medical needs

12      Under Monell §1983 entity liability must be based upon "(1) an official policy; (2) a

13  pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act

14  by a final policymaker." Horton by Horton v. City of Santa Maria, 915 F.3d 592, 602-03 (9th Cir.

15  2019).

16      The standard of §1983 liability against a private entity is the same as that against a

17  governmental entity:

18          To establish § 1983 liability, a plaintiff must show both (1) deprivation of a
            right secured by the Constitution and laws of the United States, and (2) that the
19          deprivation was committed by a person acting under color of state law."….

20          To create liability under § 1983, the constitutional violation must be caused
            by "a policy, practice, or custom of the entity,"... or be the result of an order by a
21          policy-making officer…. Whether Monell applies to suits against private entities
            under § 1983 is a threshold question with regard to [private entity] will liability
22          because, if it does, Monell establishes the parameters of such liability.

23          Every one of our sister circuits to have considered the issue has concluded
            that the requirements of Monell do apply to suits against private entities under §
24

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 8**

1983. ... Like those circuits, we see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law.

As *Monell* observed, the text of § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." 436 U.S. at 692, 98 S.Ct. 2018. On the contrary, the Court observed, Congress explicitly provided "that A's tort became B's liability if B 'caused' A to subject another to a tort." *Id.* Thus, the Court held, "constitutional deprivations" could subject a municipality to liability under § 1983 if they were the result of a "governmental 'custom' " sufficient to establish causation. *Id.* at 690–91, 98 S.Ct. 2018. It would be odd indeed to suggest that this interpretation has less force in the context of a suit against a private entity....

To make out a claim against [a private entity] under *Monell,* [the plaintiff] must show that (1) [the private entity] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [the private entity]....

Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138–39 (9th Cir. 2012).

For purposes of this Motion only, Wellpath is not contesting that it's contract to provide medical services with Clark County constitutes the requisite state action under West v. Atkins, 487 U.S. 42 (1988).

"To establish liability, a plaintiff must establish that he was deprived of a constitutional right and that the [entity] had a policy, practice, or custom which amounted to 'deliberate indifference' to the constitutional right and was the 'moving force' behind the constitutional violation." Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008).

Plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference' " to his constitutional rights, and this occurs "when the need for more or different [action] is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 389-390, 109 S. Ct. 1197, 1205 (1989).

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 9**

2.    Deliberate indifference requires more than mere negligence, misdiagnosis (i.e. failure to recognize) or failure to diagnose

A deliberate indifference standard is applicable to pretrial detainees under a 14th amendment due process analysis where the claim is based upon failure to provide treatment. Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016). Liability may be imposed if the healthcare provider " 'knows that inmates face a substantial risk of serious harm and disregards that risk *by failing to take reasonable measures to abate it*.' … [T]he plaintiff must show that the [defendant] acted with "deliberate indifference." Id.

Deliberate indifference is more than negligence and is the equivalent of reckless disregard. Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (pretrial detainee; "the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."). A plaintiff must establish that the defendant "made an intentional decision with respect to" the plaintiff's treatment. Id. "[A]n inadvertent failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). A misdiagnosis or failure to diagnose a condition is insufficient as a matter of law under §1983. Id. at 1123 (summary judgment dismissal of healthcare provider without actual knowledge of the condition affirmed).

Thus, "a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." Id. at 1122. Plaintiff's expert Dr. Holliday admitted that a policy such as Wellpath's required that a provider order a medical diet is appropriate. (Decl. of J. Aiken, ¶3, Exhibit B, 215:1-25, 216:1-25, 217:1-25, 218:1-25).

Moreover, mere delay of providing medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference… unless the denial was harmful." Shapley v.

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (citing Estelle v. Gamble,

2  429 U.S. 97, 97 S.Ct. 285 (1976)); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (quoting

3  Shapely).  Here, there is no testimony.  There is no evidence that the 35 hours was harmful.

4      Deliberate indifference is evaluated under an objective standard. Gordon, 888 F.3d at 1124-

5  1125. "[T]he defendant's conduct must be objectively unreasonable" and " 'mere lack of due care"

6  is insufficient. Id. at 1125.

7      3.    There is no evidence that Wellpath acted with deliberate indifference to Plaintiff's
              medical dietary needs, or that any such deliberate indifference resulted in harm

8

9      Here there is actually no evidence that employer Wellpath (to be distinguished from the

10 actions of its employees) acted with deliberate indifference with regard to the Plaintiff's medical

11 needs. There is no evidence of any (1) Wellpath policy practice or custom which amounts to

12 deliberate indifference, (2) decision or act by a Wellpath final policymaker which amounted to

13 deliberate indifference, or (3) a failure to train or supervise by Wellpath which amounted to

14 deliberate indifference.

