UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GAVEN PICCIANO,<br><br>  Plaintiff,<br>  v.<br><br>CLARK COUNTY, CLARK COUNTY JAIL, WELLPATH, LLC, and NAPHCARE, INC.,<br><br>  Defendant. | CASE NO. 3:20-cv-06106-DGE<br><br>ORDER ON MOTION FOR SANCTIONS (DKT. NO. 133) |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's motion for sanctions.  (Dkt. No. 133.) For the reasons discussed below, the Court DENIES the motion.

## II.  BACKGROUND

The Court presumes familiarity with the facts of the case.  (*See* Dkt. Nos. 60 at 2–3, 131 at 2–3.)

Plaintiff filed his now-operative Second Amended Complaint (SAC) on January 25, 2022.  (Dkt. No. 43.)  As relevant here, Plaintiff brings a § 504 Rehabilitation Act claim against

Defendants Naphcare and Wellpath. (*Id*. at 17–18.) On May 25, 2023, Naphcare filed a motion for judgment on the pleadings (Dkt. No. 83), which Wellpath joined (Dkt. No. 84). Plaintiff then filed a motion to compel discovery, seeking information on federal and state funding Naphcare and Wellpath received in 2020. (Dkt. No. 97.) The Court denied the motion for judgment on the pleadings, noting that at the pleadings stage it is difficult for a plaintiff to make complete allegations about whether a defendant received "federal financial assistance," a necessary element of a § 504 claim, and that discovery was needed to assess the claims. (Dkt. No. 131.) Accordingly, the Court also granted the motion to compel discovery. (*Id*.)

The Court ordered Naphcare to provide complete responses to Plaintiff's Interrogatory No. 18 and Requests for Production Nos. 13 and 14. (*Id*. at 15.) Interrogatory No. 18 asked Naphcare to "identify all sources and amounts of Federal or State funding received by Defendant during the year of 2020." (Dkt. 97-7 at 8.) Naphcare objected, asserting information about "state funding" was irrelevant to Plaintiff's § 504 claim and the phrase "federal funding" was undefined and vague. (Dkt. No.134-2 at 5–6.) Naphcare further identified that federal funding for purposes of § 504 applied only to federal subsidies. (Dkt. No. 134-2 at 6; *see also* Dkt. No. 131 at 12.)

Request for Production No. 14 sought production of all documents and communications related to funding Naphcare received originating from the United States, regardless of whether such funding first passed through a local or state entity. (Dkt. No. 134-3 at 6.) Naphcare again objected by asserting the scope of the request was overbroad as Plaintiff sought documents unrelated to any federal subsidy. (*Id*. at 6–7.)

Subject to its objections, Naphcare responded to Interrogatory No. 14 as follows:

> Plaintiff alleges that NaphCare 'has received at least $155.1 million dollars in federal financial assistance including substantial funds from the United States

ORDER ON MOTION FOR SANCTIONS (DKT. NO. 133) - 2

> Department of Justice.' ECF No. 43 at 3.  It is not clear where Plaintiff got this figure, but Plaintiff's discovery requests to NaphCare suggest that Plaintiff is relying on a website that compiles information regarding NaphCare's (and other entities') contracts with the federal government.  See Plaintiff's Request for Admission No. 10 (citing USASpending.gov).  To be clear, that website reflects 'compensation' that the federal government agreed to pay NaphCare "for services provided." *Mullen*, 2022 WL 126618, at *12.  That compensation is not "federal financial assistance" under the Rehabilitation Act.

(Dkt. No. 134-2 at 7.)  Subject to the same objections, Naphcare's supplemental response stated:

> In the year 2020, NaphCare did not submit billing for, receive, or use any funds provided through the Medicare or Medicaid programs.
>
> In the year 2020, NaphCare provided medical services at jails that received funding through state and county grants, such as the Washington State Health Care Authority's Medication Assisted Treatment ("MAT") grant.  In some cases, NaphCare assisted the jails in obtaining grant funds. In some cases, the jails used grant funds to pay NaphCare for a portion of NaphCare's services.  The grant funds were used to subsidize the jails' payment to NaphCare for medical services and potentially to other entities to provide additional services to inmates.  In other words, the jails used grant funds—in lieu of other sources—to pay for NaphCare's and other entities' services. The grant funds were not used to subsidize NaphCare's services.  In other words, the grants were not used to compensate NaphCare, or to provide NaphCare with additional compensation, for services it provided before the jails' receipt of grant funds. NaphCare would not perform those services unless the jails fully paid NaphCare for those services through grants or otherwise.
>
> In 2018, a Florida jail for which NaphCare provided medical services in 2020 received a grant from the Bureau of Justice Assistance within the U.S. Department of Justice pursuant to the Improving Reentry for Adults and Co-occurring Substance Abuse and Mental Illness program. NaphCare has found no evidence that any other jails or prisons, for which NaphCare provided medical services in 2020, used federal grant money to pay NaphCare for its services.  Because NaphCare was not the recipient of any grants (county, state, or federal), NaphCare does not have complete information regarding the source of each jail's and prison's grants.
>
>  In the year 2020, NaphCare did not perform any services at Clark County Jail that were paid for with grant funds.

(Dkt. No. 134-2 at 7–8.)