15     §1983 Monell liability claims against an entity may be dismissed as a matter of law when

16 there is no evidence of the existence of any policy, practice, custom, decision or act by a final

17 policymaker, or a failure to train or supervise, which in and of itself amounts to deliberate

18 indifference. Ramirez v. Las Vegas Metro. Police Dep't, 22 F. App'x 828, 830–31 (9th Cir. 2001)

19 (msj affirmed where no evidence of the employing entity's (1) having a policy promoting

20 deliberate indifference to detainees' medical needs, (2) persistent and widespread custom of being

21 deliberately indifferent to detainees' medical needs (excluding isolated or sporadic incidents), and

22 (3) an inadequate training program that amounts to deliberate indifference); Levine, supra, at 907

23 (msj affirmed; no evidence of a policy that amounted to deliberate indifference to constitutional

24 rights, and was the moving force behind a violation of those rights); Murray v. Idaho, 315 F. App'x

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 11**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1   639, 641 (9th Cir. 2009)(msj affirmed; no evidence of a policy or custom amounting to deliberate

2   indifference to constitutional rights); Hancock v. Clark Cnty., 285 F. App'x 447, 449 (9th Cir.

3   2008) (same); Darby v. California, Dep't of Soc. Serv., 1 F. App'x 688, 690 (9th Cir. 2001) (msj

4   affirmed; plaintiffs did not present sufficient evidence that the County had a policy or custom that

5   amounted to deliberate indifference).

6        The evidence before the Court establishes that Wellpath only provided services for

7   approximately 35 hours during the Plaintiff's incarceration, that on initial screening Plaintiff

8   indicated having celiac disease (i.e. gluten intolerance) but stated he was not on a specific diet

9   prescribed by a physician. Furthermore, the record shows Wellpath's medical diet policy

10  (including for celiac disease) are "provided per provider order and documented in the health

11  record" and that "diets related to self-reported food allergy are determined by Qualified Health

12  Care Professional" (which includes nurses). Furthermore, upon booking Plaintiff refused to

13  execute a medical release of information so his celiac disease could be confirmed and also signed

14  a "Refusal of Treatment" form because he was "getting out tomorrow."

15       Additionally, and perhaps more significantly, there is no evidence of Plaintiff suffering any

16  damages during the 35 hours when Wellpath was providing care. Plaintiff's medical expert cannot

17  state that Plaintiff incurred any damages during this time.

18       4.   Plaintiff cannot establish the causation element of a 1983 action

19       In a 1983 action, a plaintiff must also establish causation. "The fourth element of causation,

20  requires actual and proximate cause. Even in analyzing § 1983 claims, the court looks to traditional

21  tort law to determine causation, including whether intervening causes have broken the chain of

22  proximate cause." Moriarty v. County of San Diego, 219 WL 4643602 at 26 (citing Leer v.

23  Murphy, 844 F.2d 626 (9th Cir. 1988); Van Ort v. Estate of Stanewich, 92 F.3d 831 (9th Cir. 1986).

24  The Van Ort case equates the necessary proximate cause element to "but for" causation. The

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 12**

1    analysis of causation must be individualized and focused on the duties and responsibilities of each

2    individual defendant. Lima-Flores v. Underell, 2022 WL 18118 at 1 (Dist. of Or. 2022).

3         We direct the Court's attention to the discussion of common law and proximate cause

4    contained in the discussion of Plaintiff's negligence claim.  There is no "but for" causation here as

5    discussed in that analysis.

6    **C.   PLAINTIFF'S REHABILITATION ACT CLAIMS MUST BE DISMISSED FOR
     FAILURE TO PROVIDE EVIDENCE ESSENTIAL ELEMENTS OF THE**

7    **REHABILITATION ACT CLAIM**

8         1.   Elements of a Rehabilitation Act claim

9         "Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act.[8] A

10   plaintiff bringing suit under § 504 must show (1) he is an individual with a disability; (2) he is

11   otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by

12   reason of his disability; and (4) the program receives federal financial assistance." Duvall v. Cnty.

13   of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001); Wragg v. Ortiz, 462 F.Supp.3d 476, 511 (D. N.J.

14   2020).

15        2.   There is no evidence that Wellpath was a recipient of federal financial assistance

16        Prior filings with this court (Dkt. Nos. 136 and 137) demonstrate that Wellpath does not

17   receive federal financial assistance. Furthermore, Plaintiff can produce no evidence to contradict

18   this fact. The fact that Wellpath contracted with a government entity which may have received

19   federal financial assistance does not make Wellpath a recipient of federal financial assistance as a

20   matter of law. Castle v. Eurofresh, 731 F.3d 901, 908-909 (9th Cir. 2013).