Wellpath was ordered to respond to Interrogatory No. 14 which asked for "all sources and amounts of Federal and State funding received" during 2020.  (Dkt. No. 131 at 15; 134-1 at

ORDER ON MOTION FOR SANCTIONS (DKT. NO. 133) - 3

12.) Wellpath did not identify the same specific objections identified by Naphcare but did generally object that the information sought was outside the scope of the claims and otherwise not proportional. (Dkt. No. 134-1 at 12.) Subject to its objections, Wellpath answered:

> [A]fter thorough investigation and research, discussions with people within the Wellpath organization with knowledge of this issue, it has been once again confirmed that Wellpath did not receive any general funding at the time of the approximately 36 hours of care provided to the Plaintiff. The only monetary sums that Wellpath received from the United States government was for specific contracts with the federal government or related entities to provide specific services. The money was in payment for services Wellpath provided. Wellpath may have also benefited from federal funding, but it was not a specific recipient of federal funding except for specific procurement type contracts. In other words, in an attempt to be specifically clear, the only contracts that Wellpath had with the federal government would be what are referred to as procurement contracts. Wellpath did not receive any grants, loans, or any other arrangement by which the federal government provided general assistance.

(*Id.*)

Plaintiff now brings a motion for sanctions asserting Defendants failed to comply with the Court's order by not providing complete answers to Plaintiff's discovery requests. (Dkt. No. 133.)

### III.   DISCUSSION

"Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten,* 262 F.3d 923, 947 (9th Cir. 2001). Under Rule 37(b)(2), sanctions are "appropriate only in extreme circumstances and where the violation is due to willfulness, bad faith, or fault of the party." *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002) (cleaned up). "Disobedient conduct not shown to be outside the litigant's control meets this standard." *Id.*

ORDER ON MOTION FOR SANCTIONS (DKT. NO. 133) - 4

Plaintiff argues Defendants failed to provide full and complete responses to Plaintiff's discovery requests as ordered and that Defendants should be sanctioned. (Dkt. No. 133.) The Court disagrees. Having reviewed Defendants' objections to the discovery requests together with the supplemental responses, the Court finds the responses provided were complete responses.

Procurement contracts are those "in which goods or services are sold or purchased by the government at a fair market value." *Jacobson v. Delta Airlines*, 742 F.2d 1202, 1209 (citing 42 C.F.R. Sec. 84.3(h)). "Entities that received federal funding via government procurement contracts are generally not considered recipients of federal financial assistance under the Rehabilitation Act." *Kimiko P. v. Alta California Regional Center*, 2019 WL 3004149, at *2 (E.D. Cal. July 10, 2019). Thus, any procurement contracts Defendants have with the federal government are compensatory for services rendered and not subsidies providing financial assistance.[1]

As to a "beneficiary" of federal funding versus a "recipient" of federal funding, the Rehabilitation Act covers only recipients of federal assistance. "The statute covers those who receive the aid, but does not extend as far as those who benefit from it. In *Grove City*, [465 U.S. 555 (1984),] we recognized that most federal assistance has 'economic ripple effects.' We rejected the argument that those indirect economic benefits can trigger statutory coverage." *U.S. Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597, 607 (1985).

---

[1] The Court notes Naphcare does not refer to its contracts with the federal government specifically as "procurement" contracts but does state its only federal funding source is "compensation for services rendered on a contract." (Dkt. No. 138 at 12.) The Court understands this to be a procurement contract even if it is not labeled as such.

ORDER ON MOTION FOR SANCTIONS (DKT. NO. 133) - 5

Defendants' responses identify that the only direct funds Defendants receive from the federal government are for contracted services at federal correctional facilities, i.e., procurement contracts. Defendants also identify that, to the extent a county or local governmental entity uses federal funds to pay for their services, the entity is the recipient of those funds which are used to subsidize the recipient's expenses. As such, when a local entity pays Defendants for their contracted services, the Defendants are only beneficiaries of any grant funds provided to the local entity. Taken at face value, Defendants' responses are appropriately tailored to Plaintiff's § 504 claim as those responses identify that Defendants are not recipients of any federal subsidies.

In essence, Plaintiff disputes the veracity of Defendants' responses—that Defendants do not receive any federal subsidies—but does not identify a basis to question the validity of Defendants' responses other than to claim they are incomplete.

> While the Court recognizes that Plaintiff may be disinclined to accept Defendants' discovery responses at face value, he is in a position no different than any other civil litigant: he is required to accept legally sufficient discovery responses. Mere distrust and suspicion do *not* form a legitimate basis to further challenge facially sufficient discovery responses.

*Rhoden v. Department of State Hospitals*, 2019 WL 316860, *9 (E.D. Cal. Jan. 24, 2019).

The Court concludes Defendants provided complete discovery responses tailored to Plaintiff's § 504 claim and therefore finds no basis to sanction Defendants.

## IV. CONCLUSION

Based on the reasons identified herein, the Court DENIES Plaintiff's motion for sanctions. (Dkt. No. 133.) The Court does not award fees or costs to either party as the parties brought forth a legitimate dispute.

Dated this 2nd day of August 2024.

David G. Estudillo
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

ORDER ON MOTION FOR SANCTIONS (DKT. NO. 133) - 8