21        Rehabilitation Act liability is imposed only on "those who affirmatively choose to receive

22   federal aid" but such liability "will not extend as far as those who benefit from it…". Id. at 908. A

23   contractor who provides services to an entity which is a recipient of federal financial assistance in

24   ///

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 13**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

which may be paid from such assistance is not in and of itself subject to the Rehabilitation Act. Id.

at 908-909 (affirming dismissal of Rehabilitation Act claim against state contractor).

    3.    There is no evidence that Plaintiff had a "disability" within the meaning of the Rehabilitation Act

In this case, Plaintiff claimed disability is alleged to be celiac disease (reaction to gluten).

The Rehabilitation Act only applies to individuals with a "disability." 29 USC §794 (a)

(contained within Subchapter V). The definition of "disability" is the same as that provided within

the ADA at 42 USC §12102 (1). 29 USC §705(9)(B). "There is no significant difference in analysis

of the rights and obligations created by the ADA and the rehabilitation Act." Whitall v. Munk,

2023 WL 4397949 at*1 (9th Cir. 2023) (quoting Zukle v. Regents, 366 F.3d 11, 1045 n. 11 (9th

Cir. 1999)).

"But, having celiac disease, without evidence of it being disabling, is an insufficient basis

for a colorable... claim." Holt v. Rural Health Svcs. 2024 WL 377991 at *2 (D. S.C. 2024) (merely

having celiac disease and being treated for celiac disease without evidence of disabling conditions

insufficient; ADA claim dismissed). The Holt court, citing Ninth Circuit authority, held that a mere

"dietary restriction" was legally insufficient:

> [t]hough ... eating is a major life activity, we do not ... invite all those on a diet to bring claims of disability. Not every impediment to the copious and tasty diets our waistlines and hearts cannot endure is a substantial limitation of the major life activity of eating. We must carefully separate those who have simple dietary restrictions from those who are truly disabled.

Holt, at *2-3 (quoting Fraser v. Gondale, 342 F.3d 132, 1041 (9th Cir.2003)). See, also, Nolan v.

Vilsack, 2016 WL 3678992, at*5 (C.D. CA. 2016) (granting summary judgment where plaintiff

admitted celiac disease did not significantly affect his work or day-to-day living).

As set forth in codefendant Naphcare's Summary Judgment Memorandum, Plaintiff admits

that as long as he maintains his gluten-free diet there is not much of an impact in this life, there

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 14**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  are no other ways that celiac disease impacts his life, and does not equate gluten intolerance with

2  a disability indicating those are "kind of two different things." Dkt. No. 141, p. 22. He also has

3  not seen a healthcare provider for celiac related issues for over four years.

4          4.      There is no evidence that Plaintiff was damaged by not being provided gluten-free
                    meals during the 35 hours of Wellpath involvement

5

6          Finally, the records reflect that in the 35 hours of Wellpath involvement, Plaintiff never

   communicated that he wanted to gluten free diet, signed a form of refusal of treatment, and there

7  is no evidence of any damage to Plaintiff provided a gluten-free diet, including from the testimony

8  of his expert. (Decl. of J. Aiken, ¶ 4, Exhibit C).

9

   **D.    PLAINTIFF CANNOT ESTABLISH THE EXTREMELY RIGOROUS CLAIM OF**
10 **        OUTRAGE**

11         One of the Washington state claims the Plaintiff is alleging in this case is a claim based

12 upon the tort of outrage. Washington law on that tort demonstrates its an extremely difficult claim

13 to establish under Washington law. It is a claim that is frequently dismissed by summary judgment

14 as demonstrated by the numerous appellate court cases upholding the trial court's decision

15 dismissing that difficult claim. See, e.g., Reid v. Pierce County, 136 Wn.2d 195, 961 P.2d 333

16 (1998); Jackson v. People's Federal Credit Union, 25 Wn. App. 81, 604 P.2d 1025 (1979);

17 Dicomes v. State, 113 Wn.2d 612, 682 P.2d 1002 (1989); Sutton v. Tacoma School Dist. No. 10,

18 180 Wn. App. 859, 324 P.3d 763 (2014).

19         Under Washington law, a trial court essentially acts as a gatekeeper in analyzing these

20 claims. The trial court must decide whether based upon the undisputed facts that the conduct arises

21 to the extremely high level necessary to establish a claim of outrage. The trial judge must initially

22 as a matter of law determine if reasonable minds can differ on whether the conduct was sufficiently

23 extreme to result in liability. Robel v. Roundup Corp., 148 Wn.2d 335, 351, 59 P.3d 611 (2020);

24 Spicer v. Patnode, 9 Wn. App. 2d 283, 443 P.3d 801 (2019).

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 15**

1    In order for Plaintiff to survive a summary judgment motion on this claim and present a

2    prima facie case, the Plaintiff must prove three distinct elements. They are: "(1) extreme and

3    outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) an actual

4    result to the plaintiff of severe emotional distress." Christian v. Tohmeh, 191 Wn. App. 709, 738,

5    366 P.3d 16 (2015).

6    Under Washington law, conduct to be constituted outrageous conduct must be extreme. It

7    must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

8    of decency, and be regarded as atrocious and utterly intolerable in a civilized community."

9    Grimsby v. Sampson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975); Birklid v. Boeing Co., 122 Wn.2d

10   853, 867, 904 P.2d 278 (1995).

11   Washington courts in determining whether conduct is sufficiently outrageous to constitute

12   the tort of outrage must consider "the position occupied by the defendant. . . ." Phillips v.

13   Hardwick, 29 Wn. App. 382, 388, 628 P.2d 506 (1981); Birklid v. Boeing Co., 122 Wn.2d 853,

14   867, 904 P.2d 278 (1995). Here, the position occupied by Wellpath's agent was unique and very

15   different than the position occupied by the other Defendant told by Plaintiff he was being released

16   in approximately 12 hours. That fact alone demonstrates Plaintiff cannot establish the tort of

17   outrage as to Wellpath.

18   The position of Wellpath and its agents was that they were specifically told by the Plaintiff

19   that he was being released in approximately 12 hours. Thus, there was no urgency demonstrated

20   as to his condition. This fact alone demonstrates that Plaintiff cannot establish the outrage as to

21   Wellpath. Moreover, he reported to Wellpath that he was not on any physician prescribed diet.

22   Finally, he signed a refusal of treatment form waiving his claims here and precluding Wellpath to

23   further investigate his claim of celiac disease.

24   ///

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 16**

1    Washington courts have analyzed the claims of tort of outrage in the area of providing

2    medical services to a person.  There are at least two cases in Washington that have done so,

3    Christian v. Tohmeh, 191 Wn. App. 709, 738, 366 P.3d 16 (2015) and Benoy v. Simon, 66 Wn.

4    App. 56, 831 P.2d 167 (1992).  In both cases, the Washington appellate courts have upheld

5    summary dismissal of the plaintiff's tort of outrage claim.  A review of both of those cases reveal

6    that the conduct alleged in those cases was exponentially more extreme than the conduct alleged

7    here.

8    We will discuss the Washington appellate court case of Christian v. Tohmeh, 191 Wn. App.

9    709, 366 P.3d 16 (2015) to exemplify this.  Significantly, in Christian, it was alleged that the

10   physician involved participated in a pattern of intentional behavior to obfuscate a true diagnosis in

11   an attempt to avoid legal liability.  The physician yelled and shouted at the plaintiff.  The physician

12   told the plaintiff that her neurological deficits were psychosomatic and implied to the patient that

13   she was lazy and obese.  He finally harangued another doctor in an attempt to influence that

14   physician's diagnosis while also minimizing the patient's history by reporting that the patient

15   suffered from significant emotional and psychological issues.  Finally, the plaintiff then contended

16   the physician referred the patient to a urologist who found the medical condition at issue and

17   confirmed a diagnosis, but the defendant reported to the patient that that physician's findings were

18   normal.  Id. at 737-38.

19   Obviously, such claims are far more extreme and outrageous than anything alleged here.

20   Yet, in Christian, the appellate court had no difficulty in concluding they did not raise to the

21   extreme level of outrageous conduct under Washington law.

22   It should also be noted there is no evidence whatsoever that the Plaintiff suffered severe

23   emotional distress during the 35 hours of care by Wellpath.  There is no evidence in fact that the

24   Plaintiff ingested any gluten food.  There is no evidence Plaintiff became ill at all during that

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 17**

1   period.  The Plaintiff's only damage expert, Dr. Hujoel did not express any opinions on that

2   specific issue.

3   **E.    THERE IS NO VIABLE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER WASHINGTON LAW**

4       Another one of the Plaintiff's claims that is a Washington law claim, is a claim asserting

5   the tort of negligent infliction of emotional distress.  "The tort of negligent infliction of emotional

6   distress is a limited, judicially created cause of action."  Colbert v. Moomba Sports, Inc., 163

7   Wn.2d 43, 49, 176 P.3d 497 (2008).   Plaintiff may only recover for negligent infliction of

8   emotional distress by proving duty, breach, proximate cause, damage, and objective

9   symptomatology.  Kumar v. Gate Gourmet, Inc., 180 Wn.2d 481, 505, 325 P.3d 193 (2014).

10  Similar to the tort of outrage, there are three essential elements to such a claim.  Plaintiff must

11  prove (1) the emotional distress is within the scope of foreseeable harm of Wellpath's conduct,

12  (2) plaintiff reasonably reacted given the circumstances, and (3) objective symptomatology

13  confirms his distress.  Bylsma v. Burger King Corp., 176 Wn.2d 555, 560, 293 P.3d 1168 (2013).

14  None of the three elements are met here.

15      To be foreseeable, "the harm sustained must be reasonably perceived as being within the

16  general field of danger covered by the specific duty owed by the defendant."  Christian v. Lee, 113

17  Wn.2d 479, 492, 780 P.2d 1307 (1989); Maltman v. Sauer, 84 Wn.2d 975, 981, 530 P.2d 284

18  (1975).  Where reasonable minds cannot differ, this Court can decide the issue of foreseeability as

19  a matter of law.  Schooley v. Pinch's Deli Mkt. Inc., 134 Wn.2d 468, 477, 951 P.2d 749 (1989).

20  There can be no foreseeability here.  The Plaintiff never indicated that he had been prescribed or

21  wanted a gluten free diet.  The nurse, although knowing he had celiac disease, did not know to

22  what extent he claimed he had celiac disease or what would happened to him if he ate some foods

23  containing gluten.  That was never communicated by Plaintiff to Wellpath's agent.  Furthermore,

24

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 18**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    Wellpath's agents were led to believe that Plaintiff would be out of the jail within 12 hours.  Thus,

2    it is a reasonable belief that during that 12-hour period, Plaintiff would get by without good

3    containing gluten.  Even if they assumed he could not eat any such food.

4       Perhaps more significantly, "a plaintiff must prove he has suffered emotional distress by

5    'objective symptomatology' and the 'emotional distress must be susceptible to medical diagnosis

6    and proved through medical evidence.'"  <u>Kloepfel v. Bokor</u>, 149 Wn.2d 192, 196-97, 66 P.3d 630

7    (2003) (emphasis supplied).  Plaintiff has submitted the testimony of no mental health expert to

8    establish that Plaintiff suffered any emotional-type distress.  Further, there is no medical evidence

9    that Plaintiff suffered any damages during the 35-hour period of Wellpath's care.  Plaintiff's only

10    real expert on this, Dr. Hujoel, candidly admitted she did not know what, if anything, Plaintiff

11    ingested as food during that period and did not know specifically if he had any type of symptoms

12    whatsoever during that 35-hour period.

13       As a way of contrast, it is enlightening to view Washington cases where the court

14    determined that a sufficient claim of negligent infliction had been presented to avoid summary

15    judgment.  In <u>Strong v. Terrell</u>, 147 Wn. App. 376, 195 P.3d 977, <u>rev. denied</u>, 165 Wn.2d 1057

16    (2009), where the plaintiff's supervisor made demeaning comments about her blond hair until she

17    died it brown, mocked her house as well as her husband's employment, called her a "bum mother,"

18    spit in her face as he screamed at her for using the wrong bulletin board, and stood so close to her

19    during a screaming fit that spittle contacted her face, causing her fear that he would strike her and

20    the plaintiff claimed that this behavior caused her to vomit, having anxiety attacks, depression, and

21    heart palpitations.  The court found the facts sufficient to go past a summary judgment.  <u>Id.</u> at 380,

22    388-89.  Also, where a funeral home failed to provide ashes in a burial urn and the decedent's

23    mother hand sifted through the ashes, mistaking them for packing material, the court found those

24    / / /

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 19**

1    allegations sufficient. Corrigal v. Ball & Dodd Funeral Home, Inc., 89 Wn2.d 959, 962, 577 P.2d

2    580 (1978).

3        Here, the facts do not rise even close to those levels. Again, the fact that Plaintiff never

4    clearly informed Wellpath agents that he wanted a celiac diet during the 35-hour period,

5    affirmatively stating he was getting out within 12 hours after providing a history to Wellpath, and

6    refusing to sign a release of medical information to confirm even that he had celiac disease,

7    conclusively demonstrates the conduct here is not sufficient to satisfy the elements of a negligent

8    infliction of emotional harm. More significant, as identified above, in the 35-hour period there is

9    nothing to show that Plaintiff's condition was susceptible to a medical diagnosis and it certainly

10   was not proved through any medical evidence. While Plaintiff in his Complaint alleges he suffered

11   "fear and anxiety" (Dkt. 43, ¶ 136), he provided no medical evidence supporting that factual

12   unsupported conclusory statement. Further, Plaintiff does not identify any actual medical

13   diagnosis from a medical care provider. Thus, with no emotional distress provable through

14   medical evidence, the claim of negligent infliction of emotional distress must be dismissed.

15   **F.    PLAINTIFF CANNOT ESTABLISH A WASHINGTON COMMON LAW CLAIM
16          OF NEGLIGENCE AGAINST WELLPATH**

17       An additional Washington state claim Plaintiff is making in this case against Wellpath is a

18   negligence claim.[3]  The elements of a negligence claim in the state of Washington are the

19   traditional four elements of a negligence claim. "Essential elements of an action of negligence

20   are: (1) the existence of a duty owed to the complaining party; (2) the breach of that duty; (3) a

21

22   _____

23   [3] We tremendously respect this Court's decision that this matter is not covered by Washington's medical malpractice
     law including RCW Chapter 7.70. We continue to respectfully disagree with that decision and believe this is the
     epitome of a medical malpractice claim under Washington law. By discussing this as an ordinary Washington
24   negligence claim, we are not meaning in any way to waive or abandon that argument.

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 20**

1    resulting injury; and (4) a proximate cause between the breach and the industry.  Christen v. Lee,

2    113 Wn.2d 479, 488, 780 P.2d 1307 (1989).

3              1.        Breach of duty not demonstrated

4              This Court has ruled that at least as to Wellpath, this is not a medical malpractice case

5    governed by RCW Chapter 7.70.  Thus, under Washington law this is what is known as a medical

6    negligence case as to be distinguished from a medical malpractice case.  Volk v. DeMeerleer, 187

7    Wn.2d 241, 254, 366 P.3d 254 (2016).

8              The significance of this is explained in Watson v. Washington Dept. of Corrections, 218

9    WL 7150488 (Western District of Washington 2018).  This case is also important because it

10   distinguishes the unreported decision of Division II of the Washington Court of Appeals relied

11   upon by this Court in Dkt. 132 at 10, Gonzalez v. Dammeier County of Pierce, 2022 WL 1155744

12   (2022).

13             One of the issues addressed in the Watson case was plaintiff's contention that they did not

14   need expert testimony because it was a medical negligence case, not a medical malpractice case.

15   In making this argument, plaintiff relied upon Peterson v. State, 100 Wn.2d 421, 671 P.2d 230

16   (1983), the same case relied upon in the Gonzalez case.  In addressing this argument, the court in

17   Watson held:

18             Plaintiff is incorrect; as noted above, plaintiff's characterization of this claim as
              medical negligence rather than malpractice, does not change his burden. . . .  In the
19            case that plaintiff cites, the Supreme Court of Washington contrasted medical
              malpractice claims with ordinary negligence claims, not medical negligent claims.
20            . . . The latter are equivalent to medical malpractice claims in their proof
              requirements.
21
22   Watson v. Washington Dept. of Corrections, 218 WL 7150488, at 8 (W.D. 2018) (citations

23   omitted).  The holding in the Watson case is consistent with Washington law.  Washington law

     treats negligence claims dealing with professionals differently.  Under Washington law, generally
24

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 21**

1    an expert is required to establish the negligence of most professionals outside the medical

2    malpractice area.  This includes actions against professionals such as lawyers, accountants,

3    engineers, architects, and land surveyors.  See, e.g., Slack v. Luke, 192 Wn. App. 909, 916-17,

4    370 P.3d 49 (2016); Donatelli v. D.R. Strong Consulting Engineers, Inc., 179 Wn.2d 84, 312 P.3d

5    620 (2013); 16 Washington Practice, Tort Law & Practice §16.1, 16.39, 16.41 (5th Ed. 2023

6    update).

7        The Plaintiff has no such expert testimony in this case.  This case involved Wellpath agents

8    who were registered nurses' involvement with Plaintiff on January 30 and 31, 2020.  The Plaintiff's

9    expert Dr. Holliday candidly admitted in his deposition he was not competent to testify on the

10   nursing standard of care.  (Decl. of J. Aiken, ¶ 3, Exhibit B).

11       The lack of expert testimony to support Plaintiff's Washington negligence claim is fatal to

12   that claim.  It must be dismissed.

13       2.    Plaintiff cannot establish the proximate cause element of a negligence action

14       Plaintiff has alleged and submitted facts that he was provided food containing gluten even

15   after it was ordered he have a gluten free diet.  That allegation of the Plaintiff establishes that

16   Plaintiff cannot establish the element of proximate cause as to Wellpath.  Well-established

17   Washington law makes this conclusion inevitable.

18       It has long been the law in the state of Washington there can be on proximate cause if the

19   injury would have occurred regardless of the alleged negligence of the defendant.  See, e.g., Lunt

20   v. Spokane Skiing Corp., 62 Wn. App. 353, 814 P.2d 1189, rev. denied, 118 Wn.2d 1007 (1991);

21   Melville v. State, 115 Wn.2d 34, 793 P.2d, 952 (1990).  This rule is also correctly delineated in

22   the Washington Pattern Instructions which demonstrate that to establish proximate cause the

23   plaintiff must establish the injury would not have happened in the absence of the cause.  6

24   Washington Practice, Washington Pattern Jury Instruction, Civil WPI 15.01, 15.01.01 (7th Ed.).

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 22**

1   This is frequently under Washington law referred to as "but for" causation.  See, e.g., Hertog ex

2   rel. S.A.H. v. City of Seattle, 138 Wn.2d 265, 979 P.2d 400 (1999).

3          A recent Washington case that exemplifies this rule is Sherman v. Pfizer, Inc., 8 Wn. App.

4   2d. 686, 440 P.3d 1016 (2019).  Plaintiff in the Sherman case sued both Pfizer and a physician.

5   Plaintiff claimed Pfizer was liable because its package insert for a drug was not sufficient.

6   However, the physician that actually administered the drugs stated he did not read the package

7   inserts.  In other words, the testimony showed the injury would have occurred regardless of the

8   alleged negligence of the drug manufacturer because since the physician did not read the package

9   insert, the alleged damage would have occurred anyway.  Id. at 697-99.

10         This well-established Washington rule of proximate cause applies equally here.  Plaintiff

11  alleges and contends and submitted facts that even after an order for a gluten free diet was made,

12  Plaintiff continued to receive food with gluten.  Thus, regardless of whether Wellpath or any

13  healthcare provider would have earlier ordered a gluten free diet, the alleged damage would have

14  occurred regardless.  This is because under the Plaintiff's allegation, he still would have received

15  food containing gluten.

16         3.    There are no damages

17         The testimony from Plaintiff's expert Dr. Hujoel demonstrates Plaintiff cannot produce

18  any damages for the actions of Wellpath.  The testimony is that there is no evidence that Plaintiff

19  consumed any gluten during the 35-hour period of Wellpath's care. More significantly, even if he

20  did, there is no evidence that caused him any type of damage during that short period of time

21  because there is nothing showing that he lost weight or was sick in any manner during that 35-

22  hour period.  Unequivocally, Plaintiff cannot establish the damage element of a Washington

23  common law negligence theory.

24

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 23**

4.    <u>Additional Washington doctrines apply barring the negligence claim</u>

It is undisputed that at the time intake Plaintiff affirmatively represented he was getting out the next day. In other words, approximately 12 hours from the time of intake. He also signed a "Refusal of Treatment" document. It stated in pertinent part:

> I acknowledge that I am fully informed of and understand the above refused treatment and the risk involved in refusing. I hereby release and agree to hold harmless CCS and correctional personnel from all responsibility and any ill effects which may result from this refusal.

> I have read this form and certified that I understand its contents.

It is undisputed Plaintiff signed the document. It is also undisputed he was not coerced in any way to sign it.

Plaintiff's voluntary signing of that release agreement releases Wellpath from any liability and certainly the negligence claim. "To prevail on his negligence claim (plaintiff) must establish that (defendant) owed him a duty of care. Whether there is a duty of care is a question of law. The Washington Supreme Court has recognized the right of parties 'expressly to agree in advance that defendant is under no obligation of care for the benefit of the plaintiff, and should not be liable for the consequences of conduct which would otherwise be negligent.'" <u>Chauvlier v. Booth Creek Ski Holding, Inc.</u>, 109 Wn. App. 34, 35 P.3d 383 (2001); <u>Kruse v. Hemp</u>, 121 Wn.2d 715, 853 P.2d 1373 (1993); <u>Scott v. Pac. W. Mountain Resort</u>, 119 Wn.2d 484, 834 P.2d 6 (1992); <u>Johnson v. NEW, Inc.</u>, 89 Wn. App. 309, 948 P.2d 877 (1997).

Plaintiff's signing of the release document here eliminates the duty element from the negligence action. Plaintiff does not have a Washington negligence claim because of him voluntarily executing that document.

Plaintiff is also equitably estopped from asserting claims against Wellpath. This is because of his affirmative acts of stating he was going to be released within 12 hours. Also, his affirmative

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 24**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    act of refusing to sign a release so medical records could be obtained.  Also, in representing he

2    was not on a medical diet at the time of intake.

3           "The elements of equitable estoppel are (1) an admission, statement or act inconsistent with

4    the claim afterwards asserted, (2) actions by another in reliance upon the act, statement or

5    admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate

6    the prior act, statement or admission."  Board of Regence of University of Washington v. City of

7    Seattle, 108 Wn.2d 545, 551, 741 P.2d 11 (1987).  All three elements are met here.  Plaintiff makes

8    several admissions and statements that are now inconsistent with the claim he is asserting.  Clearly,

9    Wellpath relied on his statements.  It relied on the statements in not attempting to order a gluten

10   free diet for Plaintiff at the time of admission.  It has now been injured in having to defend this

11   action against Plaintiff.  This theory also demonstrates the Washington state negligence claim

12   should be dismissed.

13   V. **CONCLUSION**

14          Plaintiff at the time of admission signed a document confirming he told Nurse Ward

15   (Crotty) that he was not on a medical diet.  Although Plaintiff provided some self-serving

16   testimony initially, when pushed he finally admitted he does not recall his conversations with the

17   Wellpath nurse at the time of admission.  Thus, there is no evidence for purposes of summary

18   judgment that Plaintiff requested a celiac diet when he met with Wellpath's agent on January 30,

19   2020.  This is also the only reasonable conclusion that can be reached because Plaintiff wrongfully

20   believed he would be released from the jail within approximately the next 12 hours.  In any event,

21   the undisputed conduct of Wellpath demonstrates that Plaintiff cannot establish either of his federal

22   claims under § 1983 or the Rehabilitation Act.  There is no showing that Wellpath was deliberately

23   indifferent to Plaintiff's claims.  The exact opposite is true.  They attempted to assist him by getting

24   / / /

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 25**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  his medical records so celiac disease could be confirmed, but he refused to provide the release to

2  them.

3      Plaintiff's state law claims are also deficient factually and legally. Certainly, there is no

4  basis to establish the tort of outrage. There also is not sufficient evidence to establish a claim of

5  negligent infliction of emotional distress. Moreover, to establish the negligence claim, Plaintiff

6  needed a competent expert to state that the conduct of the Wellpath nurse was negligent and/or did

7  not conform with the appropriate standard of care. Plaintiff has no such expert. All of Plaintiff's

8  negligent-type claims must be dismissed under clear Washington precedent.

9      Plaintiff brought Wellpath into this matter late. Wellpath only provided care for a 35-hour

10  period during Plaintiff's incarceration. All of these significant facts and applicable law establish

11  summary judgment is appropriate here. This Court should dismiss all Plaintiff's allegations

12  against Wellpath and grant its Motion for Summary Judgment.

13      DATED this 11th day of April, 2024.

14

15                    s/ Jerome R. Aiken                  .
                    JEROME R. AIKEN, WSBA #14647
16                    Attorneys for Defendant
                    Wellpath, LLC
17                    Meyer, Fluegge & Tenney, P.S.
                    Phone: 509/575-8500 – Fax: 509/575-4676
18                    Email: aiken@mftlaw.com

19  *I certify that this motion contains 8302 words*
   *in compliance with the Local Civil Rules*

20

21

22

23

24

1

## <u>CERTIFICATE OF TRANSMITTAL</u>

2

   I hereby certify under penalty of perjury under the laws of the State of Washington that
on April 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using

3   the CM/ECF System which will send notification of such filing to the following:

4

| | |
|---|---|
| **For Plaintiff:**<br>Conrad Reynoldson / Marielle Maxwell<br>Washington Civil & Disability Advocate<br>4115 Roosevelt Way NE, Suite B<br>Seattle, WA 98105<br>conrad@wacda.com / marielle@wacda.com | __X__ via CM/ECF<br>____ via E-Mail |
| **Also for Plaintiff Pro Have Vice:**<br>Mary C. Vargas / Michael S. Stein<br>Stein & Vargas, LLP<br>10 G Street NE, Suite 600<br>Washington, DC 20002<br>mary.vargas@steinvargas.com /<br>michael.stein@steinvargas.com | __X__ via CM/ECF |
| Charles Weiner<br>Law Office of Charles Weiner<br>501 Cambria Avenue<br>Pensalem, PA 19020<br>charles@charlesweinerlaw.com | __X__ via CM/ECF |
| **For Deft Naphcare, Inc.:**<br>David A. Perez / Zachary E. Davison<br>Michelle L. Maley / Mason Y. Ji<br>Perkins Coie, LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101<br>dperez@perkinscoie.com / zdavison@perkinscoie.com<br>/ mmaley@perkinscoie.com / mji@perkinscoie.com | __X__ via CM/ECF |
| **For Defts Clark County Jail And Clark County:**<br>Mr. John E. Justice<br>Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S.<br>2674 R.W. Johnson Road<br>Tumwater, WA 98512<br>jjustice@lldkb.com | __X__ via CM/ECF |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22          /s/  Sheryl A. Jones                                    .
           SHERYL A. JONES, Legal Assistant

23

24

**Defendant Wellpath, LLC's**
**Motion for Summary Judgment - 27**